Teresa C. Chow (SBN 237694)
*tchow@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

Sean P. Killeen (SBN 320644)
*skilleen@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2623
Facsimile: 415.659.2601

*Attorneys for Select Medical Corporation*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RUDOLPH CAMPBELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SELECT MEDICAL CORPORATION d/b/a SELECT PHYSICAL THERAPY,

Defendant.

Case No.: 2:25-CV-11408-MCS-PD

**DEFENDANT SELECT MEDICAL CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*[Filed concurrently with [Proposed] Order; and Declaration of Sean P. Killeen]*

**Date**: March 30, 2026
**Time**: 9:00 AM
**Courtroom**: 7C

**Complaint Filed**: November 26, 2025

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on March 30, 2026, at 9:00 a.m., in Courtroom 7C of the U.S. District Court for the Central District of California located on the 7th Floor of the First Street Courthouse, located at 350 W 1st Street, Suite 4311, Los Angeles, CA 90012, Defendant Select Medical Corporation, d/b/a Select Physical Therapy ("Select Medical"), will and hereby does bring this Motion to Dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiff Rudolph Campbell ("Plaintiff"), filed individually and on behalf of others similarly situated.

Select Medical respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks standing and fails to allege sufficient facts to plead: (1) a violation of the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"), 18 U.S.C. § 2511(1); (2) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 632; and (4) invasion of privacy under the California Constitution.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities and evidence cited therein, and all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 23, 2026. (See Declaration of Sean P. Killeen ¶ 2). Having exhausted all attempts at resolution, Select Medical has proceeded with the filing of this Motion.

Dated: January 30, 2026

**BAKER & HOSTETLER LLP**
*/s/ Sean P. Killeen*
Sean P. Killeen

*Attorneys for Defendant*
SELECT MEDICAL CORPORATION

# TABLE OF CONTENTS

Page


NOTICE OF MOTION AND MOTION .......... 2
TABLE OF AUTHORITIES .......... 4
I. INTRODUCTION .......... 8
II. STATEMENT OF ISSUES TO BE DECIDED .......... 8
III. BACKGROUND .......... 8
IV. LEGAL STANDARDS .......... 10
V. LEGAL ARGUMENT .......... 10
- A. Plaintiff Lacks Concrete Injury to Establish Article III Standing. .......... 10
- B. Plaintiff Fails to State a Claim for Violation of the ECPA (“Wiretap Act”) (Count I) .......... 16
  - i. Plaintiff Fails to Allege Any Unlawful Interception. .......... 17
  - ii. Plaintiff Fails to Allege Contemporaneous Interception. .......... 20
  - iii. There Can Be No Civil Liability for Allegedly Procuring or Aiding and Abetting an Alleged Interception Through Google Analytics. .......... 20
  - iv. Plaintiff Fails to Allege any Plausible Interception of “Contents.” .......... 21
- C. Plaintiff Fails to State a Claim for CIPA § 631(a) (Count II) .......... 24
  - i. Plaintiff Fails to Plead Fact Showing That “Content Information” Was Disclosed to Google. .......... 24
  - ii. Google Does Not Intercept Communications “In Transit.” .......... 25
- D. Plaintiff Fails to State a Claim for CIPA§ 632 (Count III) .......... 26
- E. Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution .......... 27

VI. CONCLUSION .......... 29


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page(s)

**State Cases**

*Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165 (Cal. App. 4th Dist. 2014) .......... 15

*Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal. 4th 1 (1994) .......... 27, 28

**Federal Cases**

*Am. Hosp. Assn. v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 10, 23

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 17, 23

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595 (9th Cir. 2019) .......... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 10

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .......... 23

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 11

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 26

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 21

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .......... 10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025) .......... 19

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .......... 19

*Doe v. Kaiser Found. Health Plan, Inc*.,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 18

*Doe v. MKS Instruments, Inc.*,
2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) .......... 15

*In re Facebook Internet Tracking Litig*.,
140 F. Supp. 3d 922, 930-31 (N.D. Cal. 2015) .......... 22, 23, 25

*In re Facebook Internet Tracking Litig*.,
263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) .......... 16

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 17

*In re Google Assistant Priv. Litig*.,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 26, 27

*Herzer v. Redstone*,
2018 WL 5094933 (C.D. Cal. July 10, 2018) .......... 21

*Hubbard v. Google LLC,* (N.D. Cal. July 1, 2024)
2024 WL 3302066 .......... 28

*In re iPhone Application Litig*., (N.D. Cal. 2012)
844 F. Supp. 2d 1040 .......... 28

*John Roe, et al. v. Amgen Inc*.,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 17

*Katz-Lacabe v. Oracle Am., Inc*.,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 19

*Kirch v. Embarq Mgmt. Co*.,
702 F.3d 1245 (10th Cir. 2012) .......... 21

*Konop v. Hawaiian Airlines, Inc*.,
302 F.3d 868 (9th Cir. 2002) .......... 20

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .... 19

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .... 20

*Low v. LinkedIn Corp*. (N.D. Cal. 2012)
900 F.Supp.2d 1010 .... 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .... 10

*Mikulsky v. Bloomingdale's, LLC*,
2024 WL 337180 (S.D. Cal. Jan. 25, 2024) .... 24

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) .... 20

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .... 17

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .... 17, 19, 22

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .... 20

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) .... 21

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .... 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .... 11, 12, 13, 14, 16

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .... 26

*Ruiz v. Gap, Inc.,* (N.D. Cal. 2008)
540 F.Supp.2d 1121 .... 28

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .... 27

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 14, 22, 25

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 15, 22

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 26

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 18

*In re Toys R Us, Inc., Privacy Litig.*,
2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) .......... 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 10, 11

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. May 28, 2024) .......... 26

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .......... 16

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) .......... 19

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 22, 23, 24, 25

**Federal Statutes**

18 U.S.C. § 2510(8) .......... 22

18 U.S.C. § 2511(2)(d) .......... 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I. INTRODUCTION

Plaintiff brings this putative class action against Defendant Select Medical Corporation ("Defendant" or "Select Medical") on the flawed premise that Select Medical's alleged use of Google Analytics – a widely adopted and standard technology – constitutes an illegal wiretap. Plaintiff fails to allege any concrete injury, any interception of the contents of his communications, or any disclosure of confidential information. Select Medical was a party to the communications at issue and therefore cannot be liable under the Wiretap Act. Plaintiff's conclusory allegations likewise fail to state claims under the California Invasion of Privacy Act or the California Constitution. The Complaint should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Has Plaintiff alleged a concrete injury sufficient to establish Article III standing?

2. Has Plaintiff satisfied the Rule 12(b)(6) standard for his ECPA claim, CIPA claims, and invasion of privacy claim under the California Constitution?

## III. BACKGROUND

Defendant Select Medical Corporation ("Select Medical") is a Delaware corporation that operates a website which allows individuals to book appointments at its outpatient physical therapy centers for various types of physical therapy. Compl. ¶ 2. Plaintiff alleges that software implemented on Select Medical's Website permits certain information to be transmitted from a user's web browser to third parties like Google. *Id*. ¶¶ 6,10, 110.

Plaintiff's explanation of the possible functioning of Google Analytics remains hypothetical. Plaintiff's allegations concerning Google Analytics describe general capabilities rather than facts tied to Plaintiff's own Website interaction. Compl. ¶¶ 48-78. But Plaintiff's limited allegations relating to *his* experience on the Select Medical Website are deficient. Plaintiff alleges that he used the Website on or around, February 2025, to "book[] an appointment for physical therapy at Defendant's Los

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Angeles-Park Terrace location using Defendant's Website." Compl. ¶ 10. But he pleads no facts showing any of *his* information, much less the specific contents of his request to book an appointment which was allegedly transmitted to Google. Plaintiff does not allege any facts related to the "contents" of any "communications" he claims to have shared with Select Medical. In fact, Plaintiff pleads more specific facts on the information he provided directly to Google when creating his Google account such as his name, date of birth, phone number, and email address. Compl. ¶ 9. He also claims Google collected his IP address and device information each time he accessed his account, storing it for targeted advertising. *Id*.

Plaintiff further pleads that Select Medical failed to procure his "consent" before disclosing communications to Google. Compl. ¶ 6. But this allegation is contravened by the fact that Plaintiff pleads no facts as to whether or not he accepted the privacy policy or exercised the option to opt out of cookies, despite Select Medical's clear banner on its Website referencing both the privacy policy and the ability for patients to opt out.

Plaintiff claims that, as a result of Select Medical's alleged use of Google Analytics, he "received advertisements marketing various related medical procedures, specifically targeted at Plaintiff." Compl. ¶ 11. Yet Plaintiff fails to identify a single advertisement he allegedly received, does not provide any dates, or explain how these ads were targeted. In fact, Plaintiff admits he did not know and had no way of knowing why he received such advertisements. *Id*. There is no plausible explanation for how Plaintiff, after acknowledging this lack of knowledge, now conclusively asserts that the ads resulted from Select Medical's alleged disclosure of information to Google.

Despite the foregoing, Plaintiff asserts four causes of action: (1) a violation of the ECPA, 18 U.S.C. § 2511(1); (2) a violation of CIPA, California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 632; and (4) invasion of privacy under the California Constitution. Plaintiff asserts the above causes of action

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

on behalf of himself and a nationwide class of "all natural persons in the United States who, during the class period, book an appointment on the Website" as well as a California subclass of "all natural persons in California who, during the class period, booked an appointment on the Website." Compl. ¶¶ 89-90.

## IV. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing which requires an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (int. cit. omitted). The injury must be "fairly traceable to the defendant's allegedly unlawful conduct," and it must be "likely to be redressed by the requested relief." *Id*. at 590.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc*., 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## V. LEGAL ARGUMENT

### A. Plaintiff Lacks Concrete Injury to Establish Article III Standing.

To establish Article III standing, Plaintiff must show he "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021). The Supreme Court "has rejected the proposition that a plaintiff 'automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426. In other words, "an injury in law is not an injury in fact." *Id*. at 427 (emphasis added). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *Id*. at 425. Naked assertions of harm that is "traditionally recognized as providing a basis for a lawsuit in American courts," are not enough. *Id*. at 417.

Accordingly, to establish Article III standing in privacy cases, Plaintiff must not only "identify [the] specific personal information" that they allege was intercepted by a third party, but how the alleged interception "implicates a protectable privacy interest[.]" *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

The Ninth Circuit's recent decision in *Popa*—a single-issue appeal considering the sole question of whether the plaintiff alleged a "concrete" injury for standing purposes—confirmed that *Spokeo* and *TransUnion* require "a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury. *Popa v. Microsoft Corp.*, 153 F.4th 784, 793 (9th Cir. 2025). In *Popa*, the plaintiff alleged defendant used third-party technology to capture user interactions, including some "30 different categories" of information such as "the date a user visited the website, the device the user accessed the website on, the type of browser [used], the [device's] operating system [], the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls," in violation of statutory and common law privacy laws. *Id*. at 786.

Summarizing the Supreme Court's teachings in *Spokeo* and *TransUnion*, the Ninth Circuit explained that for alleged data privacy violations to confer standing, courts must "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," i.e., "whether plaintiffs have identified a close historical or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

common-law analogue for their asserted injury." *Id*. at 789 (quotation marks and citations omitted). Although *Spokeo* "does not require an exact duplicate in American history and tradition," the decision "is not an open-ended invitation for federal courts to loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. (quotation marks and citations omitted).

In an attempt to establish that she had incurred a cognizable injury because of defendant's use of online tracking technologies, plaintiff in *Popa* identified two relevant common-law tort analogues: intrusion upon seclusion and public disclosure of private facts. *Id*. at 791. The Ninth Circuit found neither apt because both torts involved an element of conduct that would be highly offensive to a reasonable person. *Id*. The former requires "an intentional interference" with a plaintiff's "interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man," and the latter requires that a defendant "gives publicity" to a matter that concerns "the private life of another" and that the "information is highly offensive to a reasonable person." *Id*. (quotation marks and citations omitted). The Ninth Circuit found the plaintiff in *Popa* identified no such information that was collected by defendant's technology; instead, the court likened the recording of the plaintiff's website interactions to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*. The court also noted the differences between plaintiff's alleged injuries and those resulting from the Restatement's hypothetical examples of the traditional privacy torts, such as "taking intimate pictures" through an upstairs bedroom window with a telescopic lens (as an example of intrusion upon seclusion) and the unauthorized publication of a photograph of a woman nursing her child (as an example of public disclosure of private facts). Finally, relying on *Spokeo*, the court rejected plaintiff's argument that the statutory violations she alleged, by creating a private right of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

action, necessarily conferred standing. *Id*. at 792-94. Rather, it noted, "'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Id*. at 792 (quoting *Spokeo*, 578 U.S. at 341). Plaintiff has failed to meet this standard.

First, Plaintiff fails to identify any specific personal information of *his* that was intercepted, let alone any such information that was intercepted in a manner that implicates a protectable privacy interest. Instead, Plaintiff broadly alleges intangible privacy injuries arising from the alleged improper collection, use, and/or disclosure of data, including "custom events," URLs, IP addresses, user-IDs, the type of medical appointment a user requests, a patient's auid identifier, and device information of Select Medical users. Compl. ¶ 68, 69, 70, 81. These allegations describe classes of data that *could* be collected in theory, but not concrete facts showing what was actually collected from Plaintiff himself.

Plaintiff's own description of his Website interaction is sparse. He alleges that "On or around, February 2025, Plaintiff booked an appointment for physical therapy at Defendant's Los Angeles-Park Terrace location using Defendant's Website." Compl. ¶ 10. Based on that bare assertion, Plaintiff then claims that "Plaintiff's communications with Defendant were disclosed by Defendant to Google and/or intercepted in transit by Google, in real time, via detailed URLs, which contain the medically sensitive information entered into the Website." Compl. ¶ 83. But the Complaint offers no factual context as to what information Plaintiff entered during *his* booking session. In fact, rather than alleging what sensitive medical information of his was compromised, Plaintiff instead presents a hypothetical example. "Take, for example, a patient who navigates to the Website to book an appointment for CoreVia pelvic health. During the appointment booking process, Defendant discloses its patients' PII and PHI to Google, as seen in Figure 1." Compl. ¶ 80. The Complaint only includes an undated screenshot ("Figure 1") purportedly showing Website code taken at an *unknown* date and time, by an unidentified visitor. Compl. ¶ 81.

Second, Plaintiff fails to establish that a user's search inputs are "protected health information" such that his disclosure constitutes an injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts. *Popa*, 153 F.4th at 789 (9th Cir. 2025). Plaintiff does not allege that any of the purported tracking technologies collected the contents of his medical records, his diagnoses, his treatments, or his communications with physicians. Instead, Plaintiff's allegations are limited to the claim that the tracking technologies captured the search terms inputted: searches that may have been made on behalf of the Website user or others, which may or may not have been made for the purpose of receiving treatment, and which may or may not have led to the receipt of any medical services, or the diagnosis or treatment of any conditions.

Plaintiff does not allege with any specificity that the webpages he visited relate to his past, present, or future physical or mental health or conditions, or treatment Plaintiff received. Instead, Plaintiff argues that the search terms a user enters when booking an appointment, combined with allegedly identifying information such as IP addresses, constitute "medically sensitive information." Compl. ¶ 83. But as federal courts have explained, just because an individual makes a search on a website which may be *related* to a health condition (such as a search on Select Medical's "Request an Appointment" webpage), a court cannot infer that the individual has that health condition. *See Am. Hosp. Assn. v. Becerra*, 738 F. Supp. 3d 780, 803 (N.D. Tex. 2024) ("Identity (Person A) + Query (Condition B) ≠ [individually identifiable health information] (Person A has Condition B)"). As a result, the contents of an individual's search, despite being *related* to a medical condition or treatment, is not, in and of itself, health information. "Without knowing information that's never received—i.e., the visitor's subjective motive—the resulting metadata could never identify that individual's PHI." *Id.*

The Northern District of California is in accord. In *Smith v. Facebook, Inc.*, the Northern District of California explained that although plaintiffs alleged

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Facebook collected URLs which "point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information," because these pages "contain general health information that is accessible to the public at large," the collection of this data did not relate to "the past, present, or future physical or mental health or condition of an individual." 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). In affirming *Smith*, the Ninth Circuit stated that "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA]—information that unequivocally provides a window into an individual's personal medical history." *Smith v. Facebook, Inc.*, 745 Fed. Appx. 8, 9 (9th Cir. 2018). This is because "[t]he data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical information." *Id.* Likewise, here, Plaintiff's allegations that he searched for physicians on a publicly accessible tool does not reveal any details of his medical information.

And Plaintiff's allegations that he requested a medical appointment on Select Medical's Website reveals nothing about Plaintiff's actual medical history, because "the mere fact that a person may have been a patient" is not itself medical information. *Eisenhower Med. Ctr. v. Super. Ct.*, 172 Cal. Rptr. 3d 165, 169 (Cal. App. 4th Dist. 2014). Plaintiff's allegations are flimsier than those in *Eisenhower*: Plaintiff merely alleges that he *searched* for an appointment; whether he ever booked an appointment or received treatment from the same request is a complete unknown. At bottom, Plaintiff's inputs on Select Medical's "Find an Appointment" page are not medical information. *See Doe v. MKS Instruments, Inc.*, No. SACV 23-00868-CJC (KESX), 2023 WL 9421115, at *2 (C.D. Cal. Nov. 3, 2023) (Allegation that plaintiff gave defendant "medical information" including

"information about disabilities, health and medical conditions," without specific details of what information defendant possessed, was not sufficient to allege defendant possessed plaintiff's medical information); *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (name, phone number, treating physician names, treatment appointment information and discharge dates and times did not constitute "medical information").)

Because Plaintiff does not provide any facts to support his conclusory allegation that Defendant disclosed his "protected health information," and likewise does not describe any other "intimate and sensitive health data" he provided to Defendant on its webpages, Plaintiff does not identify any alleged injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," and therefore allege no injury sufficient to confer standing. *Popa*, 153 F.4th at 789 (9th Cir. 2025).

Moreover, Plaintiff alleges that he "received advertisements marking various related medical procedures, specifically targeted at Plaintiff as a result of Defendant's disclosure of his medical booking information to Google." Compl. ¶ 11. But the Complaint pleads no facts connecting any specific advertisement to any specific communication during Plaintiff's interaction with the Website. In fact, Plaintiff asserts, that "[he] did not know, and had no way of knowing, the reasons he was receiving such advertisements" yet alleges, that they were a "consequence of [the] interceptions." Compl. ¶ 11. These conclusory allegations, unsupported by Plaintiff's own experience, do not constitute concrete harm.

**B. <u>Plaintiff Fails to State a Claim for Violation of the ECPA ("Wiretap Act") (Count I)</u>**

An ECPA claim (18 U.S.C. § 2510, *et seq.*) "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Facebook Internet*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Tracking Litig*., 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017) (internal quotation marks omitted), *aff'd in part, rev'd in part, and remanded by* 956 F.3d 589 (9th Cir. 2020). Plaintiff fails to allege at least the second, third, or fourth elements, and the ECPA claim should be dismissed as a matter of law, without leave to amend.

***i. Plaintiff Fails to Allege Any Unlawful Interception.***

Plaintiff cannot establish that any communication has been unlawfully "intercepted" by Select Medical. The ECPA does not make it unlawful for someone to "intercept ... [an] electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d)) (*see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (Because "the communication at issue is one from a user to Defendant, Defendant cannot be liable under the Wiretap Act for divulging it."). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. 18 U.S.C. § 2511(2)(d)); *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 274 (3d Cir. 2016) (dismissing Wiretap Act claim because defendant "was either a party to all communications with the plaintiff's computers or was permitted to communicate with the plaintiff's computers by Viacom, who was itself a party to all such communications."); *see also John Roe, et al. v. Amgen Inc*., No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024).

In virtually identical circumstances, district courts in the Ninth Circuit have made clear that users of a health care provider's website cannot state a claim under the Wiretap Act against the healthcare provider, because the health care provider was the intended recipient of any alleged communications via the website and therefore could not have intercepted such communications. *See B.K. v. Eisenhower Med. Ctr*., 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("the party exception to Plaintiffs' [Wiretap Act] . . . claim[] exempts Defendants from liability"); *Nienaber v. Overlake Hosp. Med. Ctr*., 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024)

("Under the [Wiretap Act], it is not unlawful for a person to intercept electronic communications where such person is a party to the communication.") (internal citation and quotations omitted). Select Medical is identically situated.

Plaintiff attempts to invoke the "crime-tort exception," which applies only where the interception was made for the purpose of committing a criminal or tortious act. Compl. ¶¶ 116-118. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos*., 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted) (emphasis in original). Plaintiff thus must adequately allege Select Medical "had an illegal or tortious purpose" that is separate and distinct from the collection and disclosure of Plaintiffs' communications. *Id*. at 1203 (emphases added); *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").

Here, Plaintiff alleges no such separate unlawful purpose. Instead, Plaintiff broadly asserts—without factual support—that the crime-tort exception applies because the same interception also allegedly violated various laws, including the U.S. Constitution, HIPAA, the Federal Trade Commission Act, and invasion of privacy. Compl. ¶¶ 116-117. But that is "contrary to *Sussman* which holds that the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc*., No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (violation of HIPAA did not satisfy crime-tort exception). Even where an interception "may well have been a tortious invasion of privacy under state law," it is not a separate illegal or tortious purpose that would trigger the crime-tort exception. *Sussman*, 186 F.3d at 1203.

Indeed, Plaintiff actually alleges the opposite of a tortious or illegal purpose, claiming that Select Medical intercepted their communications to then "monetize[]

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

for targeted advertising purposes" and "increase their profit margins." Compl. ¶¶ 113, 118. The Northern District of California has recently held that where "purpose of the interception was not to 'perpetuate torts on millions of Internet users, but to make money,'" the crime-tort exception to the party-exception is not satisfied. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (Wiretap Act crime-tort exception did not apply); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing wiretapping claim and collecting cases holding that a defendant's desire to "make money" through use of pixels does not meet the crime-tort exception).

Likewise, courts throughout the Ninth Circuit have held that allegations that communications were transmitted to third parties "'for purposes of targeting advertising to [d]efendant's California website users'" were "insufficient to implicate the crime-tort exception" *Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (dismissing Wiretap Act claim); *see also Nienaber*, at *13 (dismissing Wiretap Act claim with prejudice and finding the exception did not apply because plaintiff failed to plead "a tortious or criminal use of the acquired communications separate from their recording, interception, or transmission");

Around the country, courts have likewise dismissed Wiretap Act claims where defendant's purpose in intercepting plaintiffs' communications was to facilitate advertising and marketing. *See, e.g., Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (dismissing Wiretap Act claim where plaintiff failed to allege that defendant's purpose in using third-party technology was to violate the law rather than facilitating advertising and marketing); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing Wiretap Act claim and reasoning "[b]y [p]laintiff's own account, the 'trackers' were 'used by the [d]efendant to benefit [the defendant] and its marketing and advertising

purposes,'…not for the purpose of knowingly committing a violation of the HIPAA.") (internal citation omitted).

***ii. Plaintiff Fails to Allege Contemporaneous Interception.***

Plaintiff also fails to allege contemporaneous interception of the alleged "content" in transit, as required by the Wiretap Act. *See Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (For a communication to be intercepted "in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage). Given the speed of internet communications, the Wiretap Act's application to such transmissions is "undoubtedly limited" and rarely met. *NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014); *see also Mintz v. Mark Bartelstein & Assocs. Inc*., 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc*., 659 F. Supp. 3d 1072, 1077-78 (C.D. Cal. 2023). Plaintiff offers no facts to suggest a third-party intercepted communications before they reached Select Medical.

***iii. There Can Be No Civil Liability for Allegedly Procuring or Aiding and Abetting an Alleged Interception Through Google Analytics.***

Plaintiff claims that Select Medical "procured Google to intercept Plaintiff's and Class Members' electronic communication through Google's tracking technologies." Compl. ¶ 112. Plaintiff's underlying allegations seem to identify Google– not Select Medical– as the party that collects information such as his IP address and device information for its advertising purposes through his Google account. Compl. ¶ 9. Plaintiff's Wiretap Act claim is not saved by his alternative characterization of the claim as one for aiding and abetting.

The Wiretap Act's private right of action is found in 18 U.S.C. § 2520, which creates a scope of civil liability that is narrower than the criminal liability provision codified in Section 2511. Section 2520(a)'s plain, unambiguous language creates a

private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of electronic communication – not against any other person for procuring, enabling, aiding or abetting another's interception of such. *See, e.g., Kirch v. Embarq Mgmt. Co*., 702 F.3d 1245, 1246–47 (10th Cir. 2012) (holding that there is no civil Wiretap Act claim for "procur[ing]" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc*., 221 F.3d 158, 169 (5th Cir. 2000) (same).

When Congress enacted the Wiretap Act in 1986, it specifically excluded civil liability for procurement of an interception (i.e., aiding and abetting), which previously existed under the 1968 predecessor to the Wiretap Act. *See Kirch*, 702 F.3d at 1246-47 (addressing the statutory distinctions between civil and criminal liability under the Wiretap Act). California District of California is in accord. *In re Toys R Us, Inc., Privacy Litig*., No. 00-CV-2746, 2001 WL 34517252, at *6 (N.D. Cal. Oct. 9, 2001) ("The Court finds that § 2520(a) does not provide a cause of action against aiders and abetters, and, accordingly, that plaintiffs may not proceed against Toys R Us on such theory."); *In re Carrier IQ, Inc., Consumer Privacy Litig*., 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (explaining "there is simply no secondary liability (such as aiding and abetting) under the [Wiretap Act.]"); *Herzer v. Redstone*, No. 17-CV-7545 PSG (KSx), 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (agreeing "that secondary liability is not recognized under the [Wiretap Act.]" and finding plaintiff had failed to state a claim).

Because the Wiretap Act does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiff's Wiretap Act claim should be dismissed as a matter of law.

***iv. Plaintiff Fails to Allege any Plausible Interception of "Contents."***

Plaintiff's Wiretap Act claim further fails because Plaintiff has not pleaded facts showing that the "contents" of any communications were disclosed to Google

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

from Select Medical. Under the Wiretap Act, "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re Zynga Privacy Litig*., 750 F.3d 1098, 1106–07 (9th Cir. 2014). Here, the alleged "contents" at issue are vague references to Plaintiffs' self-proclaimed "PII and PHI." See, e.g., Compl. ¶¶ 6, 10, 11, 35, 62, 68, 80, 82. The Complaint mentions information such as IP address, device information, User-IDs, "Custom Events," URLs, and medical treatment. Compl. ¶¶ 62, 68. But this is record information and the Complaint contains no specific "content" allegedly collected from Plaintiff during his visits.

In regard to the threshold question of whether browsing activity on a public website may even constitute "legally protected PII and PHI," i.e., the "contents" of a communication, "the disclosure of browsing activity on a publicly available website that does not relate to 'to the past, present or future physical or mental health or condition of an individual' is not actionable." *Nienaber*, 733 F. Supp. 3d at 1084 (internal quotations omitted); *see also Smith v. Facebook, Inc*., 745 F. App'x 8, 9 (9th Cir. 2018) ("Smith II") ("the connection between a person's browsing history [on a public hospital website] and his or her own state of health is too tenuous."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) ("Smith I") (same).

In *Facebook Internet Tracking Litig*., 140 F. Supp. 3d 922 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the Wiretap Act because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication.'" *Id*. at 935 (quoting *In re Zynga*,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

750 F.3d at 1106–07). By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. *Id*. at 935-6. Likewise, in *In re Zynga*, the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107-8.

Here, Plaintiff's Complaint fails to allege facts showing that the substance of his alleged communications to anyone at Select Medical have ever been transmitted to Google. Plaintiff's threadbare conclusions that his "protected health information" and "personally identifiable information" are transmitted to Google, Compl. ¶¶ 6, are bereft of facts and therefore insufficient as a matter of law. *See, e.g., Iqbal*, 556 U.S. at 678 (mere conclusions are insufficient); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (rejecting allegations that the defendant "regularly and unlawfully shared highly confidential information" related to customers as conclusory in nature); *B.K.*, 721 F. Supp. 3d at 1064 (dismissing claim for failure "to allege what, if any, medical information or medical records were transmitted or disclosed" and that the plaintiffs' "vague allegations about [them] and their experiences with [the defendant]" and the complaint's "conjectures and hypothetical scenarios and patients" did not allege with "any specificity as to what medical information was allegedly disclosed or when it was disclosed.").

Plaintiff does not allege he ever engaged in doctor-patient communication using the Select Medical Website and indeed, he cannot, because the extent of Plaintiff's interaction with the Website was Select Medical's help in finding available appointments for services he was looking for. The limited allegations relating to Plaintiff's interactions with Select Medical's Website show only that Plaintiff used Select Medical's publicly available "Request an appointment" tool, Compl. ¶¶ 10. But Plaintiff does not provide any details about what information of *his* was recorded or intercepted. *See generally*, Compl.

Plaintiff has not alleged, and cannot allege, that "contents" of his communications were intercepted by Google. Absent allegations specifying substantive contents of Plaintiff's communications, the Complaint is left with hypothetical examples of information theoretically disclosed, i.e., URLs. See, e.g., Compl. ¶¶ 80-83. But as *Zynga* makes clear, such information is "record information" that cannot support a Wiretap Act claim. 750 F.3d at 1107. Similarly, actions on a webpage (e.g., button clicks, page navigation, and keystrokes (inputting search terms for a search query)) are record information, not contents of a communication. *Mikulsky v. Bloomingdale's, LLC*, 2024 WL 337180, at *7. As such, Plaintiff has not alleged sufficient facts to state their Wiretap Act claim.

**C. Plaintiff Fails to State a Claim for CIPA § 631(a) (Count II)**

CIPA § 631(a) imposes liability on any "person" who: (1) intentionally taps or connects to telephonic systems without authorization ("Clause One"); (2) willfully and without consent, reads or attempts to read the contents of any communication while in transit ("Clause Two"); (3) attempts to use or communicate any information so obtained ("Clause Three"); or (4) aids, agrees with, employs, or conspires with others to unlawfully commit any of the foregoing acts ("Clause Four"). Plaintiff appears to invoke the fourth clause (Compl. ¶ 129). Plaintiff's CIPA claim fails because (1) Plaintiff fails to allege facts showing that "contents" of communications are at issue, and (b) Google does not intercept communications "in transit."

***i. Plaintiff Fails to Plead Fact Showing That "Content Information" Was Disclosed to Google.***

Plaintiff fails to allege facts showing that the substantive contents of his communications have ever been transmitted to Google. Plaintiff's recitation of the legal conclusion that "sensitive and confidential personally identifiable information," "protected health information," or "sensitive and confidential online



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

communications" are transmitted to Google, is insufficient as a matter of law. Compl. ¶¶ 131-132.

In *In re Zynga Privacy Litig.,* the court explained a URL could disclose that a person viewed the "page of a gay support group," yet held that such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107; *see also Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 935). The allegations here fall squarely within that rule. The screenshot Plaintiff offers depicts a URL address that does not disclose any diagnosis, symptoms, or condition. Nor does Plaintiff allege what information he personally entered into the Website, whether he simply put in "CoreVia pelvic health," or whether he provided any other individualized treatment related information. A URL that reflects nothing more than a generalized service category is similar to a URL that discloses that a person viewed the "page of a gay support group." Accordingly, Plaintiff's bareboned allegations regarding Select Medical's public website do not constitute "content information" under CIPA.

***ii. Google Does Not Intercept Communications "In Transit."***

Plaintiff does not—and cannot—plead facts showing that Google intercepted any communication while it was "in transit," as required by the second clause of CIPA section 631(a). The *Smith* court has held that nearly identical allegations about technologies that caused browsing information to be sent from a user's browser to Meta did:

> …not establish that the Healthcare Defendants 'send' information which Facebook...More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independently...

262 F. Supp. 3d at 951. Rather than an interception, two separate communications occur—one between Select Medical's Website and the user's browser, and one between the user's browser and Google. No communication is being intercepted in transit. *Id*.

**D. Plaintiff Fails to State a Claim for CIPA§ 632 (Count III)**

To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1177-78 (N.D. Cal. May 28, 2024). Plaintiff's claim under § 632 fails for several reasons.

*First*, as outlined above, Plaintiff has not adequately alleged sufficient facts to establish derivative liability against Select Medical. Indeed, Plaintiff has not pled any facts, let alone enough facts to give rise to a plausible inference, that Select Medical "had knowledge of [Google's] conduct ***violating the statute***, let alone had an intent or purpose of aiding it substantially." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (emph. added) (dismissing § 632 claim). Plaintiff provides no facts indicating whether he viewed Select Medical's privacy policy or exercised the option to opt out of out cookies, despite Select Medical's clear banner on its Website referencing both the privacy policy and the ability for patients to opt out. Instead, Plaintiff relies on a conclusory allegation that he and California Subclass Members expected their communications to remain confidential to Select Medical, "because of Defendant's consistent representations that these communications would remain confidential." Compl. ¶ 140. Yet Plaintiff fails to identify what "consistent representations" he is referencing.

*Second*, Plaintiff's § 632 claim fails because he has not plausibly alleged his communications on the Website were "confidential." A conversation is deemed to be "'confidential' under § 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006)). And in California, courts have "developed a presumption that ***Internet communications do not*** reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (emph. added); *Campbell v. Facebook*



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632 . . . ."). Nothing about Plaintiff's limited and vague allegations warrants a deviation from this general rule. It is unreasonable to suggest that interactions with a publicly accessible platform without any login requirement could create such an expectation of confidentiality. Plaintiff provides no facts to explain why he believed such an expectation existed. Unlike a private phone call or a secure patient portal, Plaintiff's interaction took place on a public website where data transmission is routine. As such, Plaintiff's § 632 claim should be dismissed. *In re Google Assistant Priv. Litig.*, 457 F. Supp. at 828 (dismissing § 632 claim where plaintiff failed to adequately plead confidential communications).



### E. **<u>Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution</u>**

A California constitutional privacy claim requires a showing of: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994). Plaintiff cannot establish an actionable invasion of privacy claim under the California Constitution.

Plaintiff has not alleged a legally protected privacy interest in the information accessed because he has failed to allege what personalized information of *his* was collected. *See supra* Section IV.A. *Even if* the website technology collected the types of information it is allegedly capable of collecting -- "custom events," URLs, IP addresses, user-IDs, the type of medical appointment a user requests, a patient's auid identifier, and device information of Select Medical users – from Plaintiff's device's browser, this information cannot be accurately traced back to identify Plaintiff as the public website visitor. *See Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *5-6 (W.D. Wash. Dec. 21, 2023) (finding no "legally

protected privacy interest in which [plaintiffs] had a reasonable expectation of privacy" where the defendant collected "internet browsing activities, internet searches," "online shopping behavior," "keyword search terms, URLs, and unique user identifiers and cookies" but no "personal" information).

In the same vein, Plaintiff has not established that he (or any other Public Website user) possessed a reasonable expectation of privacy as to the information collected—it is a free, public website with a privacy policy that outlines the way the Select Medical operates. *See supra* Section IV.D.

Lastly, just as Select Medical's conduct was not "highly offensive," neither was it "sufficiently serious in … nature, scope, and actual or potential impact to constitute an egregious breach of the social norms." *Hill*, 7 Cal.4th at 37; *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "unique device identifier number, personal data, and geolocation information from Plaintiff's" iDevices … does not constitute an egregious breach of social norms"); *Ruiz v. Gap, Inc.*, 540 F.Supp.2d 1121, 1127-28 (N.D. Cal. 2008) (disclosure of personal information, including social security numbers, did not constitute egregious breach of privacy); *Hubbard v. Google LLC* (N.D. Cal. July 1, 2024) 2024 WL 3302066, at *7 ["But as a matter of policy, and, as a matter of law, the Court cannot conclude that the data collection alleged here comprises highly offensive behavior. . . . Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much. . . . Plaintiffs do not sufficiently allege that Defendants did more than engage in such routine behavior."]; *Low v. LinkedIn Corp*. (N.D. Cal. 2012) 900 F.Supp.2d 1010, 1025 [LinkedIn's disclosure of users' browser history to third parties was not highly offensive]. Because Plaintiff alleges, at best, disclosures of his public website activity only, his invasion of privacy claim must fail. Even disclosure of highly personal information such as social security numbers is not "highly offensive" under the relevant case law. *Low*, 900 F.Supp.2d at 1025. This

Court should similarly hold that Plaintiff has not pled facts sufficient to establish a serious invasion of privacy.

Because Plaintiff fails to plead each requisite element of an invasion of privacy violation under California's Constitution, the cause of action must be dismissed.

## VI. CONCLUSION

Plaintiff's Complaint suffers from a host of incurable defects. Defendant respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,

Dated: January 30, 2026

**BAKER & HOSTETLER LLP**

*/s/ Sean P. Killeen*
Sean P. Killeen

BAKERHOSTETLER
*Attorneys for Defendant*

**C.D. Cal. L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant Select Medical Corporation, certifies that this brief contains 6968 words, which complies with the word limit of C.d. Cal. L.R. 11-6.1.

*/s/ Sean P. Killeen*
Sean P. Killeen