Teresa C. Chow (SBN 237694)
*tchow@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

Sean P. Killeen (SBN 320644)
*skilleen@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2623
Facsimile: 415.659.2601

*Attorneys for Select Medical Corporation*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RUDOLPH CAMPBELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SELECT MEDICAL CORPORATION d/b/a SELECT PHYSICAL THERAPY,

Defendant.

Case No.: 2:25-CV-11408-MCS-PD

**DEFENDANT SELECT MEDICAL CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*[Filed concurrently with [Proposed] Order; and Declaration of Sean P. Killeen]*

**Date**: June 22, 2026
**Time**: 9:00 a.m.
**Courtroom**: 7C

**First Amended Complaint Filed**: March 17, 2026

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT** on June 22, 2026, at 9:00 a.m., in Courtroom 7C of the U.S. District Court for the Central District of California, located on the 7th Floor of the First Street Courthouse, 350 W 1st Street, Suite 4311, Los Angeles, CA 90012, Defendant Select Medical Corporation d/b/a Select Physical Therapy ("Select Medical") will and hereby does move to dismiss with prejudice the First Amended Complaint ("FAC") of Plaintiff Rudolph Campbell ("Plaintiff"), filed individually and on behalf of others similarly situated.

Select Medical respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that Plaintiff lacks standing and fails to allege sufficient facts to plead: (1) a violation of the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act"), 18 U.S.C. § 2511(1); (2) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 632; and (4) invasion of privacy under the California Constitution.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities and evidence cited therein, and all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

This Motion is made after the conference of counsel under L.R. 7-3 (See Declaration of Sean P. Killeen ¶ 2). Having exhausted all attempts at resolution, Select Medical has proceeded with the filing of this Motion.

Dated: March 31, 2026

**BAKER & HOSTETLER LLP**

*/s/ Sean P. Killeen*
Sean P. Killeen

*Attorneys for Defendant*
SELECT MEDICAL CORPORATION

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ..... 2
I. INTRODUCTION ..... 9
II. STATEMENT OF ISSUES TO BE DECIDED ..... 9
III. BACKGROUND ..... 9
IV. LEGAL STANDARDS ..... 11
V. LEGAL ARGUMENT ..... 12
  A. Plaintiff Lacks Concrete Injury to Establish Article III Standing. ..... 12
  B. Plaintiff Fails to State a Claim for Violation of the ECPA (“Wiretap Act”) (Count I) ..... 18
    i. Plaintiff Fails to Allege Any Unlawful Interception. ..... 18
    ii. Plaintiff Fails to Allege Contemporaneous Interception. ..... 21
    iii. There Can Be No Civil Liability for Allegedly Procuring or Aiding and Abetting an Alleged Interception Through Google Analytics. ..... 21
    iv. Plaintiff Fails to Allege any Plausible Interception of “Contents.” ..... 23
  C. Plaintiff Fails to State a Claim for CIPA § 631(a) (Count II) ..... 25
    i. Plaintiff Fails to Plead Disclosure of “Content Information.” ..... 25
    ii. Google Does Not Intercept Communications “In Transit.” ..... 26
  D. Plaintiff Fails to State a Claim for CIPA § 632 (Count III) ..... 27
  E. Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution ..... 28
VI. CONCLUSION ..... 30

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Am. Hosp. Assn. v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 23

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 17, 23

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595 (9th Cir. 2019) .......... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 10

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .......... 23

*Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 11

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 26

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 21

*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .......... 10

*Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025) .......... 20

*Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) .......... 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..................... 18

*Doe v. MKS Instruments, Inc.*,
No. SACV 23-00868-CJC (KESX), 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ..................... 16

*Doe v. Talkiatry Mgmt. Servs., LLC*
No. 5:25-cv-00781-SSS-DTBx, 2026 BL 28451 (C.D. Cal. Jan. 22, 2026) ..................... 18

*In re Facebook Internet Tracking Litig*.,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ..................... 22, 23, 25

*In re Facebook Internet Tracking Litig.*
263 F. Supp. 3d 836 (N.D. Cal. 2017) ..................... 17

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ..................... 17

*In re Google Assistant Priv. Litig.*
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................... 26, 27

*Herzer v. Redstone*,
No. 17-CV-7545 PSG, 2018 WL 5094933 (C.D. Cal. July 10, 2018) ..................... 21

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ..................... 28

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................... 28

*John Roe, et al. v. Amgen Inc.*
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ..................... 17

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ..................... 19

*Kirch v. Embarq Mgmt. Co.*,
702 F.3d 1245 (10th Cir. 2012) ..................... 21

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ..................... 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025)........................................................19

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023)........................................................20

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)........................................................29

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................................................10

*Maghoney v. Dotdash Meredith, Inc.*
No. 24-cv-2394-AJB-BJW, 2026 BL 59586 (S.D. Cal. Feb. 23, 2026) ...............................................................................................................15

*Mikulsky v. Bloomingdale's, LLC*,
2024 WL 337180 (S.D. Cal. Jan. 25, 2024) ..................................................24

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012)........................................................20

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..........................................................................17

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ..................................17, 19, 22

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014)..........................................................20

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000)..........................................................................21

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022)........................................................................18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)..............................................11, 13, 14, 16

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)................................................26

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008)........................................................28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Saeedy v. Microsoft Corp.*
No. 23-cv-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .................. 28

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)................................................. 14, 22, 25

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)........................................................... 15, 22

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)...................................................... 26

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ............................................................... 18

*In re Toys R Us, Inc., Privacy Litig.*,
No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)....................... 21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................ 11, 14

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. May 28, 2024) ........................................ 26

*Wilson v. Rater8, LLC*
No. 20-CV-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ............ 16

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ....................................................... 19

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................... 22, 23, 24, 25

**California Cases**

*Hill v. Nat'l Coll. Athletic Ass'n*,
7 Cal. 4th 1 (1994)......................................................................... 27, 28

*People v. Soles*
68 Cal. App. 3d 418 (Cal. Ct. App. 1977)................................................ 27

**Federal Statutes**

18 U.S.C.
§ 2510(8) ........ 22
§ 2510, *et seq*. ........ 21
§ 2511(1) ........ 10
§ 2511(2)(d) ........ 17
§ 2520 ........ 17, 20, 21, 22

**California Statutes**

Cal. Penal Code
§ 631(a) ........ 10
§ 632 ........ 10, 26
§ 632(a) ........ 27

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## I. <u>INTRODUCTION</u>

Plaintiff's First Amended Complaint ("FAC") tries again to turn routine website analytics into an "illegal wiretap." It still fails for the same basic reason as before: Plaintiff cannot (and does not) plead a concrete injury to himself. The FAC never alleges what *Plaintiff's* information was transmitted, when it was transmitted, or how any transmission invaded a legally protected privacy interest. And Select Medical was a party to the communications at issue and cannot "intercept" communications with itself; Plaintiff has not plausibly alleged interception of "contents"; and his CIPA and California constitutional claims rest on the same conjecture. The FAC should be dismissed with prejudice.

On March 3, 2026, the Court granted Select Medical's Motion to Dismiss and held Plaintiff had not alleged an injury in fact because he described what a hypothetical patient might disclose during an appointment-booking flow, but never identified any personal information of *his* that was actually disclosed. The Court granted leave to amend to fix that specific defect.

But the FAC fails. Plaintiff again pleads no concrete facts about his own sessions—what he entered, what was transmitted, or how it supposedly harmed him. Instead, he offers generalized descriptions of what the technology *could* do and attaches "example" screenshots untethered to Plaintiff. Having been told exactly what was missing and given leave to amend, Plaintiff still cannot plead a concrete, particularized injury. Dismissal with prejudice is warranted.

## II. <u>STATEMENT OF ISSUES TO BE DECIDED</u>

1. Has Plaintiff alleged a concrete injury sufficient to establish Article III standing?

2. Has Plaintiff satisfied the Rule 12(b)(6) standard for his claims?

## III. <u>BACKGROUND</u>

Defendant Select Medical Corporation ("Select Medical") is a Delaware corporation that operates a website which allows individuals to book appointments

at its outpatient physical therapy centers for various types of physical therapy. FAC ¶ 2. Plaintiff alleges that software implemented on Select Medical's Website permits certain information to be transmitted from a user's web browser to third parties like Google. FAC ¶¶ 6, 10, 129.

Plaintiff's explanation of the possible functioning of Google Analytics and DoubleClick API (together, "Google Technologies") remains hypothetical. Plaintiff's allegations concerning Google Technologies describe general capabilities rather than facts tied to Plaintiff's own Website interaction. FAC ¶¶ 49–94. Plaintiff alleges only that after a knee replacement, he used the Website in or around February 2025 and October 2025 to "visit[] and book[] appointments for physical therapy of his knee on Defendant's Website at the Los Angeles-Park Terrace location." FAC ¶ 10. But he pleads no facts showing any of *his* information was entered into the Website and allegedly transmitted to Google. Notably, Plaintiff pleads more detail about what he provided directly to Google when creating his Google account (such as his name, date of birth, phone number, and email address). FAC ¶ 9. He claims Google also collected his IP address and device information each time he accessed his account and used it for targeted advertising. *Id.*

Plaintiff further pleads that Select Medical failed to obtain his consent before disclosing communications to Google. FAC ¶ 6. But Plaintiff pleads no facts as to whether he accepted the privacy policy or exercised the option to opt out of cookies, despite Select Medical's banner referencing both the privacy policy and the ability to opt out.

Plaintiff claims that, as a result of Select Medical's alleged use of Google Technologies, he "received advertisements marketing various related medical procedures, specifically targeted at Plaintiff." FAC ¶ 11. Yet Plaintiff fails to identify a single advertisement he allegedly received, provide any dates, or explain how any ads were targeted. In fact, Plaintiff admits he did not know—and had no way of knowing—why he received such advertisements. *Id.* There is no plausible basis for

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

his conclusory assertion that the ads resulted from Select Medical's alleged disclosure of information to Google.

Despite the foregoing, Plaintiff asserts four causes of action: (1) a violation of the ECPA, 18 U.S.C. § 2511(1); (2) a violation of CIPA, California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 632; and (4) invasion of privacy under the California Constitution. Plaintiff asserts these causes of action on behalf of himself and a nationwide class of "all natural persons in the United States who, during the class period, book an appointment on the Website," as well as a California subclass of "all natural persons in California who, during the class period, booked an appointment on the Website." FAC ¶¶ 108–109.

## IV. LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing which requires an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (int. cit. omitted). The injury must be "fairly traceable to the defendant's allegedly unlawful conduct," and it must be "likely to be redressed by the requested relief." *Id*. at 590.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

///

## V. LEGAL ARGUMENT

### A. Plaintiff Lacks Concrete Injury to Establish Article III Standing.

To establish Article III standing, Plaintiff must show he "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 426 (2021). The Supreme Court "has rejected the proposition that a plaintiff 'automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion*, 594 U.S. at 426. In other words, "an injury in law is not an injury in fact." *Id*. at 427 (emphasis added). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *Id*. at 425. Naked assertions of harm that is "traditionally recognized as providing a basis for a lawsuit in American courts," are not enough. *Id*. at 417.

Accordingly, to establish Article III standing in privacy cases, Plaintiff must not only "identify [the] specific personal information" that they allege was intercepted by a third party, but how the alleged interception "implicates a protectable privacy interest[.]" *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

The Ninth Circuit recently reaffirmed the point in *Popa*: allegations that a website deployed third-party tracking—capturing dozens of categories of user interactions—still did not establish a concrete injury absent facts tying the alleged collection to a traditionally recognized privacy harm. *Popa v. Microsoft Corp.*, 153 F.4th 784, 789–94 (9th Cir. 2025). The FAC falls even shorter.

Applying *Spokeo* and *TransUnion*, *Popa* instructs courts to ask whether the asserted privacy injury bears a "close relationship" to a traditionally recognized harm—such as intrusion upon seclusion or public disclosure of private facts, including the "highly offensive" element those torts require. *Id.* at 789–92. Routine observation of website interactions, by itself, does not clear that bar. *Id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

First, Plaintiff still does not identify any specific personal information of *his* that was intercepted or disclosed, let alone facts showing any alleged collection implicates a protectable privacy interest. Instead, the FAC lists categories of data that *might* be collected in theory—"custom events," URLs, IP addresses, user IDs, appointment types, "auid" identifiers, device information, and cookies such as IDE and DSID. FAC ¶¶ 69–74, 99, 102. But those allegations are generic. They do not plead what was actually collected from Plaintiff during his own alleged February 2025 and October 2025 visits, and they therefore do not establish a concrete injury in fact.

Plaintiff's description of *his* own Website interaction is fatally sparse. He alleges only that "[i]n or around February 2025 and October 2025," after a knee replacement, he "visited and booked appointments" for physical therapy at a particular location. FAC ¶ 10. Critically, he then alleges that he scheduled his appointment "in a manner substantially similar to that described below and herein." *Id.* (emphasis added). That qualifier underscores the problem identified in the MTD Order: the following paragraphs are not pleaded as a firsthand account of what Plaintiff actually entered or what was actually transmitted during his sessions. And the FAC still provides no factual context identifying what information Plaintiff typed or selected, whether any allegedly sensitive "medical" information appeared in any URL tied to him, or whether any allegedly identifying data (such as an email address or phone number) was transmitted at all.

The standing problem is not a lack of technical jargon or additional "examples"—it is that the FAC never pleads facts showing what information (if any) was transmitted from *Plaintiff's* own booking session(s), so the screenshots and figures that follow cannot establish injury in fact.

The screenshots underscore the same pleading failure. None are tied to Plaintiff's own use of the Website, and none identify any sensitive information belonging to him. Figure 1 makes the point. Plaintiff invites the Court to "take, for

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

example, a patient" who books an appointment for pelvic health and then declares that Select Medical discloses patients' PII and PHI "as seen in Figure 1." FAC ¶ 97. But Figure 1 is an undated code snippet, untethered to Plaintiff. It says nothing about Plaintiff's own session—and it cannot supply the missing injury-in-fact allegations.

Figure 2 fares no better. It depicts a URL that purportedly includes a treatment selection and appointment request, yet the FAC offers no basis to infer that this URL reflects Plaintiff's interaction with the Website. Plaintiff instead relies on the conclusory assertion that "[a]s shown and described in Figures 1 and 2, patients' – including Plaintiff's—communications with Defendant were disclosed by Defendant to Google . . . ." FAC ¶ 101. That cannot substitute for factual allegations identifying what Plaintiff himself entered or how it was allegedly disclosed.

Figure 3 is similarly insufficient. Although it purports to show an appointment-request confirmation and references IDE and DSID cookies, Plaintiff again avoids alleging facts about his own interactions, alleging only that Defendant disclosed "similar information" about him. FAC ¶ 102. By definition, "similar information" is not a factual allegation of what was transmitted from Plaintiff's session, and it does not plausibly establish that any of Plaintiff's own PII or PHI was transmitted to Google.

This is Plaintiff's second attempt to plead standing after the Court identified the precise defect and granted leave to amend. If a plaintiff is given an opportunity to cure a specific standing deficiency and instead continues to rely on hypothetical scenarios and illustrative screenshots—without pleading what happened to the plaintiff himself—further amendment is unwarranted. Plaintiff has now had a fair chance to plead facts showing a concrete, particularized injury, and the FAC confirms he cannot do so. He is not entitled to a third try.

Second, Plaintiff's attempt to repackage generic website activity as "protected health information" does not establish a concrete injury with a "close relationship" to a traditionally recognized privacy harm. *Popa*, 153 F.4th at 789. Even accepting

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the FAC's premise that certain analytics tools can capture search terms or booking-flow inputs, Plaintiff still does not plead facts tying any such capture to *his* own session or to the disclosure of information that would reveal his medical history, diagnosis, or treatment in a way akin to intrusion upon seclusion or public disclosure of private facts. Instead, the FAC speaks in possibilities—searches that may or may not have been made for treatment, may or may not have concerned a condition the user has, and may or may not have led to care—none of which plausibly alleges an individualized privacy injury to Plaintiff.

Plaintiff alleges he searched for and booked an appointment related to his knee and asserts that search terms entered on the booking flow, combined with allegedly identifying information such as IP addresses, amount to "medically sensitive information." FAC ¶ 101. But courts do not infer medical status from a public-facing search or appointment inquiry: Identity (Person A) + Query (Condition B) does not mean Person A has Condition B. *Am. Hosp. Assn. v. Becerra*, 738 F. Supp. 3d 780, 803 (N.D. Tex. 2024). And the FAC still never pleads what Plaintiff actually entered, what was transmitted from his own session, or how any transmission would reveal an individualized medical fact about him. Without those plaintiff-specific facts, Plaintiff cannot plausibly allege a concrete privacy injury under *TransUnion* and *Popa*.

The Northern District of California is in accord. In *Smith v. Facebook, Inc.*, the Northern District of California explained that although plaintiffs alleged Facebook collected URLs which "point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information," because these pages "contain general health information that is accessible to the public at large," the collection of this data did not relate to "the past, present, or future physical or mental health or condition of an individual." 262 F. Supp. 3d 943, 954-55 (N.D. Cal.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2017). In affirming *Smith*, the Ninth Circuit stated that "[i]nformation available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by [HIPAA]—information that unequivocally provides a window into an individual's personal medical history." *Smith v. Facebook, Inc.*, 745 Fed. Appx. 8, 9 (9th Cir. 2018). This is because "[t]he data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical information." *Id.* Likewise, here, Plaintiff's allegations that he searched for physicians on a publicly accessible tool does not reveal any details of his medical information.

In *Maghoney v. Dotdash Meredith, Inc.,* the Southern District of California held that a plaintiff who merely searched for sensitive health-related terms concerning chlamydia, genital warts, and other sexually transmitted infections failed to allege a concrete injury sufficient for Article III standing. 24-cv-2394-AJB-BJW, 2026 BL 59586, at *2, 6 (S.D. Cal. Feb. 23, 2026). The court explained that those searches failed to establish that the information was tied to the plaintiff's own medical history. *Id.* at 6. As the court observed, "The data show only that Plaintiff's searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." *Id.* The court credited Dotdash's argument that "[a]nyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings could enter these searches into an informational website" and emphasized that DotDash's website was not a patient portal. *Id.*

The same reasoning should apply with equal force here. Plaintiff's allegation that he booked physical therapy appointments and later attended treatment for his knee does not alter the analysis. The URLs shown in Plaintiff's examples contain no information about the medical conditions of the hypothetical visitors (let alone his conditions), nor do they indicate that he ever attended an appointment or received

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

treatment. At most, they reflect that someone visited the "request an appointment" page on a publicly accessible website and selected a type of service. At bottom, Plaintiff's inputs on Select Medical's "Find an Appointment" page are not medical information. *See Doe v. MKS Instruments, Inc.*, No. SACV 23-00868-CJC (KESX), 2023 WL 9421115, at *2 (C.D. Cal. Nov. 3, 2023) (Allegation that plaintiff gave defendant "medical information" including "information about disabilities, health and medical conditions," without specific details of what information defendant possessed, was not sufficient to allege defendant possessed plaintiff's medical information); *Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (name, phone number, treating physician names, treatment appointment information and discharge dates and times did not constitute "medical information").)

Plaintiff does not provide any facts to support his conclusory allegation that Defendant disclosed his "protected health information," and likewise does not describe any other "intimate and sensitive health data" he provided to Defendant on its webpages. Thus, Plaintiff does not identify any alleged injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," and therefore allege no injury sufficient to confer standing. *Popa*, 153 F.4th at 789 (9th Cir. 2025).

Plaintiff also alleges that he "received advertisements marketing various related medical procedures, specifically targeted at Plaintiff as a result of Defendant's disclosure of his medical booking information to Google." FAC ¶ 11. But the FAC pleads no facts connecting any specific advertisement to Plaintiff's interaction with the Website. In fact, Plaintiff asserts that "[he] did not know, and had no way of knowing, the reasons he was receiving such advertisements," yet alleges they were a "consequence of [the] interceptions." FAC ¶ 11. These conclusory allegations, unsupported by Plaintiff's own experience, do not constitute concrete harm.

///

**B. <u>Plaintiff Fails to State a Claim for Violation of the ECPA ("Wiretap Act") (Count I)</u>**

Count I fails for multiple independent reasons. To state a Wiretap Act claim, a plaintiff must plausibly allege that the defendant intentionally intercepted the *contents* of an electronic communication using a device. *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 844 (N.D. Cal. 2017). Plaintiff cannot do that here. The FAC does not plead an unlawful interception, does not plead contemporaneous interception, and does not plead any interception of "contents." Count I should be dismissed, without leave.

***i. Plaintiff Fails to Allege Any Unlawful Interception.***

The Wiretap Act does not impose liability on a party to the communication. 18 U.S.C. § 2511(2)(d). A website operator cannot "intercept" communications sent to itself; it cannot eavesdrop on its own conversations. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011). That principle is dispositive here because the interactions Plaintiff describes are, by his own account, communications between a user's browser and Select Medical's Website. *In re Nickelodeon Consumer Priv. Litig*., 827 F.3d 262, 274 (3d Cir. 2016); *see also John Roe, et al. v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024).

In virtually identical circumstances, district courts in the Ninth Circuit have made clear that users of a health care provider's website cannot state a claim under the Wiretap Act against the healthcare provider, because the health care provider was the intended recipient of any alleged communications via the website and therefore could not have intercepted such communications. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("the party exception to Plaintiffs' [Wiretap Act] . . . claim[] exempts Defendants from liability"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024) ("Under the [Wiretap Act], it is not unlawful for a person to intercept electronic communications

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

where such person is a party to the communication.") (internal citation and quotations omitted). Select Medical is identically situated.

Plaintiff attempts to invoke the "crime-tort exception," which applies only where the interception was made for the purpose of committing a criminal or tortious act. FAC ¶¶ 135–137. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotations omitted). Plaintiff thus must adequately allege Select Medical "had an illegal or tortious purpose" that is separate and distinct from the collection and disclosure of Plaintiffs' communications. *Id.* at 1203; *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").

Here, Plaintiff alleges no such separate unlawful purpose. Instead, Plaintiff broadly asserts—without factual support—that the crime-tort exception applies because the same interception also allegedly violated various laws, including the U.S. Constitution, HIPAA, the Federal Trade Commission Act, and invasion of privacy. FAC ¶¶ 116–117, 135–136. But that is contrary to *Sussman*, which makes clear that "the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (violation of HIPAA did not satisfy crime-tort exception). Even where an interception "may well have been a tortious invasion of privacy under state law," it is not a separate illegal or tortious purpose that would trigger the crime-tort exception. *Sussman*, 186 F.3d at 1203.

A recent decision from the Central District of California further confirms the deficiency in Plaintiff's allegations. In *Doe v. Talkiatry Mgmt. Servs., LLC,* the court considered whether the plaintiff's second amended complaint adequately alleged the crime tort exception and held that it did not. 5:25-cv-00781-SSS-DTBx, 2026 BL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28451, at *3 (C.D. Cal. Jan. 22, 2026). The court's reasoning focused on the absence of any allegation that the defendant intercepted or disclosed information in violation of HIPAA as the "primary motivation or a determining factor." *Id*. The Court also relied on decisions from other district courts recognizing that "the mere collection of personal information for market research and advertising was not for the purpose of committing a crime or tort." *Id*. The same principle applies here. Plaintiff alleges, at most, routine data collection associated with advertising or analytics, not conduct undertaken for the purpose of committing a crime or tort.

Indeed, Plaintiff actually alleges the opposite of a tortious or illegal purpose, claiming that Select Medical intercepted their communications to then "monetize[] for targeted advertising purposes" and "increase their profit margins." FAC. ¶¶ 132, 137. The Northern District of California has recently held that where "purpose of the interception was not to 'perpetuate torts on millions of Internet users, but to make money,'" the crime-tort exception to the party-exception is not satisfied. *Lakes v. Ubisoft, Inc*., 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (Wiretap Act crime-tort exception did not apply); *see also Katz-Lacabe v. Oracle Am., Inc*., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (holding that a defendant's desire to "make money" through use of pixels does not meet the crime-tort exception).

Likewise, courts throughout the Ninth Circuit have held that allegations that communications were transmitted to third parties "'for purposes of targeting advertising to [d]efendant's California website users'" were "insufficient to implicate the crime-tort exception" *Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (dismissing Wiretap Act claim); *see also Nienaber*, at *1096 (finding the exception did not apply because plaintiff failed to plead "a tortious or criminal use of the acquired communications separate from their recording, interception, or transmission");

Around the country, courts have likewise dismissed Wiretap Act claims where defendant's purpose in intercepting plaintiffs' communications was to facilitate

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

advertising and marketing. *See, e.g., Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-CV-01475-JEH-RLH, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (dismissing Wiretap Act claim where plaintiff failed to allege that defendant's purpose in using third-party technology was to violate the law rather than facilitating advertising and marketing); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025) (dismissing Wiretap Act claim and reasoning "[b]y [p]laintiff's own account, the 'trackers' were 'used by the [d]efendant to benefit [the defendant] and its marketing and advertising purposes,'…not for the purpose of knowingly committing a violation of the HIPAA.") (internal citation omitted).

***ii. Plaintiff Fails to Allege Contemporaneous Interception.***

Plaintiff also fails to allege contemporaneous interception of the alleged "content" in transit, as required by the Wiretap Act. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (For a communication to be intercepted "in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage). Given the speed of internet communications, the Wiretap Act's application to such transmissions is "undoubtedly limited" and rarely met. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951-52 (N.D. Cal. 2014); *see also Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1077-78 (C.D. Cal. 2023). Plaintiff offers no facts to suggest a third-party intercepted communications before they reached Select Medical.

***iii. There Can Be No Civil Liability for Allegedly Procuring or Aiding and Abetting an Alleged Interception Through Google Analytics.***

Plaintiff claims that Select Medical "procured Google to intercept Plaintiff's and Class Members' electronic communication through Google's tracking technologies." FAC ¶ 131. Plaintiff's underlying allegations seem to identify Google– not Select Medical– as the party that collects information such as his IP address and device information for its advertising purposes through his Google

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

account. FAC ¶ 9. Plaintiff's Wiretap Act claim is not saved by his alternative characterization of the claim as one for aiding and abetting.

The Wiretap Act's private right of action is found in 18 U.S.C. § 2520, which creates a scope of civil liability that is narrower than the criminal liability provision codified in Section 2511. Section 2520(a)'s plain, unambiguous language creates a private civil cause of action only against the person who engages in an unlawful interception, disclosure, or intentional use of electronic communication – not against any other person for procuring, enabling, aiding or abetting another's interception of such. *See, e.g.*, *Kirch v. Embarq Mgmt. Co*., 702 F.3d 1245, 1246–47 (10th Cir. 2012) (holding that there is no civil Wiretap Act claim for "procur[ing]" or "aiding and abetting" an interception); *see also Peavy v. WFAA-TV, Inc*., 221 F.3d 158, 169 (5th Cir. 2000) (same).

When Congress enacted the Wiretap Act in 1986, it specifically excluded civil liability for procurement of an interception (i.e., aiding and abetting), which previously existed under the 1968 predecessor statute. *See Kirch*, 702 F.3d at 1246–47. Courts in the Ninth Circuit are in accord. *In re Toys R Us, Inc., Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *7 (N.D. Cal. Oct. 9, 2001) ("The Court finds that § 2520(a) does not provide a cause of action against aiders and abetters, and, accordingly, that plaintiffs may not proceed … on such theory."); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (no secondary liability under the Wiretap Act); *Herzer v. Redstone*, No. 17-CV-7545 PSG (KSx), 2018 WL 5094933, at *7 (C.D. Cal. July 10, 2018) (same).

Because the Wiretap Act does not provide a private cause of action against an entity that is alleged to have procured or aided and abetted another party to intercept a communication, Plaintiff's Wiretap Act claim should be dismissed as a matter of law.

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

***iv. Plaintiff Fails to Allege any Plausible Interception of "Contents."***

Plaintiff's Wiretap Act claim further fails because Plaintiff has not pleaded facts showing that the "contents" of any communications were disclosed to Google from Select Medical. Under the Wiretap Act, "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014). Here, the alleged "contents" at issue are vague references to Plaintiffs' self-proclaimed "PII and PHI." See, e.g., FAC. ¶¶ 6, 10, 11, 35, 63, 69, 70, 72, 73, 74, 97, 100. The FAC mentions information such as IP address, device information, User-IDs, "Custom Events," URLs, and medical treatment. FAC. ¶¶ 62, 69. But this is record information and the FAC contains no specific "content" allegedly collected from Plaintiff during his visits.

In regard to the threshold question of whether browsing activity on a public website may even constitute "legally protected PII and PHI," i.e., the "contents" of a communication, "the disclosure of browsing activity on a publicly available website that does not relate to 'to the past, present or future physical or mental health or condition of an individual' is not actionable." *Nienaber*, 733 F. Supp. 3d at 1084 (internal quotations omitted); *see also Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) ("Smith II") ("the connection between a person's browsing history [on a public hospital website] and his or her own state of health is too tenuous."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017) ("Smith I") (same).

In *Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the Wiretap Act because it is nothing more

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

than "record information regarding the characteristics of the message that is generated in the course of the communication.'" *Id*. at 935 (quoting *In re Zynga*, 750 F.3d at 1106–07). By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. *Id*. at 935-6. Likewise, in *In re Zynga*, the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107-8.

Here, Plaintiff's FAC fails to allege facts showing that the substance of his alleged communications to anyone at Select Medical have ever been transmitted to Google. Plaintiff's threadbare conclusions that his "protected health information" and "personally identifiable information" are transmitted to Google, FAC ¶ 6, are bereft of facts and therefore insufficient as a matter of law. *See, e.g., Iqbal*, 556 U.S. at 678 (mere conclusions are insufficient); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (rejecting allegations that the defendant "regularly and unlawfully shared highly confidential information" related to customers as conclusory in nature); *B.K.*, 721 F. Supp. 3d at 1064 (dismissing claim for failure "to allege what, if any, medical information or medical records were transmitted or disclosed" and that the plaintiffs' "vague allegations about [them] and their experiences with [the defendant]" and the complaint's "conjectures and hypothetical scenarios and patients" did not allege with "any specificity as to what medical information was allegedly disclosed or when it was disclosed.").

Plaintiff does not allege he ever engaged in doctor-patient communication using the Select Medical Website and indeed, he cannot, because the extent of Plaintiff's interaction with the Website was Select Medical's help in finding available appointments for services he was looking for. The limited allegations relating to Plaintiff's interactions with Select Medical's Website show only that Plaintiff used Select Medical's publicly available "Request an appointment" tool, FAC ¶ 10. But

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiff does not explain what information of *his* was recorded or intercepted. *See generally FAC*.

Plaintiff has not alleged, and cannot allege, that "contents" of his communications were intercepted by Google. Absent allegations specifying substantive contents of Plaintiff's communications, the FAC is left with hypothetical examples of information theoretically disclosed, i.e., URLs. See, e.g., FAC. ¶¶ 95-102. But as *Zynga* makes clear, such information is "record information" that cannot support a Wiretap Act claim. 750 F.3d at 1107. Similarly, actions on a webpage (e.g., button clicks, page navigation, and keystrokes (inputting search terms for a search query)) are record information, not contents of a communication. *Mikulsky v. Bloomingdale's, LLC*, 2024 WL 337180, at *7. As such, Plaintiff has not alleged sufficient facts to state their Wiretap Act claim.

### C. Plaintiff Fails to State a Claim for CIPA § 631(a) (Count II)

CIPA § 631(a) imposes liability on any "person" who: (1) intentionally taps or connects to telephonic systems without authorization ("Clause One"); (2) willfully and without consent, reads or attempts to read the contents of any communication while in transit ("Clause Two"); (3) attempts to use or communicate any information so obtained ("Clause Three"); or (4) aids, agrees with, employs, or conspires with others to unlawfully commit any of the foregoing acts ("Clause Four"). Plaintiff appears to invoke the fourth clause (FAC. ¶ 148). Plaintiff's CIPA claim fails because (1) Plaintiff fails to allege facts showing that "contents" of communications are at issue, and (b) Google does not intercept communications "in transit."

#### *i. Plaintiff Fails to Plead Disclosure of "Content Information."*

Plaintiff fails to allege facts showing that the substantive contents of his communications have ever been transmitted to Google. Plaintiff's recitation of the legal conclusion that "sensitive and confidential personally identifiable information" or "protected health information" are transmitted to Google is insufficient. FAC ¶¶ 150–151.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

In *In re Zynga Privacy Litig.,* the court explained a URL could disclose that a person viewed the "page of a gay support group," yet held that such URLs "function[] like an 'address,'" not "contents" of a communication. 750 F.3d at 1107; *see also Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 935). The allegations here fall squarely within that rule. The screenshot Plaintiff offers depicts a URL address that, at most, references the word "knee." But just as a URL revealing that a user visited the "page of a gay support group" does not disclose the "contents of a communication," a URL simply stating "knee" likewise fails to convey any substantive or individualized medical information. Nor does Plaintiff allege what information he personally entered into the Website, whether he simply put in "CoreVia pelvic health" or "knee," or whether he provided any other individualized treatment related information. A URL that reflects nothing more than a generalized service category is no different from a URL identifying the "page of a gay support group." Accordingly, Plaintiff's bareboned allegations regarding Select Medical's public website do not constitute "content information" under CIPA.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

***ii. Google Does Not Intercept Communications "In Transit."***

Plaintiff does not—and cannot—plead facts showing that Google intercepted any communication while it was "in transit," as required by the second clause of CIPA section 631(a). The *Smith* court has held that nearly identical allegations about technologies that caused browsing information to be sent from a user's browser to Meta did:

> …not establish that the Healthcare Defendants 'send' information which Facebook...More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independently...

262 F. Supp. 3d at 951. Rather than an interception, two separate communications occur—one between Select Medical's Website and the user's browser, and one between the user's browser and Google. No communication is being intercepted in transit. *Id*.

**D. Plaintiff Fails to State a Claim for CIPA § 632 (Count III)**

To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1177-78 (N.D. Cal. May 28, 2024). Plaintiff's claim under § 632 fails for several reasons.

*First*, as outlined above, Plaintiff has not adequately alleged sufficient facts to establish derivative liability against Select Medical. Indeed, Plaintiff has not pled any facts, let alone enough facts to give rise to a plausible inference, that Select Medical "had knowledge of [Google's] conduct ***violating the statute***, let alone had an intent or purpose of aiding it substantially." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024) (emph. added) (dismissing § 632 claim). Plaintiff provides no facts indicating whether he viewed Select Medical's privacy policy or exercised the option to opt out of cookies, despite Select Medical's clear banner on its Website referencing both the privacy policy and the ability for patients to opt out. Instead, Plaintiff relies on a conclusory allegation that he and California Subclass Members expected their communications to remain confidential to Select Medical, "because of Defendant's consistent representations that these communications would remain confidential." FAC ¶ 159. Yet Plaintiff fails to identify what "consistent representations" he is referencing.

*Second*, Plaintiff's § 632 claim fails because he has not plausibly alleged his communications on the Website were "confidential." A conversation is deemed to be "'confidential' under § 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006)). And in California, courts have "developed a presumption that ***Internet communications do not*** reasonably give rise to that expectation." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (emph. added); *Campbell v. Facebook*

*Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632 . . . ."). Nothing about Plaintiff's limited and vague allegations warrants a deviation from this general rule. It is unreasonable to suggest that interactions with a publicly accessible platform without any login requirement could create such an expectation of confidentiality. Plaintiff provides no facts to explain why he believed such an expectation existed. Unlike a private phone call or a secure patient portal, Plaintiff's interaction took place on a public website where data transmission is routine. As such, Plaintiff's § 632 claim should be dismissed. *In re Google Assistant Priv. Litig.*, 457 F. Supp. at 828 (dismissing § 632 claim where plaintiff failed to adequately plead confidential communications).

Third, Plaintiff does not plausibly allege that Select Medical "use[d] an electronic amplifying or recording device." Cal. Penal Code § 632(a). And to the extent Plaintiff's theory is that third-party technologies received information, Plaintiff fails to allege Select Medical's own "use" of a recording device to record a communication, as opposed to alleged conduct by the third parties. Absent well-pled facts showing Select Medical used a recording device to record the substance of a communication, Count III should be dismissed. *See People v. Soles,* 68 Cal. App. 3d 418, 419 (Cal. Ct. App. 1977).

### E. <u>Plaintiff Fails to State a Claim for Invasion of Privacy Under the California Constitution</u>

A California constitutional privacy claim requires a showing of: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *Hill v. Nat'l Coll. Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994). Plaintiff cannot establish an actionable invasion of privacy claim under the California Constitution.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Plaintiff has not alleged a legally protected privacy interest in the information accessed because he has failed to allege what personalized information of *his* was collected. *See supra* Section IV.A. *Even if* the website technology collected the types of information it is allegedly capable of collecting -- "custom events," URLs, IP addresses, user-IDs, the type of medical appointment a user requests, a patient's auid identifier, and device information of Select Medical users – from Plaintiff's device's browser, this information cannot be accurately traced back to identify Plaintiff as the public website visitor. *See Saeedy v. Microsoft Corp.*, No. 23-cv-1104, 2023 WL 8828852, at *5-6 (W.D. Wash. Dec. 21, 2023) (finding no "legally protected privacy interest in which [plaintiffs] had a reasonable expectation of privacy" where the defendant collected "internet browsing activities, internet searches," "online shopping behavior," "keyword search terms, URLs, and unique user identifiers and cookies" but no "personal" information).

In the same vein, Plaintiff has not established that he (or any other public Website user) possessed a reasonable expectation of privacy as to the information collected—it is a free, public website with a privacy policy that outlines the way the Select Medical operates. *See supra* Section IV.D.

Lastly, Plaintiff has not plausibly alleged a "serious" invasion. To be actionable, the challenged conduct must be "sufficiently serious in its nature, scope, and actual or potential impact to constitute an egregious breach of the social norms." *Hill*, 7 Cal. 4th at 37. The conduct alleged here is ordinary online analytics and advertising data collection associated with a public website. That is not the kind of "highly offensive" or "egregious" conduct required under *Hill*. *See also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008); *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("[t]he Court cannot conclude that the data collection alleged here comprises highly offensive behavior. . . . Contemporary internet browsing involves the collection of users' data . . . and a reasonable user

should expect as much."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Because Plaintiff alleges, at best, disclosure of public website activity, his California constitutional privacy claim fails.

## VI. CONCLUSION

Plaintiff has had a full opportunity to plead standing. He has not alleged a concrete injury, and the FAC fails under the Wiretap Act, CIPA, and the California Constitution. The FAC should be dismissed with prejudice.

Dated: March 31, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Sean P. Killeen*
Sean P. Killeen

BAKERHOSTETLER
*Attorneys for Defendant*

**C.D. Cal. L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant Select Medical Corporation, certifies that this brief contains 6,994 words, which complies with the word limit of C.d. Cal. L.R. 11-6.1.

*/s/ Sean P. Killeen*
Sean P. Killeen