**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUDOLPH CAMPBELL, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br><br>SELECT MEDICAL CORPORATION d/b/a SELECT PHYSICAL THERAPY,<br><br>Defendant. | Case No. 2:25-CV-11408-MCS-PD<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Hon. Judge Mark C. Scarsi<br><br>Date: June 22, 2026<br>Time: 9:00 AM<br>Courtroom: 7C |

## TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. PLAINTIFF SUFFERED A CONCRETE INJURY FROM DEFENDANT'S CONDUCT ........ 3

A. Plaintiff's Allegations Sufficiently Demonstrate His Personal Information Was Intercepted ........ 6

B. Plaintiff Scheduled And Attended His Medical Appointment ........ 7

C. The Advertisements Plaintiff Received Are Immaterial ........ 8

II. PLAINTIFF STATES A CLAIM UNDER THE ECPA ........ 9

A. The Crime-Tort Exception Applies ........ 9

B. Plaintiff Alleges Contemporaneous Interception ........ 11

C. Plaintiff's Claim is Not Based on a Derivative Theory of Liability ........ 12

D. Plaintiff Sufficiently Alleges the "Contents" of His Communications Were Disclosed ........ 13

III. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 ........ 14

A. Plaintiff Alleges the Disclosure of "Content Information" ........ 14

B. Plaintiff's Communications Were Intercepted "In Transit" ........ 15

IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 632 ........ 16

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ........ 19

CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Allison v. PHH Mortgage*,
2026 WL 899438 (N.D. Cal. Mar. 27, 2026) ........ 9, 17

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ........ 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 14

*B.N. v. Oregon Reproductive Medicine, LLC*,
2026 WL 915343 (D. Or. Apr. 3, 2026) ........ 8, 9, 13

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 13, 14

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 17

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 4

*Crano v. Sojern, Inc.*,
2025 WL 2689267 (N.D. Cal. Sept. 19, 2025) ........ 6

*D'Antonio v. Smith & Wesson Inc.*,
--- F. Supp. 3d ----, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026) ........ 16

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ........ 4

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 15

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ 17

*Doe v. MKS Instruments, Inc.*, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ........ 7

*Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 20

*Doe v. Talkiatry Mmgt. Servs., LLC*, 2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) ........ 10, 14

*Doe v. Talkiatry Mgmt. Servs*. 2026 WL 206483 (C.D. Cal. Jan. 22, 2026) ........ 10

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. June 9, 2025) ........ passim

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017) ........ 8

*Flanagan v. Flanagan*, 41 P.3d 575 (Cal. 2002) ........ 17

*Foman v. Davis*, 371 U.S. 178 (1962) ........ 20

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) ........ 4, 8

*Gabrielli v. Haleon US Inc.*, --- F. Supp. 3d ----, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 4

*Gaige v. Exer Holding Co.*, 2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ........ 5, 9, 10

*Garcia v. Truist Fin. Corp.*, --- F. Supp. 3d ----, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) ........ 6, 7, 12, 17

*Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255 (2020) ........ 17

*Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522 (C.D. Cal. Mar. 31, 2026) ........ 16, 17

*Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 18

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002)....................3

*Gray v. Luxottica of Am., Inc.*,
2024 WL 5689566 (C.D. Cal. Dec. 16, 2024)....................3

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................4

*Hassid v. Alex & Ani, LLC*,
--- F. Supp. 3d ----, 2026 WL 160535 (C.D. Cal. Jan. 20, 2026)....................6

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................19, 20

*Hubbard v. Google LLC*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025)....................20

*I.T. v. ChoicePoint LLC*,
2025 WL 2495079 (W.D. Wash. Aug. 29, 2025)....................9, 13, 19

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)....................19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................4, 18, 19

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)....................18

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021)....................19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................20

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................1, 13, 18, 19

*In re Zynga Privacy Litigation,*
750 F.3d 1098 (9th Cir. 2014)....................13, 14

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026)....................6

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 11

*Krzyzek v. OpenX Techs., Inc.*,
--- F. Supp. 3d ----, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026) .......... 4, 5, 10

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) .......... 18

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 20

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 15

*M.H. v. Done Global Inc.*,
2025 WL 629613 (N.D. Cal. Feb. 26, 2025) .......... 16

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 7

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 13

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
906 F. Supp. 2d 1017 (C.D. Cal. 2012) .......... 11

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2023) .......... 10

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .......... 19

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 11

*Ojeda v. Kaiser Permanente Int'l., Inc.*,
2022 WL 18228249 (C.D. Cal. Nov. 29, 2022) .......... 18

*People v. Soles*
68 Cal. App. 3d 418 (Cal. Ct. App. 1977) .......... 18

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)....................3, 4, 5

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................9, 10, 13

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025)....................9, 11

*Ramirez v. LasikMD USA, Inc.*,
2026 WL 194855 (S.D. Cal. Jan. 26, 2026)....................5, 10

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)....................9, 10

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008)....................20

*Rusow v. SkinSpirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025)....................20

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023)....................19

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)....................3

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025)....................12

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026)....................5

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)....................12

*Shah v. MyFitnessPal, Inc.*,
2026 WL 216334 (N.D. Cal. Jan. 27, 2026)....................4, 5

*Silvia Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026)....................5

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....................7, 15

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) ........ 17

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ........ 16

*Smith v. YETI Coolers, LLC*
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 17

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 20

*Tash v. Vision Serv. Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026) ........ 4, 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021). ........ 4

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) ........ 18

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023) ........ 16

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. Aug. 14 2023) ........ 15

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........ 7

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F. Supp. 3d 1139 (E.D. Cal. 2025) ........ 5

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 13

**STATUTES**

18 U.S.C. § 2520 ........ 12

42 U.S.C. §§ 1320d ........ 10

Cal. Pen. Code § 31 ........ 16

**RULES**

Fed. R. Civ. P. 8(a)(2)........................................................................................2

Fed. R. Civ. P 12(b)(6) ........................................................................................3

**REGULATIONS**

45 C.F.R. § 160.103........................................................................................1

45 C.F.R. § 164.506........................................................................................16

45 C.F.R. § 164.508........................................................................................16

## INTRODUCTION

Defendant Select Medical Corporation d/b/a Select Physical Therapy ("Defendant") operates a notional chain of outpatient physical therapy centers. *See* First Amended Complaint (ECF No. 17) at ¶ 2 ("FAC"). Defendant encourages its patients to book appointments through its website, www.selectphysicaltherapy.com (the "Website"). Plaintiff Rudolph Campbell ("Plaintiff") visited Defendant's Website for precisely that purpose; to book (and attend) physical therapy appointments for his knee. FAC ¶ 10.

Unbeknownst to its patients, including Plaintiff, Defendant discloses information related to their medical appointment to Google. Such information is not shared for the purpose of providing treatment. FAC ¶¶ 9, 11, 49–94, 106, 132. Instead, the information Defendant intercepts and discloses to Google is not only utilized for Defendant's benefit, but also for Google's own independent use. FAC ¶ 82. Defendant discloses this information to Google without patients' consent or written authorization, despite the fact that this information is protected by federal law. ¶¶ 11, 94, 105–06, 114, 139, 147, 170.

As a HIPAA covered entity, Defendant has a duty to protect the health information it receives. HIPAA defines "protected health information" as "individually identifiable" information that is "created or received by a health care provider" (or similar entities) that "[r]elates to the past, present, or future physical or mental health or condition of an individual" or the "provision of health care to an individual." 45 C.F.R. § 160.103; FAC ¶¶ 28, 47, 136, (emphasis added). Courts throughout the Ninth Circuit recognize "information which shows patient-status constitutes protected health information." *See e.g. In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 792 (N.D. Cal. 2022). This is true regardless of whether the individual has a preexisting relationship with the regulated entity.

The First Amended Complaint details exactly how the Google tracking technologies function: every time a patient interacts with the Website, including when Plaintiff booked his physical therapy appointment for his knee, Defendant intercepts and discloses to Google the patients' personally identifiable information ("PII") and contents of their communication in the form of custom events and detailed URLs. *See e.g.,* FAC ¶ 69–75. Plaintiff, having never authorized or consented to the disclosure of his communications to Google, had no reason to expect that his protected health information would be disclosed to one of the largest advertising companies in the world. FAC ¶¶ 11, 94, 105–06, 114, 139, 147, 170. Defendant's conduct, as alleged in the Amended Complaint, violates state and federal law.

This action seeks to hold Defendant accountable for its intentional interception, recording, and exploitation of Plaintiff's and class members' private and legally protected information related to their physical therapy appointments. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("MTD") does not grapple with Plaintiff's well-pled allegations. ECF No. 18. Rather, it relies on misstatements of law and mischaracterizations of fact. Plaintiff has adequately alleged he did not consent to the collection of his confidential health information, that plaintiff in fact had a reasonable expectation of privacy (particularly given the fact that information at issue is legally protected health information), that Defendant intentionally intercepted and disclosed such information via Google's tracking technologies, and that Defendant's intrusion was highly offensive. Because Plaintiff has plausibly alleged violations of applicable privacy statutes, Defendant's Motion to Dismiss should be denied in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief . . . . " Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint

must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Article III, a plaintiff must "have suffered an 'injury in fact' that is both 'concrete and particularized.'" *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (quotation omitted). Concrete harms include tangible harms as well as intangible harms, so long as an intangible harm "bears 'a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Gray v. Luxottica of Am., Inc.*, 2024 WL 5689566, at *4 (C.D. Cal. Dec. 16, 2024) (quotation omitted). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court accepts material allegations as true and construes them in the light most favorable to plaintiff. *Iqbal*, 556 U.S. at 678. If dismissal is appropriate, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF SUFFERED A CONCRETE INJURY FROM DEFENDANT'S CONDUCT

Defendant argues Plaintiff's allegations amount to "[n]aked assertions of harm" insufficient to establish Article III standing. MTD at 12. That is wrong.

To establish Article III standing, "a plaintiff must show that (i) [they] suffered

an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423.

In *Popa*, the Ninth Circuit reaffirmed the principle that Article III standing "requires a concrete injury even in the context of a statutory violation." 153 F.4th at 789. But that decision did not upend settled Ninth Circuit law. *See, e.g.*, *DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *2 (N.D. Cal. Oct. 30, 2025) ("*Popa* did not set forth a new rule of law"); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ("Rather than introducing new case law that adds heightened requirements for privacy harms, *Popa* uses the same common law rules discussed above and evaluates the specific facts of that case."). As discussed by the Ninth Circuit, the allegations in *Popa* "identifie[d] no embarrassing, invasive, or otherwise private information collected." 153 F.4th at 791.

Following that decision, district courts have continued to find the interception of sensitive information by website vendors as bearing a 'close relationship' to traditional privacy torts. *See, e.g.*, *Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ----, 2026 WL 206855, at *4 (N.D. Cal. Jan. 27, 2026) (analogizing the facts to common-law intrusion upon seclusion); *Tash v. Vision Serv. Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (finding standing where allegations similar to disclosure of private information and intrusion upon seclusion); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (likening the allegations to common law public disclosure of private facts). Many other courts, including the Ninth Circuit, have found that the historical right to privacy also encompasses "an individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. 2023) (holding the same); *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) (same); *Gabrielli v. Haleon US Inc.*, --- F. Supp. 3d ----, 2025 WL 2494368, at *6 (N.D. Cal.

Aug. 29, 2025) (collecting cases) (same).

As with traditional privacy torts[1], it is important to consider the "sensitivity of the information at issue." *MyFitnessPal, Inc.*, 2026 WL 216334, at *3; *see also Popa*, 153 F.4th at 791 (finding record information generated while browsing a pet store's website was not embarrassing, invasive, or private); *Wooten v. BioLife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (stating "the invasive nature of the information collected was crucial to *Facebook*'s holding"); *Krzyzek*, 2026 WL 206855, at *4 (finding the alleged facts analogous to a "highly offensive intrusion of privacy"). As described by one court within this District:

> There are thus at least two ways tracking technologies may result in highly offensive conduct. First, the information could be ***especially sensitive, for example health*** or financial information. Second, the scope of the collection may be so broad, for example by tracking a Plaintiff's activity across other websites, that it renders the tracking highly offensive.

*Garcia*, 2026 WL 925028, at *5 (cleaned up) (emphasis added).

The weight of authority has found that the disclosure of protected health information qualifies as a concrete injury for purposes of Article III standing. *See, e.g.*, *Semien v. PubMatic Inc.*, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026) (finding Article III standing where "sensitive information like health status and treatment" were disclosed); *Gaige v. Exer Holding Co.*, 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025) (confirming that disclosure of "Plaintiff's medical information" sufficient to establish standing); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 836 (E.D. Cal. June 9, 2025) (same); *Ramirez v. LasikMD USA, Inc.*, 2026 WL 194855, at *2 (S.D. Cal. Jan. 26, 2026) (same). This is unsurprising, particularly when compared to other authorities that found Article III standing

---

[1] Traditional causes of action regarding the right to privacy, such as intrusion upon seclusion and public disclosure of private facts, "require 'highly offensive' intrusions or disclosures." *Silvia Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *4 (C.D. Cal. Apr. 1, 2026)

sufficiently pleaded in objectively less "sensitive" contexts. *See MyFitnessPal, Inc.*, 2026 WL 216334, at *3 ("[P]ersonal topics like nutrition and fitness tracking—could plausibly be understood . . . to be embarrassing, invasive, or otherwise private information.") (quotation omitted); *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (finding retail site purchase information sufficiently private to convey Article III standing); *Crano v. Sojern, Inc.*, 2025 WL 2689267, at *6 (N.D. Cal. Sept. 19, 2025) (denying motion to dismiss for lack of Article III standing when disclosures involved hotel booking details).

Defendant makes three arguments as to why Plaintiff does not possess Article III standing. MTD at 12–17. All three arguments fail as a matter of law.

### A. Plaintiff's Allegations Sufficiently Demonstrate His Personal Information Was Intercepted

Plaintiff booked an appointment for physical therapy on Defendant's Website for purposes of treating his knee after having it replaced. *See* FAC ¶ 10. The appointment was scheduled and ultimately attended by Plaintiff at Defendant's Los Angeles-Park Terrace location. *Id.* And yet, Defendant claims that "Plaintiff's description of his own Website interaction is fatally sparse." MTD at 13 (de-emphasized). This argument ignores Plaintiff's allegations.

At the outset, Plaintiff's use of hypothetical screenshots and figures do not discount his claims. *See Hassid v. Alex & Ani, LLC*, --- F. Supp. 3d ----, 2026 WL 160535, at *3 (C.D. Cal. Jan. 20, 2026) (finding the argument that "the Complaint contains only general allegations about what might happen if someone were to visit the Website, and merely describes hypothetical users and . . . general screenshots" unpersuasive) (cleaned up); *Garcia v. Truist Fin. Corp.*, --- F. Supp. 3d ----, 2026 WL 972328, at *6 (C.D. Cal. Mar. 25, 2026) ("[T]he Court can reasonably infer that Garcia's experience using the website was the same as that of any other loan applicant.").

Here, Plaintiff plainly alleges (i) that he booked an appointment for physical therapy (ii) at Defendant's Los Angeles-Park Terrace location, (iii) specifically to receive treatment for his knee. FAC ¶¶ 10, 95–96, 102. The accompanying screenshots only serve to add further facts that visually depict how Defendant disclosed Plaintiff's PHI—by transmitting full string URLs which conveyed his appointment details. *Id.* ¶¶ 69, 101. And to be clear, such disclosures occur in the same manner "irrespective of the condition treatment is being sought for." *Id.* ¶ 101. This is more than sufficient at the pleading stage to establish that Plaintiff's "experience using the website was the same as that of any other" medical patient. *Truist Fin. Corp.*, 2026 WL 972328, at *6.

**B. Plaintiff Scheduled And Attended His Medical Appointment**

Defendant's second argument is little different than its first. In Defendant's words, Plaintiff's interaction with the Website "speaks in possibilities," which "may or may not have led to care." MTD at 15. Wrong again.

As discussed in § III.A, *infra*, Plaintiff did not simply peruse the Website before deciding to seek services elsewhere. He actually booked and attended multiple scheduled physical therapy appointments. FAC ¶ 10. This alone distinguishes all of Defendant's cited authorities, as it actually pertains to the "past, present, or future…provision of health care to an individual." *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 804 (N.D. Tex. 2024) (off-point summary judgment opinion related to the HHS' authority to pass administrative law); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (public-facing webpages provided no details about a person's "past, present, or future physical or mental health"); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *2 (S.D. Cal. Feb. 23, 2026) (non-wiretapping case in which mere search queries, not appointment bookings, were insufficient to establish standing); *Doe v. MKS Instruments, Inc.*, 2023 WL 9421115, at *2 (C.D. Cal. Nov. 3, 2023) (conclusory claims of "medical information" not sufficient); *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *4 (S.D.

Cal. Oct. 18, 2021) (no allegations "that he received medical treatment during that examination"). Defendant contends that "Plaintiff's allegation that he booked physical therapy appointments and later attended treatment for his knee does not alter the analysis." MTD at 16. To the contrary, it is fatal to Defendant's arguments. In *B.N. v. Oregon Reproductive Medicine, LLC*, the court considered the same argument that Defendant puts forth. 2026 WL 915343, at *4 (D. Or. Apr. 3, 2026). There, the court differentiated between merely browsing "public portions of Defendant's website" and making/attending an appointment. *Id.* The court found that the latter was sufficient to plead an unlawful disclosure of PHI, as the disclosure of an appointment combined with its purpose revealed the treatment plaintiff sought. *Id.* The same applies here.

**C. The Advertisements Plaintiff Received Are Immaterial**

Finally, Defendant faults Plaintiff for pleading "no facts connecting any specific advertisement to Plaintiff's interaction with the Website." MTD at 17. This is immaterial.

Failure to allege seeing targeted advertisements does not deprive a plaintiff of Article III standing. *Tash*, 2026 WL 1012680, at *4 ("Defendants are incorrect that Tash's failure to allege he was subjected to targeted ads because of this disclosure deprives him of an injury worthy of standing."); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (stating that "privacy torts do not always require additional consequences to be actionable."). Here, Defendant conflates the harm suffered by Plaintiff with merely a symptom of that harm. *See Frasco*, 349 F.R.D. at 579 ("[T]he legal injury at the heart of plaintiffs' case—occurs when the personal information is obtained in the first instance."). In other words, the harm suffered by Plaintiff was the disclosure of his legally protected PII and PHI, not the receipt of advertisements resulting from this disclosure.

## II. PLAINTIFF STATES A CLAIM UNDER THE ECPA

"To state a claim under the ECPA, a plaintiff must show that the defendant (1) intentionally (2) intercepted . . . (3) the contents of (4) an electronic communication, (5) using a device." *Gaige*, 2025 WL 559719, at *5 (quotation omitted). Plaintiff has demonstrated all elements.

### A. The Crime-Tort Exception Applies

Defendant claims that it is exempt from liability because Plaintiff "alleges no such separate unlawful purpose" to invoke the crime-tort exception. MTD at 19. That is wrong.

The ECPA contains a "party exemption" which extinguishes liability against persons who are a party to the communication, "so long as such interceptions [are] not for the purpose of committing any criminal or tortious act." *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) (quotations omitted). As such, the "crux of the parties' disagreement on this claim thus centers on whether the crime-tort exception applies." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1090 (N.D. Cal. 2025). To invoke the exception, a plaintiff "must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent of* the intentional act of recording or interception itself." *R.C.*, 733 F. Supp. 3d at 876 (emphasis in original); *accord R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) ("It is irrelevant that Prime Healthcare allegedly disclosed the Private Information at the same time as its interception.").

Notably, "[m]ultiple courts have rejected [the] argument" that a violation of HIPAA cannot serve as a separate and independent criminal or tortious purpose. *I.T. v. ChoicePoint LLC*, 2025 WL 2495079, at *8 (W.D. Wash. Aug. 29, 2025) ("[A]n intent to disclose or use private information in violation of HIPAA is distinct from the interception") (collecting cases); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 849 (finding allegations of interceptions in violation HIPAA sufficient to allege crime-

tort exception); *B.N.*, 2026 WL 915343, at *3 ("[T]he weight of authority supports that an alleged violation of HIPAA can constitute an independent act"); *see also Allison v. PHH Mortgage*, 2026 WL 899438, at *11 (N.D. Cal. Mar. 27, 2026) (finding common law invasion of privacy alone sufficient to satisfy crime-tort exception); *R.C.*, 733 F. Supp. 3d at 901–02 (same).

The authority relied upon by Defendant does not alter this analysis. MTD at 19. This is because the "divergent outcomes are based on differences in the parties' actual pleadings, particularly with respect to whether the complaint pleads a HIPAA violation." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *3 (W.D. Wash. Mar. 4, 2023). For example, in *Doe v. Talkiatry Mgmt. Servs*., LLC, it was held that the plaintiff failed to allege that the primary motivation or a determining factor in the defendant's actions was to commit a crime or tort. 2026 WL 206483, at *3 (C.D. Cal. Jan. 22, 2026) ("Doe II"). But this is primarily because, in Doe I, the plaintiff conceded to "not fill[ing] out any specific forms seeking personal information" and even "opted not to use Defendant's services." *Doe v. Talkiatry Mmgt. Servs., LLC*, 2025 WL 3190813, at *6 (C.D. Cal. Oct. 1, 2025). Plaintiff's allegations are materially different. Here, Plaintiff booked an appointment for physical therapy on his knee. FAC ¶¶ 10, 95–96. The subsequent disclosures to Google identified Plaintiff's patient status and specific medical condition in violation of 42 U.S.C. §§ 1320d-d9, 1320d-6. Id. ¶¶ 39, 41–42; see also id. ¶¶ 43–48 (further violations of HIPAA). This is fully sufficient to allege an independent criminal or tortious intent. See Gaige, 2025 WL 559719, at *5 (similar allegations of HIPAA violations sufficient to plead crime-tort exception); LasikMD USA, Inc., 2026 WL 194855, at *3 (same).

Defendant also argues that its pursuit of marketing and financial gain prohibits application of the crime-tort exception. MTD at 20–21. However, the weight of authority supports a finding to the opposite. *See, e.g.*, *Krzyzek*, 2026 WL 206855, at *8 ("The Court is not persuaded by the authorities OpenX's cites to argue financial

motives cannot constitute tortious motive."); *Riganian*, 791 F. Supp. 3d at 1090 ("[C]omitting a tort and seeking a profit are not mutually exclusive (if anything, the latter is often the reason for the former)"); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 850 ("The court joins those courts that have held a monetary purpose does not insulate a party from liability under the ECPA.").

To illustrate the problematic reasoning of accepting Defendant's argument, *Prime Healthcare Servs., Inc.* is instructive:

> Take blackmail, which the Ninth Circuit gave as an example of an ECPA violation. Under Prime Healthcare's reading, the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money. There, the interceptor's primary purpose would be to make money. And blackmail would merely be a means by which to make money. Of course, this is often the end goal for blackmail. Under Prime Healthcare's reading, blackmail would rarely, if ever, violate the ECPA. This cannot be the case.

2025 WL 103488, at *7 (cleaned up).

**B. Plaintiff Alleges Contemporaneous Interception**

Defendant argues that Plaintiff "offers no facts" to allege communications were intercepted in-transit. MTD at 21. Not so.

Defendant attempts to characterize Plaintiff's allegations as equivalent to cases in which communications were clearly in storage. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 875 (9th Cir. 2002) (involving "*a request to the server to make* an electronic copy of the website") (emphasis added); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 953 (N.D. Cal. 2014) (finding no contemporaneous interception with regard to emails already in storage); *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (same). And *Licea v. Am. Eagle Outfitters, Inc.* was found to be deficient because the plaintiff supplied "bare allegations." 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023).

Here, Plaintiff provides highly technical descriptions of Google's Tracking Technologies. FAC ¶¶ 49–94 . In addition, Plaintiff demonstrates through detailed screenshots the technologies' capabilities in tandem with allegations that interception occurs "in real time." *Id.* ¶ 101; *see also* ¶¶ 97–102; Figs. 1–3. These allegations point in favor of finding that interception was contemporaneous. *See Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) ("The Complaint contains a detailed description of the pixel and related technology at issue, including screenshots of the source code."); *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding detailed allegations sufficient); *see also Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838 (reminding that "the court must accept as true Plaintiff's allegations" of real-time interception). At the pleading stage, nothing more is required.

### C. Plaintiff's Claim is Not Based on a Derivative Theory of Liability

Defendant states that "Plaintiff's underlying allegations seem to identify Google—not Select Medical—as the party that collects information." MTD at 21–22. Therefore, according to Defendant, it cannot be held liable under the ECPA on a theory of derivative liability. *Id.* Defendant contorts Plaintiff's allegations.

Nowhere in the FAC does Plaintiff allude to 18 U.S.C. § 2520. *See generally* FAC. Plaintiff explicitly alleges that "Defendant [not Google] intercepted Plaintiff's and Class Members' electronic communications." *Id.* ¶ 130; *see also id.* ¶¶ 132, 135, 139 (same). Defendant's attempt to read in different facts is both inappropriate and unpersuasive. Plaintiff's allegations are fully in-line with the weight of authority where online hosts were found directly liable under the Federal Wiretap Act. *See, e.g.*, *Garcia*, 2026 WL 972328, at *11 (finding that Truist intercepted plaintiff's information, not LinkedIn).

**D. Plaintiff Sufficiently Alleges the "Contents" of His Communications Were Disclosed**

Defendant argues that Plaintiff "fails to allege facts showing that the substance of his alleged communications" were intercepted. MTD at 24. That is unconvincing.

Under both the ECPA and CIPA, courts interpret "content" as being "the intended message conveyed by the communication . . . not includ[ing] record information." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *4 (N.D. Cal. Dec. 30, 2024) (quotations omitted); *see also Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."). Courts within the Ninth Circuit have agreed that "content" includes "the names of buttons clicked." *In re Meta*, 647 F. Supp. 3d at 795. "Content" also includes "URLs which disclose search terms that reveal website users' personal interests, queries, and habits." *R.C.*, 733 F. Supp. 3d at 902. And *In re zy Priv. Litig.*, which Defendant cites, held that "[u]nder some circumstances . . . divulging a URL containing [a] search term to a third party could amount to a disclosure of the contents of a communication." 750 F.3d 1098, 1108–09 (9th Cir. 2014).

Defendant falsely claims that "Plaintiff does not allege he ever engaged in doctor-patient communication using the Select Medical Website." MTD at 24. But Plaintiff "visited and booked appointments for physical therapy" specifically for "treatment for his knee." FAC ¶ 10. As such, "Google received at least 'Custom Events' and URLs that disclosed the medical treatment" Plaintiff received. *Id.* ¶ 69. When viewing the real transmissions, Defendant intercepts full-string URLs that show the appointment request and the type of the appointment requested. Figs. 1–3. Similar cases involving the creation of medical appointments are in accord that these disclosures constitute "content." *See, e.g.*, *I.T.*, 2025 WL 2495079, at *7 ("[A]s many other courts have found, the information . . . that Plaintiffs sought an

appointment . . . does constitute the 'contents' of the communication") (collecting cases); *B.N.*, 2026 WL 915343, at *4 (holding the same and also finding persuasive that "Plaintiff later attended her consultation and received [medical] treatment from Defendant."). Defendant's citation to other cases involving mere record information are inapposite. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) ("The Court finds that these interactions are more akin to [] 'record' information"); *B.K. v. Eisenhower Med. Ctr.* ("*B.K. I*"), 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024) ("Plaintiffs fail to allege any specificity as to what medical information was allegedly disclosed").

## III. PLAINTIFF STATES A CLAIM UNDER CIPA § 631

Defendant claims it is not derivatively liable for aiding or abetting any underlying CIPA violation for two reasons. *See* MTD at 25. Both are unconvincing.

### A. Plaintiff Alleges the Disclosure of "Content Information"

Contrary to Defendant's argument, and as stated *supra* in § II.D, Plaintiff sufficiently alleges that the content of his information was intercepted under CIPA. *See Brodsky*, 445 F. Supp. 3d at 127 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

Defendant's hypothetical from *In re Zynga* is fully distinguishable. MTD at 26. In *Zynga*, the Ninth Circuit posited whether the URL transmitted from visiting a Facebook page "of a gay support group" would constitute as "content information." 750 F.3d at 1108. Answering in the negative, the Court reasoned that merely viewing a page was distinguishable from the communication inherently involved with "specific search terms." *Id.* The facts here are plainly different, because Plaintiff did not merely view Defendant's Website. *See generally* FAC. Instead, Plaintiff clearly searched for, and submitted, his desire to receive physical therapy treatment for his knee. *Id.* ¶ 10. Had Plaintiff only visited the site, without creating an appointment, then the facts would be more akin to *Talkiatry Mgmt. Servs., LLC*, where the plaintiff merely browsed a website, short of booking an appointment.

2025 WL 3190813, at *6. In short, the booking of Plaintiff's appointment is the meaning or purport of Plaintiff's communication with Defendant.

**B. Plaintiff's Communications Were Intercepted "In Transit"**

Again, as stated in § II.B *supra*, Plaintiff alleges contemporaneous interception.

Specifically, Plaintiff alleges that:

> Google Analytics is incorporated into third-party websites and apps, including the Website, by adding a small piece of JavaScript measurement code to each page on the site. This code immediately intercepts a patient's interaction with the webpage every time the patient visits it, including what pages they visit and what they click on . . . . In other words, when interacting with the Website, an HTTP Request is sent to Defendant's server, and that server sends an HTTP Response including the Markup that displays the website visible to the patient and Source Code, including Google's tracking technologies.

FAC ¶¶ 62, 64; *see also* ¶ 88 (describing DoubleClick API).

Nothing more is required. *See, e.g.*, *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F.Supp.3d 969, 1078-79 (C.D. Cal. Aug. 14 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *12 (S.D. Cal. June 13, 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement.") (quotation omitted); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024) ("M.G. alleges that Google simultaneously intercepted class members' data in real time by using embedded Google Analytics Code . . . . Thus, M.G. has alleged real-time interception of users' information."). *Smith v. Facebook, Inc.* is off point in that it contemplated the capability of the respective technology to determine whether the court possessed jurisdiction. 262 F.

Supp. 3d 943, 951 (N.D. Cal. 2017). At this stage, Plaintiff's allegations are to be taken as true. *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838.

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 632

Defendant argues that "Plaintiff's claim under § 632 fails" for three reasons. MTD at 26. None of Defendant's arguments are persuasive.

***First***, Defendant argues that Plaintiff has failed to plead facts sufficient to establish derivative liability. *Id.* Although section 632 does not expressly provide for it, "derivative liability may be imposed" by applying section 31 of the CIPA.[2] *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026); *accord Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). Defendant does not challenge this; rather, Defendant argues that Plaintiff fails to plead facts "indicating whether he viewed Select Medical's privacy policy" or opted out of cookie sharing. MTD at 27. But this misstates what is required of Plaintiff.[3] Rather, "[c]ourts have imputed the civil liability standard for aiding and abetting" under section 632. *Gianne*, 2026 WL 925522, at *8. This standard requires a showing that Defendant (i) "ha[d] knowledge of [Google's] breach of duty" and (ii) provided "substantial assistance." *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025). Courts have found allegations of purposeful installation of tracking technologies, done for marketing or monetary gain, to be sufficient to satisfy the aiding and abetting scienter. *See M.H. v. Done Global Inc.*, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) ("The Complaint alleges that Done purposefully installed these tracking technologies . . . to optimize

---

[2] "All persons concerned in the commission of a crime . . . or aid and abet in its commission . . . are principals in any crime so committed." Cal. Penal Code § 31.

[3] Assuming, *arguendo*, Defendant proved Plaintiff consented to cookies or the privacy policy (it did not), consent is insufficient to cure the underlying HIPAA violation. *Compare* 45 C.F.R. § 164.506 (consent) *with* 45 C.F.R. § 164.508 (authorizations); *cf. Yates v. Evernorth Health, Inc*, 2:25-CV-02773, ECF No. 20 at 7–8 (E.D. Pa. Dec. 10, 2025).

its own advertising"); *D'Antonio v. Smith & Wesson Inc.*, --- F. Supp. 3d ----, 2026 WL 446310, at *2 (N.D. Cal. Feb. 17, 2026) (finding allegations that defendant "chose, caused, and allowed third-party tracking tools" to be embedded sufficient); *Gianne*, 2026 WL 925522, at *6–7 (same). Plaintiff's allegations are in line with these cases. *See* FAC ¶ 129 (Defendant "embedding Google's tracking technologies on its Website"); ¶ 132 (Defendant monetized Plaintiff's PHI for targeted advertising purposes). And *Smith v. YETI Coolers, LLC* does not change this fact. In that case, the plaintiff fell short of even alleging that the defendant "had knowledge of Adyen's conduct." 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024). Nothing more is required, despite Defendant's impermissible attempt at shifting its burden of consent onto Plaintiff. *Allison*, 2026 WL 899438, at *5 ("On a motion to dismiss, the burden of proof to show consent rests with defendants.") (quotation omitted). Further, Defendant's knowledge of its installation of such technologies being unlawful is presumed. *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 265 ("Every citizen is presumed to know the law").

***Second***, Defendant argues that Plaintiff's communications were not confidential. MTD at 27. Defendant relies on the false premise that California courts have developed a presumption that Internet communications are not confidential. *Id.* This District does not abide. *See Gianne*, 2026 WL 925522, at *7 ("As of the date of this Order, there is no established legal presumption in California law that internet communications are not confidential under section 632."); *accord Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) (holding the same). A communication is confidential under section 632 so long as a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 41 P.3d 575, 582 (Cal. 2002). Courts have found communications to be "confidential" when shown to be sensitive under applicable laws, regulations, or industry norms. *See Garcia*, 2026 WL 972328, at *12 (finding a reasonable expectation of privacy in citizenship status); *Smith v. Google, LLC*, 735

F. Supp. 3d 1188, 1200 (N.D. Cal. 2024) (tax information). Nowhere is this more apparent than in the medical context. *See Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiff's interactions . . . seeking treatment for specific conditions . . . constitute confidential communications.") (collecting cases). Here, the information disclosed was medical in nature and subject to the protections of HIPAA. *See* FAC ¶¶ 4–6, 10–11, 36–48. Even if the Court were to impose a "presumption" that Internet communications are not confidential under section 632, Plaintiff would overcome it. *See L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *18 (N.D. Cal. Oct. 10, 2025) (distinguishing Internet communications made "in the context of a patient-medical provider relationship"). Defendant's cited authority is not on point. *Compare In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (non-medical voice recordings not confidential), *with In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) (health information is confidential).

***Third***, contrary to Defendant's contention, Plaintiff plausibly alleges that the Tracking Technologies constitute a "device" under section 632. The "majority of courts to consider the issue" have found online software to constitute a "device" under the ECPA and CIPA. *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also L.B.*, 2025 WL 2899514, at *18 (finding "the software in this case . . . qualifies as a 'device' for purposes of Section 632."); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) (same). Defendant's reliance on *People v. Soles* is misplaced. MTD at 28. As a criminal case from 1977, *Soles* states nothing of relevance as to the tortious use of modern computer software. 68 Cal. App. 3d 418, 419 (Cal. Ct. App. 1977).

//

//

//

### V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

To state a claim for invasion of privacy, a plaintiff must allege that "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601. Plaintiff satisfies both elements.

***First,*** it is well-settled "that, although not absolute, people have a privacy interest in their 'medical history and information.'" *Ojeda v. Kaiser Permanente Int'l., Inc*., 2022 WL 18228249, at *6 (C.D. Cal. Nov. 29, 2022); *In re Meta*, 647 F. Supp. 3d at 800 ("plaintiffs will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential based on the laws and regulations protecting the confidentiality of medical information"); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y,* 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality").

Here, Plaintiff's communications with the Website contained legally protected information relating to medical treatment, including information revealing patient status and treatment details. FAC ¶¶ 4, 10, 95–102. Moreover, Plaintiff never consented to these recordings.[4] Defendant's attempt to recharacterizes the nature of the disclosures at hand is not well taken. *See* MTD at 29 (citing *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *5–6 (W.D. Wash. Dec. 21, 2023) (nonmedical internet browsing activities did not give reasonable expectation of privacy). Furthermore, it is of no bearing that Defendant operates a "free, public website with a privacy policy that outlines the way" it operates. *Id.* "[W]hether [] PHI [is] provided through a public webpage or patient portal is 'immaterial.'" *I.T.*, 2025 WL 2495079, at *8.

***Second,*** "assessing the degree of offensiveness . . . presents a policy question that often evades resolution at the pleading stage." *Hubbard v. Google LLC*, 2024 WL

[4] Additionally, HIPAA requires a heightened "authorization" requirement to disclose PHI. *See* FAC ¶ 44.

3302066, at *7 (N.D. Cal. July 1, 2024) ("*Hubbard I*"); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether [defendant's] collection and storage of location data . . . was highly offensive to a reasonable person is a question of fact.") (citing *In re Facebook*, 956 F.3d at 606).

Nonetheless, Defendant attempts to label its practices as "ordinary online analytics and advertising data collection." MTD at 29. This is not the case; by violating HIPAA, Defendant's action flout both legislative intent and accepted societal norms. *See In re Meta*, 647 F. Supp. 3d at 800–01 ("Congress has made policy decisions regarding the importance of safekeeping this information."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) ("Courts have refused to dismiss invasion of privacy claims . . . where, as here, a data breach involved medical information").

Defendant's authorities fail to disturb these accepted holdings, as none of the authority upon which Defendant relies dealt with the disclosure of medical information. *Compare Hubbard I*, 2024 WL 3302066, at *7 (video data; deemed highly offensive in *Hubbard v. Google LLC*, 2025 WL 82211, at *3 (N.D. Cal. Jan. 13, 2025) ("*Hubbard II*")); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (geolocation data); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1124–25 (N.D. Cal. 2008) (stolen laptops containing social security numbers); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (LinkedIn ID and URL of profile pages), *with Rusow v. SkinSpirit Essential LLC*, 2025 WL 4657637, at *14 (N.D. Cal. Oct. 15, 2025) (disclosure of medical and cosmetic appointments highly offensive); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 844 (disclosure of web searches for conditions, treatments, and doctors highly offensive); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person."); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (medical information).

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. Alternatively, if the Motion is granted in any respect, Plaintiff should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.'").

Dated: April 21, 2026

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Sarah N. Westcot</u>*

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 11-6.2, the undersigned counsel of record for Plaintiff Rudolph Campbell certifies that this brief contains 6,674 words, which complies with the word limit of C.D. Cal. L.R. 11-6.1.

By: *__/s/ Sarah N. Westcot_____*
Sarah N. Westcot