UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **2:25-cv-11408-MCS-PD** | Date | July 14, 2026 |
| Title | ***Campbell v. Select Med. Corp.*** | | |

Present: The Honorable   Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER RE: MOTION TO DISMISS (ECF NO. 18)**

Defendant Select Medical Corporation moves to dismiss Plaintiff Rudolph Campbell's amended complaint. (Mot., ECF No. 18.) Plaintiff filed a brief opposing the motion, (Opp'n, ECF No. 19), and Defendant replied, (Reply, ECF No. 20). The Court heard argument on the motion on June 22, 2026. (Mins., ECF No. 21.)

## I.   BACKGROUND

This is a data privacy putative class action. According to the amended complaint, Defendant is part of the largest physical therapy network in the United States, with almost 2,000 outpatient physical therapy centers and over 7,000 licensed therapists. (FAC ¶ 2, ECF No. 17.) Defendant maintains a website, www.selectphysicaltherapy.com, that patients use to book physical therapy appointments. (*Id.* ¶¶ 1–2, 95.) Plaintiff visited the website in February 2025 and October 2025 and booked physical therapy appointments at Defendant's Los Angeles–Park Terrace location for his knee after he had knee replacement surgery. (*Id.* ¶¶ 10, 96.)

Plaintiff contends that Defendant intercepted his communications through the website and then disclosed that content of those communications to third parties like

---

**CIVIL MINUTES – GENERAL**               Initials of Deputy Clerk SMO

Google without his consent. (*Id.* ¶¶ 10–11.) The website utilizes an "auid" or "Advertiser User ID" parameter and other embedded cookies configured by Defendant that allow Google to identify unique users and unique interactions with the website. (*Id.* ¶¶ 70–72.) After Plaintiff made the therapy appointments on the website, he began receiving targeted advertisements about various medical procedures "as a result of Defendant's disclosure of his medical booking information to Google." (*Id.* ¶ 11.) In the amended complaint, Plaintiff includes exemplar images of computer code showing what Defendant sends to Google. (*Id.* ¶¶ 97–98, 101–02, Figs. 1–3.) He contends his communications were intercepted and disclosed to Google in a similar manner. (*Id.* ¶ 102.)

Based on these allegations, Plaintiff brings four claims against Defendant for (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511; (2) violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631; (3) violation of CIPA, Cal. Penal Code § 632; and (4) invasion of privacy in violation of the California Constitution. (FAC ¶¶ 118–72.) He asserts claims on behalf of himself, a putative nationwide class defined as "all natural persons in the United States who, during the class period, booked an appointment on the Website," and a California subclass. (*Id.* ¶¶ 108–09.)

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See*

---

*Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### B.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## III.    DISCUSSION

### A.    Standing

"Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case." *Biden v. Nebraska*, 600 U.S. 477, 489 (2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "Standing . . . 'tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). "'[T]he irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To

establish an injury in fact, a plaintiff must demonstrate that it suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion*, 594 U.S. at 427.

In the context of claims brought under data privacy statutes, a plaintiff typically needs to allege the disclosure of "embarrassing, invasive, or otherwise private information" in order to allege an actionable injury in fact. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). The disclosure of "especially sensitive" information like "health or financial information" generally suffices. *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2026 WL 925028, at *5 (C.D. Cal. Apr. 1, 2026). Here, Plaintiff alleges that Defendant disclosed his private health information. (FAC ¶¶ 10–11.) Specifically, Plaintiff went to Defendant's website in February 2025 and October 2025 after he had knee replacement surgery and booked physical therapy appointments at Defendant's Los Angeles–Park Terrace location. (*Id.* ¶ 10.) Defendant allegedly intercepted and disclosed Plaintiff' appointment booking information to third parties, including Google. (*Id.* ¶¶ 10–11.) Because Plaintiff alleges that Defendant disclosed sensitive information relating to his health status and treatment, Plaintiff has sufficiently alleged that he suffered a cognizable injury in fact. *Semien v. PubMatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333, at *4 (N.D. Cal. Jan. 27, 2026); *see also Gaige v. Exer Holding Co., LLC*, No. 2:24-cv-06099-AH-(AJRx), 2025 WL 559719, at *2 (C.D. Cal. Jan. 30, 2025) (holding a website user had standing when he alleged that he visited a website on specific days, the website then disclosed his medical information to third parties, and he subsequently received targeted advertisements "related to the very conditions he had searched [on] the Website").

Defendant disputes Plaintiff's standing theory and argues that disclosing "generic website activity" like the fact that someone searched for information or visited a website does not amount to an injury in fact. (Mot. 14–17.) The Court agrees that disclosing that someone merely searched for publicly available information about certain diseases or medical treatments may not be enough, on its own, to rise to an actionable injury. That an individual searched for certain health related information on the internet does not reveal any private or sensitive information about that specific person. *See Maghoney v Dotdash Meredith, Inc.*, No. 24-cv-2394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) (noting that "[a]nyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings" could search the internet for health-related information (alteration in original) (internal quotation marks omitted)). But

as detailed above, Plaintiff here alleges more than simply searching for and viewing health related internet content. Plaintiff made a specific kind of appointment related to a specific type of medical condition. (*See* FAC ¶ 10.) That information is directly tied to Plaintiff's individual health status and treatment plan, so the disclosure of that information may serve as a cognizable injury. *Semien*, 2026 WL 216333, at *4.

Plaintiff has alleged enough to raise an inference that he suffered an injury in fact sufficient to support Article III standing.

## B.    ECPA Claim

Plaintiff's first claim for relief arises under the ECPA. (FAC ¶¶ 118–41.) To state a claim under the ECPA, a plaintiff must allege that the defendant "(1) intentionally   (2) intercepted . . . (3) the   contents   of   (4) an   electronic communication, (5) using a device." *R.C.  v. Walgreen Co.*, 733 F. Supp. 3d 876, 900 (C.D. Cal. 2024). Defendant mounts several arguments why Plaintiff fails to state an ECPA claim. None is persuasive.

### 1.    The Crime-Tort Exception

The ECPA has a party exemption provision: "It shall not be unlawful . . . for a person . . . to intercept a wire, oral, or electronic communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). But a party to the communication can still be liable if the interception is done "for the purpose of committing any criminal or tortious act." *Id.* Defendant, as an alleged party to the communications at issue, is accordingly exempt from liability under the ECPA unless the "crime-tort exception" applies.

To invoke the crime-tort exception, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent of* the intentional act of recording or interception itself." *R.C.*, 733 F. Supp. 3d at 901. "Generally, alleged interceptions fall with the tort or crime exception only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously." *Id.* (cleaned up). Plaintiff argues the crime-tort exception applies here because Defendant intercepted communications with the intent to violate the Health Insurance Portability and Accountability Act ("HIPAA"). (Opp'n 9–11; FAC ¶¶ 36–48, 135–36.) "[T]he weight of authority supports that an alleged violation of HIPAA can constitute an independent act for purposes of ECPA's crime-tort exception." *B.N.*

*v. Or. Reprod. Med., LLC*, No. 3:25-cv-00202-IM, 2026 WL 915343, at *3 (D. Or. Apr. 3, 2026).

Defendant contends that even assuming its conduct amounts to a HIPAA violation, Plaintiff fails to allege that Defendant *intended* to violate HIPAA. (Mot. 19–20.) In fact, Plaintiff affirmatively alleges that Defendant's goal was to facilitate marketing. (FAC ¶¶ 132, 137.) But even if Defendant had a financial motive to facilitate marketing and advertisements by intercepting and disclosing certain information, "the mere existence of a lawful purpose alone does not sanitize an interception that was also made for an illegitimate purpose." *Ramirez v. LasikMD USA, Inc.*, No. 24-cv-2221-CAB-DDL, 2026 WL 194855, at *3 (S.D. Cal. Jan. 26, 2026) (cleaned up). And the fact that Defendant allegedly knowingly disclosed identifying health information in violation of HIPAA is enough to generate an inference of a tortious intent sufficient to trigger the crime-tort exception. *See Gaige*, 2025 WL 559719, at *5 (citing *Cooper v. Mt. Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024)); *see also R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-cv-00330-ODW (SPx), 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) (applying the crime-tort exception where a defendant allegedly intercepted private data using Meta Pixel with the intention to disclose that information in violation of HIPAA). Plaintiff here has alleged that Defendant's knowingly violated HIPAA by installing certain tracking software on its website that collected and disclosed patients' protected health information. (*See* FAC ¶¶ 36–48.) These allegations raise an inference that Defendant had an independent tortious purpose that was a determining factor in its conduct, thus triggering the crime-tort exception. *Gaige*, 2025 WL 559719, at *5.

### 2.   Contemporaneous Interception

Next, Defendant argues that Plaintiff has not alleged it intercepted his communications in transit. (Mot. 21.) For internet content to be "intercepted" in violation of the ECPA, "it must be acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). The amended complaint contains detailed allegations describing how the tracking technologies on Defendant's website function. (FAC ¶¶ 49–94, 97–99.) In particular, Plaintiff alleges that "[w]hen patients book their appointments on Defendant's Website, Defendant intercepts information related to their patients' appointments through Google's tracking technologies." (*Id.* ¶ 99.) Plaintiff specifically alleges that this interception occurs "in real time." (*Id.* ¶ 88.) At the pleading stage, the Court accepts these allegations as true and finds that they raise

an inference of contemporaneous interception within the meaning of the ECPA. If Defendant disputes whether the tracking technologies actually do intercept communications in real time, the parties can explore that factual issue in discovery.

### 3.      Contents

Defendant also argues that Plaintiff fails to plead the contents of any communications that it allegedly disclosed to Google. (Mot. 23–25.) Under the ECPA, "contents" refers to "any information concerning the substance, purport, or meaning of" the intercepted communication. 18 U.S.C. § 2510(8). As discussed above in section III(A), Plaintiff alleges that he made a specific type of medical appointment on Defendant's website, and that information was intercepted and disclosed to third parties. The amended complaint contains exemplar images that show the form of information that is allegedly transmitted to Google by the tracking technologies. (FAC ¶¶ 97–102, Figs. 1–3.) Those images contain URLs and code that reveal the specific type of medical appointment a patient booked on Defendant's website. (*Id.* ¶¶ 97–98.) The tracking technologies also capture identifying information about the particular patient, such as an IP address, so that Google can connect the medical appointment to a particular patient. (*Id.* ¶ 100.) Because Plaintiff alleges that his appointment bookings in February and October 2025 were intercepted and communicated to Google following the same process as described in the exemplar images, (*id.* ¶ 102), Plaintiff has adequately alleged the content of communications Defendant intercepted and disclosed.

In all, Plaintiff has adequately stated a claim under the ECPA. Defendant's motion to dismiss the ECPA claim is denied.[1]

### C.      State Law Claims

Defendant's challenges to Plaintiff's state law claims all echo its challenges to the ECPA claim and thus similarly fail.

Defendant first argues that Plaintiff fails to state his CIPA claim under Penal Code section 631(a) because Plaintiff does not allege the content of the information

---

[1] Defendant also argues that Plaintiff's ECPA claim fails because the ECPA does not provide for aiding and abetting liability. (Mot. 21–22.) Given Plaintiff's representation that he is not pursuing a derivative liability theory, (Opp'n 12), the Court need not address this argument.

Defendant transmitted to Google or that the communications were intercepted while they were "in transit." (Mot. 25–26.) Because the analysis for a section 631(a) violation is the same as that under the ECPA, and the Court has already concluded that Plaintiff adequately alleges content and contemporaneous interception for purposes of the ECPA, the Court similarly concludes Plaintiff has stated a section 631(a) claim. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021).

Defendant next argues that Plaintiff's claims for a violation of Penal Code section 632 and invasion of privacy under the California Constitution fail because Plaintiff has not articulated a reasonable expectation of privacy in his appointment bookings or that those bookings involved confidential material. (Mot. 27–30.) But as discussed in section III(A) above, Plaintiff alleges that Defendant intercepted and disclosed sensitive information about Plaintiff's health status and treatment. It is almost axiomatic that communications seeking treatment for specific medical conditions constitute confidential communications in which a patient has a reasonable expectation of privacy. *See Norman-Bloodsaw v. Lawrence Barkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("One can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up."); *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302, at *14 (N.D. Cal. July 22, 2025) (holding that a plaintiff's interactions with a website "seeking treatment for specific conditions" constitute confidential communications under section 632). Plaintiff has thus adequately alleged that he had a reasonable expectation of privacy in his communications in which he booked physical therapy appointments for his knee and that Plaintiff intended those communications to be confidential.

Finally, Defendant argues that Plaintiff has not alleged it used a "device" within the meaning of section 632 to record the substance of any confidential communications. (Mot. 28; Reply 9.) Defendant seemingly concedes that software like the Google tracking technologies described in the amended complaint are devices within the meaning of section 632. *See L.B. v. LinkedIn Corp.*, Nos. 5:24-cv-06832-EJD, 5:24-cv-07374-EJD, 5:24-cv-07399-EJD, 5:24-cv-07586-EJD, 2025 WL 2899514, at *17 (N.D. Cal. Oct. 10, 2025) (holding that similar software installed on a website that tracked users' interactions with that website was a "device" within section 632). And contrary to Defendant's assertion, Plaintiff does, in fact, allege that Defendant itself used the software. According to Plaintiff, Defendant itself "implemented a system that surreptitiously tracked and recorded" patients' interactions with the website by deliberately installing Google's tracking technologies on the website. (FAC ¶¶ 70–72.) Indeed, Defendant allegedly

"configured the Website to utilize" certain tracking cookies. (*Id.* ¶ 72.) At this stage, the Court is satisfied that Plaintiff has alleged that Defendant utilized a device to track Plaintiff's confidential communications.

## IV.   CONCLUSION

The motion is denied. Defendant shall answer Plaintiff's amended complaint within 14 days of entry of this Order. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**