Teresa C. Chow (SBN 237694)
*tchow@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
Telephone: 310.820.8800
Facsimile: 310.820.8859

Sean P. Killeen (SBN 320644)
*skilleen@bakerlaw.com*
**BAKER & HOSTETLER LLP**
Transamerica Pyramid Center
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2623
Facsimile: 415.659.2601

*Attorneys for Defendant*
SELECT MEDICAL CORPORATION
d/b/a/ SELECT PHYSICAL THERAPY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RUDOLPH CAMPBELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SELECT MEDICAL CORPORATION d/b/a SELECT PHYSICAL THERAPY,

Defendant.

Case No.: 2:25-CV-11408-MCS-PD

**ANSWER TO PLAINTIFF RUDOLPH CAMPBELL'S FIRST AMENDED CLASS ACTION COMPLAINT**

Complaint served: 12/02/2025
Current response date: 07/28/2026

## PRELIMINARY STATEMENT

Defendant Select Medical Corporation d/b/a Select Physical Therapy ("Defendant" or "Select Medical"), by and through counsel, Baker & Hostetler LLP, and in accordance with Federal Rule of Civil Procedure ("FRCP") 8(b)-(c), hereby answers the allegations in the First Amended Class Action Complaint ("FAC") filed by plaintiff Rudolph Campbell ("Plaintiff"). Unless expressly admitted herein, Defendant denies the allegations in the FAC and denies that it is liable to Plaintiff or the putative class (as that term is defined in the FAC). Defendant denies that this case is suitable for class certification, including because, *inter alia*, the putative class does not meet the requirements of FRCP 23. Specifically, Defendant denies that Plaintiff is an adequate representative of any purported class; his claims are typical; common questions of law or fact affecting the individual members of the putative class predominate; a class action is manageable or superior; and/or there is an ascertainable class with a community of interest. Defendant denies any citations in the footnotes of the FAC to the extent they are inaccurate. Defendant admits that any source cited in the footnotes speaks for itself and otherwise denies the accuracy of any source cited in the footnotes, as Defendant lacks sufficient information to admit the same. Plaintiff's unnumbered headers throughout the Complaint constitute organizational breaks in the document to which no response is required; however, to the extent there are any allegations of factual or legal nature contained therein, Defendant denies such allegations.

For its answer to Plaintiff Rudolph Campbell's FAC, Defendant states as follows:

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all U.S. residents who accessed www.selectphysicaltherapy.com (the "Website") to book an appointment for physical therapy and whose electronic communications were intercepted or recorded by advertising technology provided by Google, LLC ("Google").

**ANSWER:** Select Medical admits that Plaintiff purports to bring this action as a class action on behalf of certain U.S. residents who allegedly accessed www.selectphysicaltherapy.com (the "Website") to book appointments. Select Medical denies the remainder of the allegations contained in Paragraph 1 of the FAC.

2. Defendant is "part of the largest physical therapy network in the U.S. "[w]ith almost 2,000 outpatient physical therapy centers and 7,000-plus licensed therapists." [1] Defendant owns and operates the Website, which patients use to book appointments for various types of physical therapy including, but not limited to, hand therapy, joint health, occupational therapy, sports medicine, pediatric therapy and pelvic therapy.[2]

**ANSWER:** Select Medical admits it is "part of the largest physical therapy network in the U.S [w]ith almost 2,000 outpatient physical therapy centers and 7,000-plus licensed therapists." Select Medical further admits that it is the parent company of subsidiaries that operate outpatient physical therapy centers throughout the United States. Select Medical admits that it owns and operates the Website, which patients may use to book appointments for various types of physical therapy. Select Medical denies the remainder of the allegations contained in Paragraph 2 of the FAC.

3. When booking medical appointments online, patient privacy is crucial. Patients expect, as they should, that their private information will be held in confidence and not shared with third parties. The sensitive nature of information related to physical therapy amplifies the need for privacy during online bookings, as these therapies often involve sensitive details of a patient's physiological and psychological abilities. Such information can be emotionally charged and stigmatizing, making the protection of such data critical.

**ANSWER:** Select Medical admits that healthcare providers have privacy obligations as prescribed by applicable law. Select Medical is without knowledge or

---

[1] SELECT PHYSICAL THERAPY, *Outpatient Physical Therapy*, https://www.selectphysicaltherapy.com/.

[2] SELECT PHYSICAL THERAPY, *Physical Therapy Services*, https://www.selectphysicaltherapy.com/services/.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 3 of the FAC, including Plaintiff's characterizations of patients' expectations, the nature of information allegedly collected during online bookings, and the asserted consequences of any alleged disclosure of such information, and on that basis denies those allegations, and on that basis denies the remaining allegations.

4. Healthcare providers—including Defendant—are legally required to safeguard patients' confidential and sensitive health information. This means that any data related to patients' medical needs and treatment history, including patient status, must be kept confidential and secure. Given these protections, patients reasonably expect that information related to their physical therapy appointment bookings will remain confidential.

**ANSWER:** Paragraph 4 of the FAC contains legal conclusions to which no response is required. To the extent a response is required, Select Medical admits that healthcare providers have privacy obligations as prescribed by applicable law. Select Medical denies the remaining allegations contained in Paragraph 4 of the FAC, including any implication that Defendant failed to maintain confidentiality or security of information related to appointment bookings.

5. As a HIPAA covered entity, Defendant has legal and ethical duties to protect patient information. Nonetheless, Defendant undermined the importance of safeguarding the identities and personal medical information of individuals seeking physical therapy services and breached its patients' trust—violating state and federal law, including the Health Insurance Portability and Accountability Act ("HIPAA").

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical admits that it is a HIPAA covered entity that may be subject to HIPAA to the extent applicable. Select Medical denies that it undermined the importance of safeguarding the identities and personal medical information of individuals seeking physical therapy services and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

breached its patients' trust, violated HIPAA, or otherwise violated any state or federal law, and otherwise denies the allegations in Paragraph 5 of the FAC.

6. Unbeknownst to Plaintiff and members of the putative class, in pursuit of profit and without regard for patient privacy Defendant aids, agrees with, employs, conspires, or otherwise enables third parties, including Google to eavesdrop on communications sent and received by Plaintiff and Class Members on the Website, including communications that contain protected health information ("PHI") and personally identifiable information ("PII"). By failing to procure consent before disclosing these communications to Google, Defendant violated the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. §2511, et seq.), the California Invasion of Privacy Act ("CIPA") § 631, CIPA § 632, and the California Constitution.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, as to the knowledge or lack thereof of Plaintiff and members of the putative class, Select Medical lacks sufficient information to form a belief as to the truth of the allegation and on that basis, denies the allegation. Select Medical denies the remaining allegations contained in Paragraph 6 of the FAC.

7. Plaintiff brings this action for legal and equitable remedies resulting from Defendant's illegal actions.

**ANSWER:** This paragraph contains legal conclusions with no factual allegations directed at Select Medical, to which no response is required. To the extent a response is required Select Medical denies the allegation in Paragraph 7 of the FAC.

**PARTIES**

8. Plaintiff is an adult citizen of the state of California, domiciled in Los Angeles, California.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the FAC and, on that basis, denies the allegations.

9. At all relevant times, Plaintiff maintained an active account with Google. When creating his Google account, Plaintiff provided Google with his personally identifiable information ("PII"), including his full name, date of birth, phone number, and email address. Additionally, every time Plaintiff accesses his account, Google collects information related to his IP address and electronic device (e.g. browser, operating system, screen resolution, etc.) and stores it in a profile maintained by Google for targeted advertising purposes. Plaintiff used the same device to access the Website that he did to access his Google account. Plaintiff was in California when he visited the Website and booked his appointment.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the FAC concerning Plaintiff's Google account, what information Plaintiff provided to Google, what information Google allegedly collected, what device Plaintiff used, or Plaintiff's location when he visited the Website, and, on that basis, denies the allegations.

10. In or around February 2025 and October 2025—after having a knee replacement—Plaintiff visited and booked appointments for physical therapy of his knee on Defendant's Website at the Los Angeles-Park Terrace location. Plaintiff scheduled his medical appointment on Defendant's Website in a manner substantially similar to that described below and herein. Plaintiff attended his scheduled physical therapy appointments and received treatment for his knee. Unbeknownst to Plaintiff, Defendant intercepted and/or assisted Google with intercepting his communications, including those that contained personally identifiable information ("PII"), protected health information ("PHI"), and related confidential information.

**ANSWER:** Select Medical admits that the Website may be used to book appointments at certain Select Medical Physical Therapy locations, including locations in California. Select Medical is without knowledge or information sufficient to form a belief as to Plaintiff's knowledge or lack thereof, alleged website visits, appointment requests, device usage, knee replacement, treatment, or receipt of medical services, and therefore denies those allegations. Select Medical admits that the Google pixel was on certain pages of its Website at certain points in time. Select Medical denies the remaining allegations contained in Paragraph 10 of the FAC.

11. Defendant disclosed this confidential and protected medical information without Plaintiff's knowledge, consent, or express written authorization. As a consequence of these interceptions, Plaintiff has received advertisements marketing various related medical procedures, specifically targeted at Plaintiff as a result of Defendant's disclosure of his medical booking information to Google. However, Plaintiff did not know, and had no way of knowing, the reasons he was receiving such advertisements. Defendant breached its duty of confidentiality by unlawfully disclosing Plaintiff's PII and PHI third parties, including Google, LLC.

**ANSWER:** This paragraph alleges legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 11 of the FAC.

12. Defendant is a Delaware corporation with its principal place of business in Mechanicsburg, Pennsylvania. Patients, including Plaintiff, use the Website to book appointments at one of Defendant's outpatient physical therapy centers. Defendant maintains nearly 2,000 of locations in multiple states throughout the United States.[3] Defendant owns and operates the Website, whereby patients seeking to procure physical therapy for various ailments can schedule appointments, including at clinics located within California.

[3] SELECT PHYSICAL THERAPY, *Outpatient Physical Therapy*, https://www.selectphysicaltherapy.com/.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** Select Medical admits that Select Medical Corporation is a Delaware corporation with its principal place of business in Mechanicsburg, Pennsylvania. Select Medical admits that patients may use the Website to book appointments, including clinics in California. Select Medical admits that it is the parent company of subsidiaries that operate outpatient physical therapy centers throughout the United States and that it is affiliated with nearly 2,000 outpatient physical therapy locations in multiple states. Select Medical admits that it owns and operates the Website, which patients may use to book appointments for physical therapy services. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the FAC and, on that basis, denies the remaining allegations.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the Electronic Communications Privacy Act, 18 U.S.C. § 2511) and 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendant. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**ANSWER:** Paragraph 13 of the FAC contains legal conclusions to which no response is required.

14. This Court has personal jurisdiction over Defendant because of its contacts with the forum state. First, by integrating the code that allowed a third party to wiretap communications, Defendant acted intentionally. Second, Defendant knew that the harm would be felt in California because Defendant allowed consumers to book appointments at locations within the state of California. Third, Defendant

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

expressly aimed its conduct at California because Defendant, in the regular course of business, operates clinics and allows patients to book appointments in California, including within this District. Finally, Plaintiff and California Subclass Members were harmed in California because that is where Google —as enabled by Defendant—wiretapped Plaintiff and Class Members. Collectively, such factors are sufficient for the Court to exercise personal jurisdiction over Defendant.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 14 of the FAC.

15. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events or omissions giving rise to the claims occurred in this District because Plaintiff made his appointment while in this District, had his device wiretapped in this District, and attended his appointment at Defendant's location within this District.

**ANSWER:** Paragraph 15 of the FAC contains legal conclusions to which no response is required. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the FAC and, on that basis, denies the allegations.

## FACTUAL BACKGROUND

### A. Background of the California Invasion of Privacy Act and the Federal Wiretap Act

16. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630, et seq., prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

**ANSWER:** Select Medical states that the provisions of California Penal Code § 630, *et seq*. speak for themselves, and denies all other allegations in Paragraph 16 of the FAC.

17. To establish liability under California Penal Code § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

**ANSWER:** Select Medical states that the provisions of California Penal Code § 630, *et seq*. speak for themselves, and denies all other allegations in Paragraph 17 of the FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

18. Section 631(a)'s applicability is not limited to phone lines, but also applies to "new technologies" including computers, the internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5–6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

**ANSWER:** This paragraph contains legal conclusions to which no response is required and no factual allegations directed at Select Medical to which a response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 18 of the FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

19. Similarly, Section 632 makes it unlawful for:

> A person [to] intentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio . . . .

**ANSWER:** Select Medical states that the provisions of California Penal Code § 632 speak for themselves, and denies all other allegations in Paragraph 19.

20. Under California Penal Code § 637.2, Plaintiff and members of The California Subclass may seek injunctive relief and statutory damages of $5,000 per violation.

**ANSWER:** Select Medical states that the provisions of California Penal Code § 637.2 speak for themselves, and denies all other allegations in Paragraph 20.

21. In a manner similar to CIPA, the Federal Wiretap Act (i.e. the ECPA) creates "a comprehensive scheme for the regulation of wiretapping and electronic surveillance."[4]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the provisions of the Federal Wiretap Act speak for themselves, and denies all other allegations in Paragraph 21 of the FAC.

22. Although the ECPA usually applies "where one parti[y] to the communication has given consent[,]" the ECPA eliminates the one-party consent exception when the conduct was for the "the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."[5]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the provisions of the Federal Wiretap Act speak for themselves, and denies all other allegations in Paragraph 22 of the FAC.

**B. Warning on Tracking Codes on Health Care Websites**

23. The federal government has issued guidance warning that tracking codes like Google's tracking technologies violate federal privacy law when installed on healthcare websites such as Defendant's. The statement titled, "Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates" (the "Bulletin"), was issued by the Department of Health and Human Services' Office for Civil Rights ("OCR") in December 2022.[6]

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To

[4] *People v. Roberts*, 184 Cal. App. 4th 1149, 1167 (2010).
[5] 18 U.S.C. § 2511(d)
[6] HHS.gov, USE OF ONLINE TRACKING TECHNOLOGIES BY HIPAA COVERED ENTITIES AND BUSINESS ASSOCIATES, https://www.hhs.gov/hipaa/forprofessionals/privacy/guidance/hipaa-online-tracking/index.html.



BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

the extent a response is required, Select Medical states that the December 2022 OCR Bulletin and subsequent updates to the same speak for themselves and otherwise denies the allegations contained in Paragraph 23 of the FAC.

24. Healthcare organizations regulated under the Health Insurance Portability and Accountability Act (HIPAA) may only use third-party tracking tools, such as Google's tracking technologies, in a very limited way, to perform analysis on data key to operations. They are not permitted, however, to use these tools in a way that may expose patients' PHI to these vendors. The Bulletin explains:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures***.[7]

**ANSWER:** This paragraphs contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical in Paragraph 24 of the FAC to admit or deny. To the extent a response is required, Select Medical states that HIPAA, and the December 2022 OCR Bulletin and subsequent updates to the same, speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the assertions made in the portions of the Bulletin alleged in Paragraph 24 of the FAC and, on that basis, denies the allegations.

25. The bulletin discusses the types of harm that disclosure may cause to the patient:

> An impermissible disclosure of an individual's PHI not only violates the Privacy Rule but also may result in a wide range of additional harms to the individual or others. For example, an impermissible disclosure of PHI may result in identity theft, financial loss, ***discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the***

[7] *Id.* (Emphasis added).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> ***individual's PHI***. Such disclosures can reveal incredibly sensitive information about an individual, ***including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment***. While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, ***because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.***[8]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 25 of the FAC to admit or deny. To the extent a response is required, Select Medical states that HIPAA, and the December 2022 OCR Bulletin and subsequent updates to the same, speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the assertions made in the portions of the Bulletin alleged in Paragraph 25 of the FAC and, on that basis, denies the allegations.

26. Plaintiff and Class Members face the risks about which the government expresses concern. Defendant disclosed the fact that Plaintiff and Class Members booked physical therapy appointments on Defendant's Website, which in turn also discloses the health conditions for which they sought a health care provider; the frequency with which they take steps relating to medical health; and where they seek medical treatment. This information is, as described by the OCR in its bulletin, "highly sensitive."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the December 2022 OCR Bulletin and subsequent updates to the same speak for themselves, and otherwise denies the allegations contained in Paragraph 26 of the FAC.

[8] *Id.* (Emphasis added).

27. The Bulletin goes on to make clear how broad the government's view of protected information is. It explains:

> This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code.[9]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 27 of the FAC to admit or deny. To the extent a response is required, Select Medical states that the December 2022 OCR Bulletin and subsequent updates to the same speak for themselves. Select Medical denies the allegations contained in Paragraph 27 of the FAC.

28. Crucially, that paragraph in the government's Bulletin continues:

> All such [individually identifiable health information ("IIHI")] collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services. This is because, when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.[10]

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical in Paragraph 28 of the FAC to admit or deny. To the extent a response is required, Select Medical states that the December 2022 OCR Bulletin and subsequent updates to the same speak for themselves. Select Medical s without knowledge or information sufficient to form a

[9] *Id.* (Emphasis added).
[10] *Id.* (Emphasis added).

belief as to the truth of the assertions made in the portions of the Bulletin alleged in Paragraph 28 of the FAC and, on that basis, denies the allegations.

29. Then, in July 2022, the Federal Trade Commission ("FTC") and the Department of Health and Human Services ("HHS") issued a joint press release warning regulated entities about the privacy and security risks arising from the use of online tracking technologies:

> The Federal Trade Commission and the U.S. Department of Health and Human Services' Office for Civil Rights (OCR) are cautioning hospitals and telehealth providers [regulated entities] about the privacy and security risks related to the use of online tracking technologies integrated into their websites or mobile apps that may be impermissibly disclosing consumers' sensitive personal health data to third parties.
>
> "When consumers visit a hospital's [regulated entity's] website or seek telehealth services, they should not have to worry that their most private and sensitive health information may be disclosed to advertisers and other unnamed, hidden third parties," said Samuel Levine, Director of the FTC's Bureau of Consumer Protection. "The FTC is again serving notice that companies need to exercise extreme caution when using online tracking technologies and that we will continue doing everything in our powers to protect consumers' health information from potential misuse and exploitation."
>
> "Although online tracking technologies can be used for beneficial purposes, patients and others should not have to sacrifice the privacy of their health information when using a hospital's [regulated entity's] website," said Melanie Fontes Rainer, OCR Director. "OCR continues to be concerned about impermissible disclosures of health information to third parties and will use all of its resources to address this issue."
>
> The two agencies sent the joint letter to approximately 130 [regulated entities] hospital systems and telehealth providers to alert them about the risks and concerns about the use of technologies, such as the Meta/Facebook pixel and Google Analytics, that can track a user's online activities. These tracking technologies gather identifiable information about users, usually without their knowledge and in ways that are hard for users to avoid, as users interact with a website or mobile app.

> In their letter, both agencies reiterated the risks posed by the unauthorized disclosure of an individual's personal health information to third parties. For example, the disclosure of such information could reveal sensitive information including health conditions, diagnoses, medications, medical treatments, frequency of visits to health care professionals, and where an individual seeks medical treatment.
>
> . . . Through its recent enforcement actions against BetterHelp, GoodRx and Premom, as well as recent guidance from the FTC's Office of Technology, the FTC has put companies on notice that they must monitor the flow of health information to third parties that use tracking technologies integrated into websites and apps. The unauthorized disclosure of such information may violate the FTC Act and could constitute a breach of security under the FTC's Health Breach Notification Rule . . . .[11]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 29 of the FAC to admit or deny. To the extent a response is required, Select Medical denies that the FTC and HHS issued the joint press release alleged in July *2022* and further, states that the FTC and HHS' July *2023* joint press release speaks for itself. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the assertions made in the portions of the joint press release alleged in Paragraph 28 of the FAC and, on that basis, denies the allegations.

30. The FTC is unequivocal in its stance. The FTC has specifically informed healthcare companies, like Defendant, that they should not use tracking technologies to collect sensitive health information and disclose it to third party advertising platforms without informed consent:

> The FTC Act prohibits companies and individuals from engaging in unfair or deceptive acts or practices in or affecting commerce. This means you must ensure your health data practices aren't substantially injuring consumers, including by invading their privacy. For instance,

[11] FEDERAL TRADE COMMISSION, FTC AND HHS WARN HOSPITAL SYSTEMS AND TELEHEALTH PROVIDERS ABOUT PRIVACY AND SECURITY RISKS FROM ONLINE TRACKING TECHNOLOGIES, July 20, 2023, https://www.ftc.gov/newsevents/ news/press-releases/2023/07/ftc-hhs-warn-hospital-systems-telehealthproviders-about-privacy-security-risks-online-tracking.

> BetterHelp, GoodRx, and Premom make clear that disclosing consumers' health information for advertising without their affirmative express consent may be an unfair practice. [I]f you use behind-the-scenes tracking technologies that share consumers' sensitive health data in contradiction of your privacy promises, that's a violation of the FTC Act.[12]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 30 of the FAC to admit or deny. To the extent a response is required, Select Medical states that the FTC's published guidance speaks for itself. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the assertions made in the portions of the FTC's guidance alleged in Paragraph 30 of the FAC and, on that basis, denies the allegations.

31. Thus, Defendant's conduct as alleged herein, is directly contrary to clear pronouncements by the FTC and HHS.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 31 of the FAC.

32. In light of, and in addition to, the federal government's own issued guidance above, news sources also warn that tracking code—such as Google's tracking technologies—pose risks of violating federal privacy law and HIPAA:

> Federal regulators are warning [regulated entities] hospital systems and telehealth providers about the data privacy risks of using third-party tracking technologies.
>
> These services, like…Google Analytics, could violate the Health Insurance Portability and Accountability Act (HIPAA) or Federal Trade Commission (FTC) data security rules, officials said.
>
> The FTC and the U.S. Department of Health and Human Services' Office for Civil Rights (OCR) issued a rare joint release announcing that 130 [regulated entities] hospital systems and telehealth providers received a letter warning them about the data privacy and security risks related to the

[12] https://www.ftc.gov/business-guidance/resources/collecting-using-or-sharingconsumer-health-information-look-hipaa-ftc-act-health-breach.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> use of online tracking technologies integrated into their websites or mobile apps … "The compliance buck still stops with you. Furthermore, your company is legally responsible even if you don't use the data obtained through tracking technologies for marketing purposes."[13]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 32 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the FAC and, on that basis, denies the allegations.

33. Fierce Healthcare also spoke up in an April 3, 2023 article:

> Nearly all nonfederal acute care hospitals' [regulated entities'] websites track and transfer data to a third party, potentially fueling the unwanted disclosures of patients' sensitive health information and opening up that [regulated entity] hospital to legal liability, according to a recently published University of Pennsylvania analysis.[14] The census of more than 3,700 hospital [regulated entity] homepages found at least one third-party data transfer among 98.6% of the websites as well as at least one third-party cookie on 94.3%, researchers wrote in Health Affairs.
>
> The hospitals' [regulated entities'] homepages had a median of 16 third-party transfers, more of which were found among medium-sized (100 to 499 beds) hospitals, nonprofit hospitals, urban hospitals, health system-affiliated hospitals and those that weren't serving the largest portion of patients in poverty, they wrote . . . Many of these complaints cite Facebook parent company Meta's Pixel tracker, which a June 2022 investigation from The Markup[15] detected on about a third of large hospitals' websites. That report found evidence that, in some instances, the sensitive data transferred to third parties met the criteria for a HIPAA violation.[16]

---

[13] Heather Landi, *Regulators warn hospitals and telehealth companies about privacy risks of Meta, Google tracking tech*, FIERCE HEALTHCARE, July 21, 2023,

[14] https://www.healthaffairs.org/doi/full/10.1377/hlthaff.2022.01205.

[15]https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitivemedical-information-from-hospital-websites.

[16] Dave Muoio, *Almost every hospital's homepage is sending visitors' data to third parties, study finds*, FIERCE HEALTHCARE, Apr. 3, 2023, https://www.fiercehealthcare.com/providers/almost-every-hospital-homepagesending-visitors-data-third-parties-study-finds.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 33 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the FAC and, on that basis, denies the allegations.

34. Health Affairs also published an article in April 2023, stating in relevant part:

> By including third-party tracking code on their websites, hospitals [regulated entities] are facilitating the profiling of their patients by third parties. These practices can lead to dignitary harms, which occur when third parties gain access to sensitive health information that a person would not wish to share. These practices may also lead to increased health-related advertising that targets patients, as well as to legal liability for hospitals [regulated entities].[17]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 34 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the FAC and, on that basis, denies the allegations.

35. This is further evidence that the data that Defendant chose to share is protected PHI and PII. The sharing of that information was a violation of Plaintiff's and Class Members' rights.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 35 of the FAC.

**C. Defendant's Conduct Violates HIPAA**

36. Under HIPAA, a healthcare provider may not disclose personally identifiable information ("PII") or protected health information ("PHI") without the

[17] Ari B. Friedman, et al., *Widespread Third-Party Tracking On Hospital Websites Poses Privacy Risks For Patients And Legal Liability For Hospitals*, HEALTH AFFAIRS, Vol. 42, No. 24, April 2023, https://www.healthaffairs.org/doi/10.1377/



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

patient's express written authorization.[18]

**ANSWER**: This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the provisions of HIPAA speak for themselves, and denies all other allegations in Paragraph 36 of the FAC.

37. The United States Department of Health and Human Services ("HHS") has established a national standard, known as the HIPAA Privacy Rule ("Privacy Rule"), to explain the duties healthcare providers owe to their patients. "The Rule requires appropriate safeguards to protect the privacy of [PHI] and sets limits and conditions on the uses and disclosure that may be made of such information without an individual's authorization."[19]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the provisions of the HIPAA Privacy Rule speak for themselves, and denies all other allegations in Paragraph 37 of the FAC.

38. In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), making business associates of HIPAA covered entities directly liable for compliance with certain requirements of the Privacy Rule.[20] Those requirements include the impermissible uses and disclosures of PHI.[21]

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provisions of the HITECH Act speak for themselves. Select Medical is without knowledge or

---

[18] HIPAA, 42 U.S.C. § 1320; 45 C.F.R. §§ 164.502, 165.508(a), 164.514(b)(2)(i).

[19] U.S. DEPT. OF HEALTH & HUM. SERVS., THE HIPAA PRIVACY RULE, https:/www.hhs.gov/hipaa/for-professionals/privacy/index.html.

[20] American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat 115; *see also* 42 U.S.C. § 17931(b) (applying civil and criminal penalties to business associates for violations of 42 U.S.C. § 1320d-6).

[21] U.S. DEPT. OF HEALTH & HUM. SERVS., DIRECT LIABILITY OF BUSINESS ASSOCIATES, https://hhs.gov/hipaa/for-professionals/privacy/guidance/businessassociates/factsheet/index.html.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the FAC and, on that basis, denies the allegations.

39. A healthcare provider or business associate violates the Privacy Rule if it knowingly and in violation of 42 U.S.C. §§ 1320d-d9 ("Part C"): "(1) uses or causes to be used a unique health identifier; [or] (2) obtains individually identifiable health information relating to an individual."[22]

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provisions of 42 U.S.C. §§ 1320d-d9 speak for themselves, and denies all other allegations in Paragraph 39 of the FAC.

40. The statute states that an entity "shall be considered to have obtained or disclosed individually identifiable health information in violation of [Part C] if the information is maintained by a covered entity . . . and the individual obtained or disclosed such information without authorization." *Id.*

**ANSWER:** Select Medical states that the provisions of 42 U.S.C. §§ 1320d-d9 speak for themselves, and denies all other allegations in Paragraph 40 of the FAC.

41. Under 42 U.S.C. § 1320d-6, any "person [individual … or a corporation] who knowingly and in violation of this part—(1) uses or causes to be used a unique health identifiers; [or] (2) obtains individually identifiable health information relating to an individual … shall be punished" by fine or, in certain circumstances, imprisonment, with increased penalties for "intent to sell, transfer, or use individually identifiable health information for commercial advantage[.]"

**ANSWER:** Select Medical states that the provisions of 42 U.S.C. § 1320d-6 speak for themselves, and denies all other allegations in Paragraph 41 of the FAC.

42. The criminal and civil penalties imposed by 42 U.S.C. § 1320d-6 apply directly to Defendant when it is knowingly disclosing individually identifiable health

---

[22] 42 U.S.C. § 1320d-6.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information relating to its patients.

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provisions of 42 U.S.C. § 1320d-6 speak for themselves, and denies all other allegations in Paragraph 42 of the FAC.

43. Defendant further failed to comply with other HIPAA safeguard regulations as follows:

(a) Failing to ensure the confidentiality and integrity of electronic PHI that Defendant created, received, maintained, and transmitted in violation of 45 C.F.R. Section 164.306(a)(1);

(b) Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. Section 164.308(a)(1);

(c) Failing to identify and respond to suspected or known security incidents and mitigate harmful effects of security incidents known to Defendant in violation of 45 C.F.R. Section 164.308(a)(6)(ii);

(d) Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. Section 306(a)(2); and

(e) Failing to protect against reasonably anticipated uses or disclosures of electronic PHI not permitted under privacy rules pertaining to individually identifiable health information in violation of 45 C.F.R. Section 164.306(a)(3).

**ANSWER:** Select Medical denies the allegations contained in Paragraph 43 of the FAC.

44. Moreover, HIPAA requires a heightened "authorization" requirement to disclose protected health information and personally identifiable information. While

consent may allow certain uses or disclosures of PHI for treatment, payment, or healthcare operations, it is not sufficient for uses or disclosures that require an authorization under 45 C.F.R. § 164.508, which encompasses most uses, including marketing. *Compare* 45 C.F.R. § 164.506 (consent); *with* 45 C.F.R. § 164.508 (authorizations).

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provisions of 45 C.F.R. § 164 speak for themselves, and denies all other allegations in Paragraph 44 of the FAC.

45. The HIPAA de-identification rule reaffirms the positions of the HHS and the FTC. The pertinent provisions of 45 C.F.R. § 164.514 state information is not individually identifiable only if:

> (b) Implementation specifications: Requirements for de-identification of protected health information. A covered entity may determine that health information is not individually identifiable health information only if:
>
> > . . .
> > (2)(i) The following identifiers of the individual or of relatives, employers, or household members of the individual, are removed:
> > (A) Names;
> > (B) All geographic subdivisions smaller than a State . . . .;
> > (C) All elements of dates (except year) for dates directly related to an individual, including birth date, admission date, discharge date, date of death; and all ages over 89 and all elements of dates (including year) indicative of such age, except that such ages and elements may be aggregated into a single category of age 90 or older;
> > (D) Telephone numbers;
> > (E) Fax numbers;
> > (F) Electronic mail addresses;
> > (G) Social security numbers;
> > (H) Medical record numbers;
> > (I) Health plan beneficiary numbers;
> > (J) Account numbers;

(K) Certificate/license numbers;
(L) Vehicle identifiers and serial numbers, including license plate numbers;
(M) Device identifiers and serial numbers;
(N) Web Universal Resource Locators (URLs);
(O) Internet Protocol (IP) address numbers;
(P) Biometric identifiers, including finger and voice prints;
(Q) Full face photographic images and any comparable images; and
(R) Any other unique identifying number, characteristic, or code, except as permitted by paragraph (c) of this section; and

(ii) The covered entity does not have actual knowledge that the information could be used alone or in combination with other information to identify an individual who is a subject of the information.

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provisions of 45 C.F.R. § 164 speak for themselves, and denies all other allegations in Paragraph 45 of the FAC.

46. The HHS has further instructed that patient status alone is protected:

- "The sale of a patient list to a marketing firm" is not permitted under HIPAA. 65 Fed. Reg. 82717 (Dec. 28, 2000);
- "A covered entity must have the individual's prior written authorization to use or disclose protected health information for marketing communications," which would include disclosure of mere patient status through a patient list. 67 Fed. Reg. 53186 (Aug. 14, 2002);
- It would be a HIPAA violation "if a covered entity impermissibly disclosed a list of patient names, addresses, and hospital identification numbers." 78 Fed. Reg. 5642 (Jan. 25, 2013); and

- The only exception permitting a covered entity to identify patient status without express written authorization is to "maintain a directory of individuals in its facility" that includes name, location, general condition, and religious affiliation when used or disclosed to "members of the clergy" or "other persons who ask for the individual by name." 45 C.F.R. § 164.510(1). Even then, patients must be provided an opportunity to object to the disclosure of the fact that they are a patient. 45 C.F.R. § 164.510(2).

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provisions of 65 Fed. Reg. 82717, 67 Fed. Reg. 53186, 78 Fed. Reg. 5642, and 45 C.F.R. § 164.510 speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 46 of the FAC and, on that basis, denies the allegations.

47. Critically, HIPAA includes in its definition of protected individually identifiable health information ("IIHI") any information received by a health care provider that relates to past, present, or future physical or mental health or condition. This information is protected even before a formal patient relationship is established.[23]

**ANSWER:** This paragraph contains legal conclusions to which no response is required, and no factual allegations directed at Select Medical to admit or deny. To the extent a response is required, Select Medical states that the provision of HIPAA

[23] The HIPPA E-Tool, a web-based software program designed to help healthcare organizations maintain compliance with HIPAA explains to medical providers on its website that "Protected Health Information ('PHI') is central to HIPAA but is widely misunderstood. Many people believe PHI includes a diagnosis or some kind of medical information but this is not true." HIPAA E-Tool goes on to explain that "any one piece of individually identifiable information connected to the provision of past, present or future health status" constitutes PHI, and that "it does not need to contain or reveal medical information. A simple reminder by text or email to a patient without any medical information contains PHI." *See* https://thehipaaetool.com/protectedhealth-information-faqs/.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 47 of the FAC and, on that basis, denies the allegation.

48. Therefore, Defendant's conduct, as described herein, is directly contrary to federal privacy laws.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 48 of the FAC.

**D. Google's Tracking Technologies**

49. Web browsers are software applications that allow consumers to navigate the internet and view and exchange electronic information and communications. Each device (such as a computer, tablet, laptop, or smartphone) accesses web content through a web browser (e.g. Chrome, Safari, Edge, etc.).

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 49 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49 of the FAC and, on that basis, denies the allegations.

50. Every website is hosted by a computer server that holds the website's contents and through which the entity in charge of the website exchanges communications with the consumer's device via web browsers.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 50 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 of the FAC and, on that basis, denies the allegations.

51. Web communications consist of HTTP Requests and HTTP Responses and any given browsing session may consist of thousands of individual HTTP Requests and HTTP Responses, along with corresponding cookies:

(a) <u>HTTP Request</u>: an electronic communication sent from a device's browser to the website's server. GET Requests are one of the most common types of HTTP Requests. In addition to specifying a particular URL (i.e., web address), GET Requests can also send data to the host server embedded inside the URL, and can include cookies.

(b) <u>Cookies</u>: a small text file that can be used to store information on the device which can later be communicated to a server or servers. Cookies are sent with HTTP Requests from devices to the host server. Some cookies are "third-party cookies," which means they can store and communicate data when visiting one website to an entirely different website.

(c) <u>HTTP Response</u>: an electronic communication that is sent as a reply to the device's web browser from the host server in response to a HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 51 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 of the FAC and, on that basis, denies the allegations.

52. A consumers' HTTP Request essentially asks the Website to retrieve certain information (such as appointment booking information), and the HTTP Response renders or loads the requested information in the form of "Markup" (the pages, images, words, buttons, and other features that appear on the consumer's screen as they navigate the Website).

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the FAC and, on that basis denies the allegations in Paragraph 52 of the FAC.

53. Every website is comprised of Markup and "Source Code." Source Code is a set of instructions that commands the website visitor's browser to take certain actions when the web page first loads or when a specified event triggers the code.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 53 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 of the FAC and, on that basis, denies the allegations.

54. Source Code may also command a web browser to send data transmissions to third parties in the form of HTTP Requests quietly executed in the background without notifying the web browser's user. The Google Tracking Technologies embedded on the Website by Defendant constitute Source Code and function is a substantially similar way.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 of the FAC and, on that basis, denies the allegations.

55. Google is one of the most valuable publicly traded companies in the world with a market capitalization of over $1 trillion dollars. Google fancies itself a "tech" company, but at its core, Google is an advertising company.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 55 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the FAC and, on that basis, denies the allegations.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

56. Google "make[s] money" from "advertising products [that] deliver relevant ads at just the right time," generating "revenues primarily by delivering both performance advertising and brand advertising."[24] In 2020, Google generated $146.9 billion in advertising revenue, which amounted to more than 80 percent of Google's total revenues for the year. Google generated an even higher percentage of its total revenues from advertising in prior years:

**Table 1:**

| Year | Total Revenue | Ad Revenue | % Ad Revenue |
|---|---|---|---|
| 2021 | $257.6 billion | $209.5 billion | 81.33% |
| 2020 | $182.5 billion | $146.9 billion | 80.49% |
| 2019 | $161.9 billion | $134.8 billion | 83.29% |
| 2018 | $136.8 billion | $116.5 billion | 85.12% |

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 56 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the FAC and, on that basis, denies the allegations.

57. Google offers several analytics products, including SDKs and a tracking pixel, which exist solely to help drive ad revenue. For instance, Google's SDK and pixel integrate with Google's advertising offerings, such as Google Ads, Search Ads 360, Google Cloud, and Google Ad Manager, to direct more individuals to use Google's ad network and products increasing Google's overall ad revenue. Products like Google's SDK and its tracking pixel also improve the company's advertising network and capabilities by providing more wholesome profiles and data points on individuals.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 57 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth

[24] ALPHABET INC., ANNUAL REPORT (FORM 10-K) (Feb. 2, 2021), available at https://www.sec.gov/Archives/edgar/data/1652044/000165204421000010/goog-20201231.htm.

of the allegations contained in Paragraph 57 of the FAC and, on that basis, denies the allegations.

58. One of these SDKs and tracking pixels is Google Analytics. Google first launched a version of Google Analytics in 2005 as a tool for website traffic analysis. In 2007, Google launched Google Analytics Synchronous code with new tracking functionality, such as the ability to track commerce transactions. Two years later, Google launched the Google Analytics Asynchronous code, which allowed webpages to load faster and improved data collection and accuracy.

**ANSWER:** There are no factual allegations directed at Select Medical in of the FAC 58 to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of the FAC and, on that basis, denies the allegations.

59. Google continued updating its analytics platform, launching Universal Analytics in 2012. Universal Analytics offered new tracking codes and tools that provided more in-depth information about user behavior. Also, Universal Analytics enabled tracking the same user across multiple devices through its addition of the User-ID feature, which "associate[s] a persistent ID for a single user with that user's engagement data from one or more sessions initiated from one or more devices."

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 59 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the FAC and, on that basis, denies the allegations.

60. In 2020, Google launched Google Analytics 4, a platform combining Google Analytics with Firebase to analyze both app and web activity.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 60 of the FAC to admit or deny. To the extent a response is required, Select

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of the FAC and, on that basis, denies the allegations.

61. Since launching Google Analytics, Google has become one of the most popular web analytics platforms on the internet. Indeed, Google had a $62.6 billion increase in advertising revenues in 2021, compared to 2020, after launching its most recent version of Google Analytics.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 61 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 61 of the FAC and, on that basis, denies the allegations.

62. Google touts Google Analytics as a marketing platform that offers "a complete understanding of your customers across devices and platforms."[25] It allows companies and advertisers that utilize it to "understand how your customers interact across your sites and apps, throughout their entire lifestyle," "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data," "take action to optimize marketing performance with integrations across Google's advertising and publisher tools," and "quickly analyze your data and collaborate with an easy-to-use interface and shareable reports."[26]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 62 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the FAC and, on that basis, denies the allegations.

---

[25] *Analytics*, GOOGLE, https://marketingplatform.google.com/about/analytics/ (last visited Jan. 10, 2023).
[26] *Id.*

63. Google Analytics is incorporated into third-party websites and apps, including the Website, by adding a small piece of JavaScript measurement code to each page on the site. This code immediately intercepts a patient's interaction with the webpage every time the patient visits it, including what pages they visit and what they click on. The code also collects PII, such as IP addresses and device information related to the specific computing device a consumer (or patient) is using to access a website. The device information intercepted by Google includes the patient's operating system, operating system version, browser, language, and screen resolution.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the FAC and, on that basis, denies the allegations.

64. In other words, when interacting with the Website, an HTTP Request is sent to Defendant's server, and that server sends an HTTP Response including the Markup that displays the website visible to the patient and Source Code, including Google's tracking technologies.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 of the FAC and, on that basis, denies the allegations.

65. Thus, Defendant is essentially handing patients a tapped device, and once the webpage is loaded onto the patient's browser, the software-based wiretap is quietly waiting for private communications on the Website to trigger the tap, which intercepts those communications intended only for Defendant and transmits those communications to third parties like Google.

**ANSWER:** Select Medical denies the allegations in Paragraph 65 of the FAC.

66. Once Google's software code collects the data intercepted from the Website, it packages the information and sends it to Google Analytics for processing. Google Analytics enables the company or advertiser to customize the processing of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

the data, such as applying filters. Once the data is processed, it is stored on a Google Analytics database and cannot be changed.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of the FAC and, on that basis, denies the allegations.

67. After the data has been processed and stored in the database, Google uses this data to generate reports to help analyze the data from the webpages. These include reports on acquisition (e.g., information about where your traffic originates, the methods by which users arrive at your site or app, and the marketing efforts you use to drive traffic), engagement (e.g., measure user engagement by the events and conversion events that users trigger and the web pages and app screens that user visits, and demographics (e.g., classify your users by age, location, language, and gender, along with interests they express through their online browsing and purchase activities).

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 67 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 67 of the FAC and, on that basis, denies the allegations.

68. In addition to using the data collected through Google Analytics to provide marketing and analytics services, Google also uses the data collected through Google Analytics to improve its ad targeting capabilities and data points on users.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 68 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 68 of the FAC and, on that basis, denies the allegations.

69. The Website utilizes Google's pixel and SDK. As a result, Google intercepted patients' interactions on the Website, including their PII and PHI. Google received at least "Custom Events" and URLs that disclosed the medical treatment being received by the patient. Google also received additional PII, including the patients' IP address, device information, and User-IDs.

**ANSWER:** Select Medical admits that certain Google technologies may have been present on the Website at certain times. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 69 of the FAC, and on that basis, denies the allegations.

70. For example, the Website utilizes the "auid" or "Advertiser User ID" parameter to identify and allow Google to identify unique users and unique interactions with the Website.

**ANSWER:** Select Medical denies the allegations in Paragraph 70 of the FAC.

71. "Google tags set and read cookies to identify unique users across browsing sessions."[27]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 71 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 of the FAC and, on that basis, denies the allegations.

72. Here, Defendant configured the Website to utilize the DSID and IDE cookies. The IDE cookie is "used to show Google ads on non-Google sites."[28] Similarly, the DSID cookie "cookie is used to identify a signed-in user on non-Google sites."[29]

**ANSWER:** Select Medical admits that certain Google technologies may have been present on the Website at certain times. Select Medical is without knowledge or

---

[27] https://developers.google.com/tag-platform/security/concepts/cookies.
[28] https://developers.google.com/tag-platform/security/concepts/cookies.
[29] https://policies.google.com/technologies/cookies?hl=en-US.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 72 of the FAC, and on that basis, denies the allegations.

73. Both the IDE and DSID cookies operate as advertising cookies.[30]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 73 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 of the FAC and, on that basis, denies the allegations.

74. In addition to user-IDs, upon receiving information from the Website, Google also utilizes a "browser-fingerprint" to personally identify consumers. A browser-fingerprint is information collected about a computing device that is used to identify the specific device.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 74 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the FAC and, on that basis, denies the allegations.

75. These browser-fingerprints are used to uniquely identify individual users when a computing device's IP address is hidden or cookies are blocked and can provide a wide variety of data.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 75 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the FAC and, on that basis, denies the allegations.

76. As Google explained, "[w]ith fingerprinting, developers have found ways to use tiny bits of information that vary between users, such as what device they

[30] https://business.safety.google/adscookies/

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

have or what fonts they have installed to generate a unique identifier which can then be used to match a user across websites."[31]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 76 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the FAC and, on that basis, denies the allegations.

77. The value of browser-fingerprinting to advertisers (and trackers who want to monetize aggregated data) is that they can be used to track website users just as cookies do, but it employs much more subtle techniques.[32] Additionally, unlike cookies, users cannot clear their fingerprint and therefore cannot control how their personal information is collected.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 77 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the FAC and, on that basis, denies the allegations.

78. In 2017, researchers demonstrated that browser fingerprinting techniques can successfully identify 99.24 percent of all users.[33]

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 78 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the FAC and, on that basis, denies the allegations.

[31] https://www.blog.google/products/chrome/building-a-more-private-web/.
[32] https://www.pixelprivacy.com/resources/browser-fingerprinting/
[33] https://ndss-symposium.org/ndss2017/ndss-2017-programme/cross-browserfingerprinting-os-and-hardware-level-features/

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

79. Browser-fingerprints are personal identifiers. Tracking technologies, like the ones developed by Google and utilized on the Website, can collect browser-fingerprints from website visitors.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 79 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the FAC and, on that basis, denies the allegations.

80. As enabled by Defendant, Google collects vast quantities of consumer data through its tracking technology.

**ANSWER:** Select Medical denies the allegations in Paragraph 80 of the FAC.

81. Due to the vast network of consumer information held by Google, it is able to match the IP addresses, device information, and user-IDs it intercepts and link such information to an individual's specific identity.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 81 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the FAC and, on that basis, denies the allegations.

82. Google then utilizes such information for its own purposes, such as targeted advertising.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 82 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 of the FAC and, on that basis, denies the allegations.

83. The DoubleClick API "is an integrated ad technology platform that enables advertisers to more effectively create, manage and grow high-impact digital

marketing campaigns."

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 83 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the FAC and, on that basis, denies the allegations.

84. Google Analytics also and DoubleClick link with Google Ads, allowing the data intercepted through Google Analytics and DoubleClick to be utilized for targeted advertising purposes.[34] Such practices were in effect on the Website for targeted advertising purposes.

**ANSWER:** Select Medical admits that certain Google technologies may have been present on the Website at certain times. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 84 of the FAC, and on that basis, denies the allegations.

85. DoubleClick was acquired by Google in 2008. In 2018, the DoubleClick API was integrated with the Google Analytics API into the Google Marketing Platform. The Google Marketing Platform makes use of most of DoubleClick's features, albeit under different brand names: for example, "DoubleClick Bid Manager is now Display & Video 360," "DoubleClick Search is now named Search Ads 360," and DoubleClick Campaign Manager and DoubleClick Studio are now named Campaign Manager and Studio, respectively."

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 85 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85 of the FAC and, on that basis, denies the allegations.

86. As relevant here, however, data is still sent from the Website to Google

---

[34] https://support.google.com/analytics/answer/9379420?hl=en#zippy=%2Cin-thisarticle

through the DoubleClick API, and app developers like Defendant can then use the Google Marketing Platform to manage the data.

**ANSWER:** Select Medical denies the allegations in Paragraph 86 of the FAC.

87. Once integrated into a developer's mobile application, the DoubleClick API allows an app developer to, among other features, analyze and optimize marketing campaigns and conduct targeted advertising.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 87 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 of the FAC and, on that basis, denies the allegations.

88. Once Defendant intercepts the Website communications through the DoubleClick API and discloses such information to Google (in real time), Google has the capability to use such information for its own purposes. "Google uses the information shared by sites and apps to deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on [] partners' sites and apps."

**ANSWER:** Select Medical denies that it intercepts Website communications and discloses such information to Google in real time. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88 of the FAC and, on that basis, denies the allegations.

89. Google's range of SaaS services is based on Google's ability to collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits. This involves collecting visitor information from thousands of websites and then analyzing that information to deliver targeted advertising and group web users so that they can be targeted for products and categories they are interested in.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 89 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89 of the FAC and, on that basis, denies the allegations.

90. Information from websites, like Defendant's Website, is central to Google's ability to successfully market their advertising capabilities to future clients.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 of the FAC and, on that basis, denies the allegations.

91. In sum, Google uses website communications to: (i) improve its own products and services; (ii) develop new Google for Business and Google Analytics products and services; and (iii) analyze website visitors' communications to assist with data analytics and targeted advertising.

**ANSWER:** There are no factual allegations directed at Select Medical in Paragraph 91 of the FAC to admit or deny. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 91 of the FAC and, on that basis, denies the allegations.

92. Google views and processes every piece of information collected from the Analytics and DoubleClick API, including the information collected from Defendant's Website, and uses it to assist with data analytics, marketing, and targeted advertising.

**ANSWER:** Select Medical admits that certain Google technologies may have been present on the Website at certain times. Select Medical Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92 of the FAC and, on that basis, denies the allegations.

93. Google partners with Defendant in its marketing efforts. Google's tracking technologies, including Google Analytics, browser fingerprinting, and Google DoubleClick are employed on the Website in the manner described throughout this Complaint.

**ANSWER:** Select Medical admits that certain Google technologies may have been present on the Website at certain times. Select Medical denies the remaining allegations contained in Paragraph 93 of the FAC.

94. Plaintiff did not authorize the interception or disclosure of his data to Google. Defendant's disclosure, and Google's interception, of Plaintiff's and prospective class members' PHI and PII without their consent and without a HIPAA complaint authorization is an invasion of privacy and violates several laws, including the ECPA (18 U.S.C. §2511, *et seq.*); CIPA §§ 631–32, and the California Constitution.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 94 of the FAC relating to Plaintiffs' authorization or lack thereof and, on that basis denies the allegation. Select Medical denies the remaining allegations in Paragraph 94 of the FAC.

**E. Defendant Disclosed Plaintiff's and Class Members' Protected Health Information**

95. Defendant owns and operates the Website, which allows patients, request and book medical appointments for various physical therapy services—including, as was the case for Plaintiff, physical therapy of the knee.

**ANSWER:** Select Medical admits that it owns and operates the Website which allow patients to book appointments for various types of physical therapy. Select Medical is without knowledge or information sufficient to form a belief as to the truth

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

of the remaining allegations contained in Paragraph 95 of the FAC and, on that basis, denies the remaining allegations.

96. At all relevant times, including when Plaintiff booked his appointments for physical therapy of the knee at Defendant's Los Angeles-Park Terrace location, the Website operated in the manner described herein.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 of the FAC and, on that basis, denies the allegations.

97. An example illustrates the point. Take, for example, a patient who navigates to the Website to book an appointment for CoreVia pelvic health. During the appointment booking process, Defendant discloses its patients' PII and PHI to Google, as seen in Figure 1.

```
https://googleads.g.doubleclick.net/pagead/viewthroughconversion/11345012063/?
random=1762274434634&cv=11&fst=1762274434634&bg=ffffff&guid=ON&async=1>m=45be5av1
h1z877871019za200zb77871019zd77871019xea&gcd=13l3l3l3l1l1&dma=0&tag_exp=101509157~
103116026~103200004~103233427~104527906~104528501~104684208~104684211~1049488
13~105322302~115480710~115583767~115938465~115938468~116217636~116217638&u_w=
2560&u_h=1440&url=https%3A%2F%2Fwww.selectphysicaltherapy.com%2Fcontact%2Frequest-an-
appointment%2F&ref=https%3A%2F%2Fwww.selectphysicaltherapy.com%2Fservices%2Fcorevia-
pelvic-
health%2F&frm=0&tiba=Request%20an%20Appointment%20%7C%20Select%20Physical%20Therap
y&hn=www.googleadservices.com&npa=0&pscdl=noapi&auid=1461946234.1761573179&uaa=x86
&uab=64&uafvl=Google%2520Chrome%3B141.0.7390.123%7CNot%253FA_Brand%3B8.0.0.0%7CCh
romium%3B141.0.7390.123&uamb=0&uam=&uap=Windows&uapv=19.0.0&uaw=0&_tu=CA&rfmt=3
&fmt=4
```

**Figure 1**

**ANSWER:** Select Medical denies the allegations in Paragraph 97 of the FAC.

98. While the previous example is based on an appointment booking for CoreVia pelvic health, Defendant's Website operates in a similar manner irrespective of the treatment/location of treatment being sought. *See e.g.* Figure 2 (similar disclosures of an appointment booking for the knee).

```
https://googleads.g.doubleclick.net/pagead/viewthroughconversion/11345012063/?
random=1773159923424&cv=11&fst=1773159923424&bg=ffffff&guid=ON&async=1>m=45be6361
v9244192565z877871019za20gzb77871019zd77871019xea&gcd=13l3l3l3l1l1&dma=0&tag_exp=1
03116026~103200004~115938466~115938468~116024733~117484252&u_w=2560&u_h=1440&
url=https%3A%2F%2Fwww.selectphysicaltherapy.com%2Fcontact%2Frequest-an-
appointment%2F&ref=https%3A%2F%2Fwww.selectphysicaltherapy.com%2Finjury-
finder%2Fknee%2F&frm=0&tiba=Request%20an%20Appointment%20%7C%20Select%20Physical%2
0Therapy&hn=www.googleadservices.com&npa=0&pscdl=noapi&auid=1789205758.1772586570&u
aa=x86&uab=64&uafvl=Not%253AA-
Brand%3B99.0.0.0%7CGoogle%2520Chrome%3B145.0.7632.160%7CChromium%3B145.0.7632.160
&uamb=0&uam=&uap=Windows&uapv=19.0.0&uaw=0&_tu=CA&rfmt=3&fmt=4
```

**Figure 2**

**ANSWER:** Select Medical denies the allegations in Paragraph 98 of the FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

99. When patients book their appointments on Defendant's Website, Defendant intercepts information related to their patients' appointments through Google's tracking technologies, including the type of appointment (Figures 1–2), a patient's auid identifier, and various information about the device being used to book the appointment.

**ANSWER:** Select Medical denies the allegations in Paragraph 99 of the FAC.

100. Defendant further discloses to Google the PII of its patients' sufficient for Google to uncover their identities. In the HTTP communications shown above, the patients' IP address is inherently included in every network request. In addition to its patients' IP address, Defendant, through Google's tracking technologies, disclosed information about each patient's specific devices and user-IDs, allowing Google to link such information to an individual's specific identity.

**ANSWER:** Select Medical denies the allegations in Paragraph 100 of the FAC.

101. As shown and described in Figures 1 and 2, patients'—including Plaintiff's— communications with Defendant were disclosed by Defendant to Google and/or intercepted in transit by Google, in real time, via detailed URLs, which contain the medically sensitive information entered into the Website. Defendant discloses such information to Google irrespective of the condition treatment is being sought for.



| | |
|---|---|
| random | 732409898 |
| cv | 11 |
| fst | 1761931077631 |
| bg | ffffff |
| guid | ON |
| async | 1 |
| en | conversion |
| gtm | 45be5at1v889604742z877871019za200zb77871019zd77871019xea |
| gcd | 13l3l3l3l1l1 |
| dma | 0 |
| tag_exp | 101509157~103116026~103200004~103233427~104527906~104528500~104684208~104684211~104948813~105322304~115480709~115583767~115938466~115938469~116217636~116217638~116253087~116253089 |
| u_w | 3072 |
| u_h | 1728 |
| url | https%3A%2F%2Fwww.selectphysicaltherapy.com%2Frequest-an-appointment-form-thank-you%2F |
| ref | https%3A%2F%2Fwww.selectphysicaltherapy.com%2Fcontact%2Frequest-an-appointment%2F%3Fid%3D27364 |
| label | 57v6CKbEjdABEOGu4q8C |
| frm | 0 |
| tiba | Request%20An%20Appointment%20Thank%20You |
| value | 0 |
| hn | www.googleadservices.com |
| npa | 0 |
| pscdl | noapi |
| auid | 1579137393.1761930891 |
| uaa | x86 |
| uab | 64 |
| uafvl | Google%2520Chrome%3B141.0.7390.123%7CNot%253FA_Brand%3B8.0.0.0%7CChromium%3B141.0.7390.123 |
| uamb | 0 |
| uam | |
| uap | Windows |
| uapv | 19.0.0 |
| uaw | 0 |
| capi | 1 |
| _tu | CA |
| gcl_ctr | 1~0 |
| fmt | 3 |
| ct_cookie_present | false |
| crd | CPLOsQIlobixAgixwbECCLDBsQIlscOxAgiKxbECCMLJsQIltMaxAgj72LECCNvcsQIl2dexAgjCz7ECCP7VsQIlh9uxAgjTxbECCOOvMsQIl7c6xAgjVz7ECCO7QsQIll95xAgjJ27ECCMrZsQIlxdyxAkorbm90LW5hdmlnYXRpb24tc291cmNlLCB0cmlnZ2VyO2V2ZW50LXNvdXJjZVoDCgEBYgMKAQM |
| oerd | CgEA |
| eitems | ChAI8LyRyAYQxMmYtOye9oUdEh0AhbCB_tz6tCKYK0ZXD-Nsgl7idZN3uFc5YRrO0Q |
| fsk | ChAI8LyRyAYQ9bK0trvzg8BMEiwA0bORJxYWhFmYBLfYXD0WlPtGEPa9135T3gpHvoYai9ch4RK8Chdr8b4-hBoCgCE |
| pscrd | IhMI2vr73fjOkAMVMiLDCh0aDA-dMgwIA2IICAAQABgAIAAyDAgEYggIABAAGAAgADIMCAdiCAgAEAAYACAAMgwICGIICAAQABgAIAAyDAgJYggIABAAGAAgADIMCApiCAgAEAAYACAAMgwIAmIICAAQABgAIAAyDAgLYggIABAAGAAgADIMCBViCAgAEAAYACAAMgwIH2IICAAQABgAIAAyDAgTYggIABAAGAAgADIMCBJiCAgAEAAYACAAOkxodHRwczovL3d3dy5zZWxlY3RwaHlzaWNhbHRoZXJhcHkuY29tL3JlcXVlc3QtYW4tYXBwb2ludG1lbnQtZm9ybS10aGFuay15b3UvQldDaEVJOEx5UnlBWVExZVdObWFmVGtLMnRBUkdzQU1DY0RYMkRVNHpaMkpKYUZldnlpUDJEb28tUlhRdlZWYTdlYmJwbWYxTTFySGYwTG1VUkE2SnVuSXd6DAgJYggIABAAGAAgAA |
| ar_debug | 1 |
| DSID | AEhM4Mc93SuVbGZJ7z0v8tWDJTEv6jrYY6lA_g3vB4R4iV9p5ft9CTRT0FCZ6KNdcanRvMRzNHbr0_UQUrRJdrgB0pxzpFuXD0W-Shh7V3muZny6nA7_Gkf2BYM91NIBh5vjcfsQ9vTGZDpyKM8L_eiYHdZwcC6KMNhZL7ygUm9ReX0B1oJEKrRdNqwf6JUNdKepp6Y8QBXKKss0VbVboQIshOlujsjIdRmAezsLqIPSaRBUJEY3n8moXNn9S99Wvt3K7N0T_XrztEf2IKM1HotIQB2CTEKKYWZPyVe0Kot6H5V5ubz8 |
| IDE | AHWqTUnFsdPo5qKOb4V9OcqMP-hrkwgm-wde89BIEFyGDEu49twnqN_R_6wsPMZt4 |

Figure 3





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** Select Medical denies the allegations in Paragraph 101 of the FAC.

102. Further, anytime a patient completes a booking request, Defendant discloses the booking request to Google along with the IDE and DSID cookies. *See e.g.*, supra Figure 3. Defendant disclosed similar information about Plaintiff when he visited the Website in February and October of 2025 to book his appointments for physical therapy on his knee.

**ANSWER:** Select Medical denies the allegations in Paragraph 102 of the FAC.

103. Defendant also uses and causes the disclosure of data sufficient for Google to create a browser-fingerprint identifier with each re-directed communication described herein, including patient communications concerning individual medical appointments.

**ANSWER:** Select Medical denies the allegations in Paragraph 103 of the FAC.

104. Defendant sent out these identifiers (e.g. auid, IP address, and device information) with each patient's "event" data.

**ANSWER:** Select Medical denies the allegations in Paragraph 104 of the FAC.

105. Plaintiff never consented, agreed, authorized, or otherwise permitted Google to intercept his confidential health information.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 105 of the FAC and, on that basis, denies the allegations.

106. Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to share his confidential health information in violation of state and federal

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

law. Such disclosures are an invasion of privacy, may lead to harassing targeted advertising.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations in Paragraph 106 of the FAC.

107. By law, Plaintiff is entitled to privacy in his protected health information and confidential communications. Defendant deprived Plaintiff of his privacy rights when it implemented a system that surreptitiously tracked a recorded Plaintiff's and other online patients' confidential communications, personally identifiable information, and protected health information.

**ANSWER:** This paragraph contains legal conclusion to which no response is required. To the extent a response is required, Select Medical admits that healthcare providers have privacy obligations as prescribed by applicable law. Select Medical denies the remaining allegations contained in Paragraph 107 of the FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## CLASS ALLEGATIONS

108. Nationwide Class Definition: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of a class defined as all natural persons in the United States who, during the class period, booked an appointment on the Website (the "Class" or the "Nationwide Class").

**ANSWER:** Select Medical admits that Plaintiff purports to bring this case as a class action, as defined in Paragraph 108 of the FAC, but denies that this case is appropriate for class treatment as alleged.

109. California Subclass Definition: Plaintiff also brings this action on behalf of a subclass defined as all natural persons in California who, during the class period, booked an appointment on the Website (the "California Subclass").

**ANSWER:** Select Medical admits that Plaintiff purports to bring this case as a class action, as defined in Paragraph 109 of the FAC, but denies that this case is appropriate for class treatment as alleged.

110. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of subclasses.

**ANSWER:** Select Medical admits that Plaintiff purports to bring this case as a class action but denies that this case is appropriate for class treatment as alleged, or could be appropriate for class treatment if the putative classes alleged are modified or narrowed.

111. The "Class Period" is the time beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

**ANSWER:** Select Medical admits that Plaintiff purports to bring this case as a class action with the specified Class Period but denies that this case is appropriate for class treatment as alleged.

112. Excluded from the Classes are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his/her spouse and immediate family members; and members of the judge's staff.

**ANSWER:** Select Medical admits that Plaintiff purports to bring this case as a class action subject to the exclusions in Paragraph 112 of the FAC, but denies that this case is appropriate for class treatment as alleged.

113. **Numerosity.** Members of the Classes are so numerous that joinder of all members is impracticable. The exact number of Class Members is unknown to Plaintiff at this time; however, it is estimated that there are at least thousands of individuals in the Classes. The identity of such membership is readily ascertainable from Defendant's records.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 113 of FAC and, on that basis, denies the allegations.

114. **Typicality.** Plaintiff's claims are typical of the claims of the Classes because Plaintiff used the Website to schedule a physical therapy appointment and had his personally identifiable information and protected health information disclosed to Google without his express written authorization or knowledge. Plaintiff's claims are based on the same legal theories as the claims of other Class Members.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 of the FAC and, on that basis, denies the allegations.

115. **Adequacy.** Plaintiff is prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Classes. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation, generally, and in the emerging field of digital privacy litigation, specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Classes.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 115 of the FAC and, on that basis, denies the allegations.

116. **Commonality.** Questions of law and fact common to the members of the Classes predominate over questions that may affect only individual members of the Classes because Defendant has acted on grounds generally applicable to the Classes. Such generally applicable conduct is inherent in Defendant's wrongful conduct. Questions of law and fact common to the Classes include:

(a) Whether Defendant intentionally tapped the lines of internet communication between patients and their healthcare provider;

(b) Whether the Website surreptitiously recorded personally identifiable information, protected health information, and related communications and subsequently, or simultaneously, disclosed that information to Google;

(c) Whether Google is a third-party eavesdropper;

(d) Whether Defendant's disclosures of personally identifiable information, protected health information, and related communications constituted an affirmative act of communication;

(e) Whether Defendant's conduct, which allowed Google—an unauthorized party—to view Plaintiff's and Class Members' personally identifiable information and protected health information, resulted in a breach of confidentiality;

(f) Whether Defendant violated Plaintiff's and Class Members' privacy rights by using Google's tracking technologies to record and communicate patients' confidential medical communications;

(g) Whether Plaintiff and Class Members are entitled to damages under the ECPA, CIPA, or any other relevant statute; and

(h) Whether Defendant's actions violated Plaintiff's and Class Members' privacy rights as provided by the California Constitution.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 116 of the FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

117. **Superiority.** Class action treatment is the superior method for the fair and efficient adjudication of this controversy. Such treatment permits a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh any potential difficulties in the management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 117 of the FAC and, on that basis, denies the allegations.



## CLAIMS FOR RELIEF

## COUNT I

### Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) (On Behalf of the Nationwide Class)

118. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Nationwide Class.

**ANSWER:** Select Medical restates and incorporates Paragraphs 1 through 117 as if fully stated herein.

119. The Electronic Communications Privacy Act ("ECPA") prohibits the intentional interception of the content of any electronic communication. 18 U.S.C. § 2511.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the

contents of 18 U.S.C. § 2511 speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the FAC and, on that basis, denies the allegations.

120. The ECPA protects both sending and receipt of communications.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of the ECPA speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 of the FAC and, on that basis, denies the allegations.

121. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of 18 U.S.C. § 2520 speak for themselves. Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 121 of the FAC and, on that basis, denies the allegations.

122. The transmission of Plaintiff's private and confidential information to Defendant's Website qualifies as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 122 of the FAC.

123. The transmission of the private and confidential information between Plaintiff's and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate

commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of 18 U.S.C. § 2510(12) speak for themselves, and denies the remainder of the allegations contained in Paragraph 123 of the FAC.

124. The ECPA defines "contents," when used with respect to electronic communications, to "include[] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. 18 U.S.C. § 2510(8).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of 18 U.S.C. § 2510(8) speak for themselves.

125. The ECPA defines an interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of 18 U.S.C. § 2510(4) speak for themselves.

126. The ECPA defines "electronic, mechanical, or other device," as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of 18 U.S.C. § 2510(5) speak for themselves.

127. The following instruments constitute "devices" within the meaning of the ECPA:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(a) The computer codes and programs Google used to track Plaintiff's and Class Members' communications while they were navigating the Website;

(b) Plaintiff's and Class Members' browsers;

(c) Plaintiff's and Class Members' mobile devices;

(d) Defendant's and Google's web and ad servers;

(e) The plan Defendant and Google carried out to effectuate the tracking and interception of Plaintiff's and Class Members' communications while they were using a web browser to navigate the Website.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 127 of the FAC.

128. Plaintiff's and Class Members' interactions with Defendant's Website are electronic communications under the ECPA.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 128 of the FAC.

129. By utilizing and embedding Google's tracking technologies on its Website, Defendant intentionally intercepted, endeavored to intercept, and/or procured another person to intercept, the electronic communications of Plaintiff and Class Members in violation of 18 U.S.C. § 2511(1)(a).

**ANSWER:** Select Medical denies the allegations contained in Paragraph 129 of the FAC.

130. Specifically, Defendant intercepted Plaintiff's and Class Members' electronic communications through Google's tracking technologies, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' private and confidential information to third parties, including Google.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 130 of the FAC.

131. Defendant also procured Google to intercept Plaintiff's and Class Members' electronic communications through Google's tracking technologies, which tracked, stored and unlawfully disclosed Plaintiff's and Class Members' private and confidential information to third parties, including Google.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 131 of the FAC.

132. Defendant intercepted or assisted in the interception of communications that include, but are not necessarily limited to, communications to/from Plaintiff and Class Members regarding private and confidential information, including their treatment information. This confidential information was then monetized for targeted advertising purposes.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 132 of the FAC.

133. By intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to affiliates and other third parties (including Google), while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

**ANSWER:** Select Medical denies the allegations contained in Paragraph 133 of the FAC.

134. By intentionally using, or endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

**ANSWER:** Select Medical denies the allegations contained in Paragraph 134 of the FAC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

135. Defendant intentionally intercepted or intentionally assisted in the interception of the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, HIPAA and invasion of privacy, among others.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 135 of the FAC.

136. The party exception in 18 U.S.C. § 2511(2)(d) does not permit a party that intercepts or causes interception to escape liability if the communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State. Here, as alleged above, Defendant violated provisions of the Health Insurance Portability and Accountability Act, specifically 42 U.S.C. § 1320d-6(a)(3), 45 CFR 164.501, 164.508(a)(3), as well as the FTC Act. 42 U.S.C. § 1320d-6(a)(3) imposes a criminal penalty for knowingly disclosing individually identifiable health information ("IIHI") to a third party. HIPAA defines IIHI as:

> any information, including demographic information collected from an individual, that—(A) is created or received by a health care provider ... (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual, and (i) identifies the individual; or (ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual.[35]

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the contents of 42 U.S.C. § 1320d-6 speak for themselves, and denies the remainder of the allegations contained in Paragraph 136 of the FAC.

[35] 42 U.S.C. § 1320d-6.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

137. Plaintiff's information that Defendant disclosed to Google qualifies as IIHI, and Defendant violated Plaintiff's and Class Members' expectations of privacy. Such conduct constitutes tortious and/or criminal conduct through a violation of 42 U.S.C. § 1320d-6. Defendant used the wire or electronic communications to increase their profit margins. Defendant specifically used Google's tracking technologies to track and utilize Plaintiff's and Class Members' private and confidential information for financial gain.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 137 of the FAC.

138. Defendant was not acting under the color of law to intercept Plaintiff's and Class Members' wire or electronic communications.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 138 of the FAC.

139. Plaintiff and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiff's and Class Members' privacy through Google's tracking technologies. Plaintiff and Class Members had a reasonable expectation that Defendant would not intercept or assist in the interception of their private and confidential information without their knowledge or consent.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 139 of the FAC.

140. The foregoing acts and omission therefore constitute numerous violations of 18 U.S.C. § 2511(1), *et seq*.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 140 of the FAC.

141. As a result of each and every violation thereof, Plaintiff seeks statutory damages of $10,000 or $100 per day for each violation of 18 U.S.C. § 2510, *et seq*. under 18 U.S.C. § 2520.

**ANSWER:** Select Medical admits that Plaintiff purports to seek the statutory damages set forth in Paragraph 141 of the FAC, but denies that Plaintiff and the putative class are entitled to such damages.

**COUNT II**

**VIOLATION OF THE CALIFORNIA INVASTION OF PRIVACY ACT**
**Cal. Penal Code § 631**
**(On Behalf of the California Class)**

142. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the California Subclass.

**ANSWER:** Select Medical restates and incorporates Paragraphs 1 through 141 as if fully stated herein. Select Medical admits that Plaintiff purports to bring this cause of action individually and on behalf of the California subclass but denies that this cause of action is appropriate for class treatment as alleged.

143. The California Invasion of Privacy Act ("CIPA") is codified at California Penal Code sections 630 to 638. CIPA begins with its statement of purpose – namely, that the purpose of CIPA is to "protect the right of privacy of the people of [California]" from the threat posed by "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . ." Cal. Penal Code § 630.

**ANSWER:** Select Medical admits that CIPA is codified at Cal. Penal Code § 630, *et seq*. Select Medical states that the contents of Cal. Penal Code § 630, *et seq*. speak for themselves.

144. A person violates California Penal Code § 631(a), if: by means of any

> machine, instrument, or contrivance, or in any other manner, [s/he] intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

> instrument of any internal telephonic communication system, or [s/he] willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [s/he] uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . .

Cal. Penal Code § 631(a).

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of Cal. Penal Code § 631(a) speak for themselves.

145. Further, a person violates Section 631(a) if s/he "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in the preceding paragraph. *Id.*

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of Cal. Penal Code § 631(a) speak for themselves.

146. To avoid liability under Section 631(a), a defendant must show it had the consent of **all** parties to a communication.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 146 of the FAC.

147. At all relevant times, Defendant aided, agreed with, and conspired Google to track and intercept Plaintiff's and California Subclass Members' internet communications while accessing the Website. These communications were intercepted without the authorization and consent of Plaintiff and California Subclass Members.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 147 of the FAC.

148. Defendant, when aiding and assisting Google's wiretapping and eavesdropping, intended to help Google learn some meaning of the content in the URLs and the content the visitor requested.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 148 of the FAC.

149. The following items constitute "machine[s], instrument[s], or contrivance[s]" under the CIPA, and even if they do not, Google's tracking technologies fall under the broad catch-all category of "any other manner":

(a) The computer codes and programs Google used to track Plaintiff's and California Subclass Members' communications while they were navigating the Website;

(b) Plaintiff's and California Subclass Members' browsers;

(c) Plaintiff's and California Subclass Members' computing and mobile devices;

(d) Google's web and ad servers;

(e) The web and ad-servers from which Google tracked and intercepted Plaintiff's and California Subclass Members' communications while they were using a web browser to access or navigate the Website;

(f) The computer codes and programs used by Google to effectuate its tracking and interception of Plaintiff's and California Subclass Members' communications while they were using a browser to visit the Website; and

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

(g) The plan Google carried out to effectuate its tracking and interception of Plaintiff's and California Subclass Members' communications while they were using a web browser or mobile device to visit the Website.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 149 of the FAC.

150. The information that Defendant transmitted using Google's tracking technologies, including the type of appointment a patient is booking, constituted sensitive and confidential personally identifiable information and protected health information.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 150 of the FAC.

151. As demonstrated hereinabove, Defendant violated CIPA by aiding and permitting Google to receive its patients' sensitive and confidential online communications through the Website without their consent.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 151 of the FAC.

152. As a result of the above violations, Defendant is liable to Plaintiff and other members of the California Subclass in the amount of, the greater of, $5,000 dollars per violation or three times the amount of actual damages. Additionally, California Penal Code section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 152 of the FAC.

153. Under the statute, Defendant is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 153 of the FAC.

## COUNT III
## VIOLATION OF THE CALIFORNIA INVASTION OF PRIVACY ACT
## Cal. Penal Code § 632
## (On Behalf of the California Class)

154. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Select Medical restates and incorporates Paragraphs 1 through 153 as if fully stated herein.

155. Plaintiff brings this claim against Defendant individually and on behalf of the California Subclass.

**ANSWER:** Select Medical admits that Plaintiff purports to bring this cause of action individually and on behalf of the California Subclass but denies that this cause of action is appropriate for class treatment as alleged.

156. Cal. Penal Code § 632 prohibits "intentionally and without the consent of all parties to a confidential communication," the "use[] [of] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical states that the contents of Cal. Penal Code § 632 speak for themselves.

157. Section 632 defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]"

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of Cal. Penal Code § 632 speak for themselves.

158. The data collected on Defendant's Website constitutes "confidential communications," as that term is used in Section 632, because California Subclass Members had an objectively reasonable expectation of private with respect to their personally identifiable information and protected health information.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical states that the contents of Cal. Penal Code § 632 speak for themselves.

159. Plaintiff and California Subclass Members expected their communications to Defendant to be confined to Defendant in part, because of Defendant's consistent representations that these communications would remain confidential. Plaintiff and California Subclass Members did not expect third parties, specifically Google, to secretly eavesdrop upon or record this information and their communications.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 159 of the FAC regarding Plaintiff and California putative subclass members' expectations or lack thereof and, on that basis, denies the allegations.

Select Medical denies the remainder of the allegations contained in Paragraph 159 of the FAC.

160. The tracking technologies from Google, are all electronic amplifying or recording devices for purposes of § 632.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegation contained in Paragraph 160 of the FAC.

161. By contemporaneously intercepting and recording Plaintiff's and California Subclass Members' confidential communications to Defendant through this technology, Google eavesdropped and/or recorded confidential communications through an electronic amplifying or recording device in violation of § 632 of CIPA.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 161 of the FAC.

162. At no time did Plaintiff or California Subclass Members consent to Defendant's or Google's conduct, nor could they reasonably expect that their communications to Defendant would be overheard or recorded by Third Parties.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 162 of the FAC.

163. Google utilized Plaintiff's and California Subclass Members' personally identifiable information for its own purposes, including advertising and analytics.

**ANSWER:** Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 163 of the FAC and, on that basis, denies the allegations.

164. Defendant is liable for aiding and abetting violations of Section 632 by Google.

**ANSWER:** This paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Select Medical denies the allegation contained in Paragraph 164 of the FAC.

165. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Members of the California Subclass have been injured by the violations of Cal. Penal Code § 632, and each seek damages for the greater of $5,000 or three times the amount of actual damages, as well as injunctive relief.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 165 of the FAC.

**COUNT IV**

**INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION**
**(On Behalf of the California Class)**

166. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed California Subclass.

**ANSWER:** Select Medical restates and incorporates Paragraphs 1 through 165 as if fully stated herein. Select Medical admits that Plaintiff purports to bring this cause of action individually and on behalf of the California subclass but denies that this cause of action is appropriate for class treatment as alleged.

167. Plaintiff and California Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential online communications and protected health information; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites without being subjected to wiretaps without Plaintiff's and California Subclass Members' knowledge or consent.

**ANSWER:** Select Medical denies the allegations contained in Paragraph 167 of the FAC.

168. At all relevant times, by using Google's tracking technologies to record and communicate patients' sensitive and confidential online medical communications, Defendant intentionally invaded Plaintiff's and California Subclass Members' privacy rights under the California Constitution.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 168 of the FAC.

169. Plaintiff and California Subclass Members had a reasonable expectation that their sensitive and confidential online communications, identities, health information, and other data would remain confidential, and that Defendant would not install wiretaps on the Website.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 169 of the FAC regarding Plaintiff's and California putative subclass members' expectations and, on that basis, denies the allegations. Select Medical denies the remaining allegations contained in Paragraph 169 of the FAC.

170. Plaintiff and California Subclass Members did not authorize Defendant to record and transmit Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 170 of the FAC.

171. This invasion of privacy was serious in nature, scope, and impact because it related to patients' private medical communications. Moreover, it constituted an egregious breach of societal norms underlying the right of privacy.

**ANSWER:** This paragraph contains legal conclusions to which no response is required. To the extent a response is required, Select Medical denies the allegations contained in Paragraph 171 of the FAC.

172. Accordingly, Plaintiff and California Subclass Members seek all relief available for invasion of privacy claims under California's Constitution.

**ANSWER:** Select Medical admits that Plaintiff and California putative subclass members purport to seek all relief available for alleged invasion of privacy, but denies that Plaintiff and California putative subclass members are entitled to any such relief sought in Paragraph 172 of the FAC.

## PRAYER FOR RELIEF

Select Medical denies that Plaintiff is entitled to any of the relief he seeks, and denies all allegations contained in the Prayer for Relief section of the FAC.

## AFFIRMATIVE DEFENSES

Without admitting that it bears the burden of proof as to any defense stated, Select Medical asserts the following affirmative defenses with respect to Plaintiff's causes of action:

1. Plaintiff's claims and those of the putative class members fail to state a claim on which relief can be granted.

2. Plaintiff's claims and those of the putative class members are barred because, by voluntarily visiting Defendant's website and/or agreeing to Select Medical's Terms and Conditions and Privacy Policy, they consented to and/or ratified the exchange and collection of standard internet browsing information. Plaintiff and the putative class implicitly consented to Select Medical's alleged conduct through their continued act of taking advantage of the benefits and services provided by the Website after becoming aware of their claims. Plaintiff's and putative class members' use and agreement to the terms of use of websites, social media platforms, and other services is conduct that further reflects Plaintiff's and putative class members' consent to the information sharing alleged.

3. Plaintiff's claims and those of the putative class members are barred by release. Plaintiff and putative class members released their claims against Select Medical's alleged conduct by accepting Select Medical's Terms and Conditions and Privacy Policy applicable to the Website.

4. Plaintiff's claims and those of the putative class members are barred, in whole or in part, by their assumption of risk. For example, Plaintiff and putative class members assumed the risk of any information about their web browsing being shared with third parties by voluntarily browsing the internet and using internet-based services with the understanding that most companies employ common website analytics tools that capture basic web browsing activities.

5. Plaintiff's claims and those of the putative class members are barred, in whole or in part, because at all times Select Medical acted in good faith and in compliance with any applicable statutes and/or regulations.

6. Plaintiff's claims and those of the putative class members are barred or reduced because they are based on conduct that occurred, if at all, outside the statute of limitations. An action to enforce a violation of the ECPA (Count I), 18 U.S.C. § 2511, must be commenced within two years after the cause of action accrued. 18 U.S.C. § 2520(e). An action to enforce a statute for a penalty, including to enforce CIPA (Counts II and III), must commence within one year after a cause of action accrued. Cal. Civ. Proc. Code § 340(a). An action for injury to an individual caused by the wrongful act of another, including claims for invasion of privacy (Count IV) must commence within two years after a cause of action accrued. Cal. Civ. Proc. Code § 335.1. This Action commenced on November 26, 2025. While Plaintiff alleges he visited the Website in February 2025 and October 2025 to book appointments for physical therapy, on information and belief, Plaintiff's first visit to the Website occurred prior to November 26, 2024. Accordingly, at least some of Plaintiff's claims and the claims of the putative class members are barred by the applicable statutes of limitations.

7. Plaintiff's claims and those of the putative class members are barred by the doctrine of laches.

8. Plaintiff's claims and those of the putative class members are barred because they lack standing. Plaintiff and putative class members have no injury or damages and no loss of any beneficial interest.

9. Plaintiffs' purported damages and those of the putative class members, if any, are speculative and/or uncertain and therefore not compensable.

10. Any finding of liability and damages under CIPA or the ECPA would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution because the elements and standards of liability under the statute are unduly vague and subjective and permit random, arbitrary, and capricious punishment that serves no legitimate governmental interest. The imposition of aggregated, class-wide damages in this case would also be excessive and violate Select Medical 's due process and other Constitutional rights.

11. This case is improper for resolution on a class-wide basis because the putative class does not meet the requirements of Code of Civil Procedure section 382 or Federal Rule of Civil Procedure 23. Specifically, Plaintiff is not an adequate representative of any purported class; their claims are not typical; common questions of law or fact affecting the individual members of the class do not predominate; a class action is neither manageable nor superior; and/or there is no ascertainable class with a community of interest.

12. Plaintiff's claims and those of the putative class members are barred, in whole or in part, because there is no basis for injunctive relief in this action.

13. Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by the doctrine of election of remedies, because they seek inconsistent and conflicting relief that will more than make them whole.

14. Plaintiffs' claims and those of the putative class members are barred, in whole or in part, to the extent they have failed to join necessary and indispensable parties to this action.

15. Plaintiff's damages and injury and those of the putative class members, if any, were caused or contributed to, in whole or in part, by the negligence, inaction, wrongdoing or fault of Plaintiff or the putative class members' own actions or by a third party, including Google, LLC. For example, the information relating to Plaintiff's or putative class members' web browsing that Select Medical allegedly shared with third parties did not identify Plaintiff or putative class members individually and therefore any intentional violation of Plaintiff's or putative class members' privacy rights was caused by the actions of third parties. Plaintiff's and putative class members' right to recover from Select Medical , if any, must be reduced or otherwise apportioned by the amount others contributed to Plaintiff's damages, if any.

16. If Plaintiff or putative class members have sustained any injuries or incurred any damages, such injuries or damages were the result of intervening or superseding events, factors, occurrences, modifications or conditions which were not caused by Select Medical and for which Select Medical is not responsible or liable.

17. Plaintiff's and putative class members' causes of action alleged in the FAC are barred, in whole or in part, because Select Medical was in compliance with all applicable laws, regulations, and rules.

18. Plaintiff and putative class members were knowledgeable of the facts and policies concerning Select Medical's website, and therefore the causes of action alleged in the FAC are barred, in whole or in part, by the doctrine of equitable estoppel. Select Medical alleges, on information and belief, that Plaintiff and the putative class members have engaged in conduct and activities that are the subject of the FAC, on which Select Medical relied to its detriment, and, by reason of such affirmative conduct and activities, Plaintiff and the putative class members are

estopped from asserting any claim for restitution or other compensation against Select Medical.

19. Plaintiff and putative class members were knowledgeable of the facts and policies concerning Select Medical's website, and therefore the causes of action alleged in the FAC are barred, in whole or in part, by the doctrine of waiver.

20. Plaintiff's claims and those of the putative class members are barred, in whole or in part, by them granting a license. Select Medical alleges that Plaintiff and putative class members expressly granted Select Medical a license for its alleged conduct by accepting Select Medical's terms, including its Privacy Policy. Select Medical further alleges that Plaintiff and the putative class implicitly granted Select Medical a license for its alleged conduct through their continued act of taking advantage of the benefits and services provided by the Website after becoming aware of their claims. Plaintiff's and putative class members' use and agreement to the terms of use of websites, social media platforms, and other services is conduct that further created an implied license for the information sharing alleged in the FAC.

21. Plaintiff's damages and those of the putative class members (if any) must be reduced, in whole or part, by an appropriate offset to the extent that Plaintiff or the putative class members owe or have due any amounts to Select Medical.

22. To the extent Plaintiff or putative class members have suffered any injury, the injury resulted from Plaintiff's or putative class members' intentionally sharing their personal information on the website described in the FAC for purposes of manufacturing a legal claim against Select Medical.

23. Plaintiff's claims and those of the putative class members are barred by the doctrine of unclean hands.

24. Plaintiff's claims and those of the putative class members are barred by the doctrine of *in pari delicto*.

25. The information relating to Plaintiff and putative class members that is alleged to have been shared was publicly available or otherwise non-private

information. Plaintiff and putative class members have previously publicized the allegedly shared information, including through their use of social media and other websites which use analytics technology including Google Analytics.

26. Plaintiff's claims and those of the putative class members are barred or reduced by their failure to mitigate their alleged damages. To the extent applicable, Select Medical alleges that Plaintiff and the putative class members have failed to mitigate, minimize, or avoid their purported damages by failing to "opt out" of the sale and sharing of their personal information as provided for by the California Consumer Privacy Act ("CCPA"), or otherwise request that Select Medical stop any collection and/or sharing of their personal information. To the extent any damages could have been mitigated, minimized, or avoided, such amounts should be deducted from any award of damages.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

27. Plaintiffs' claims and those of the putative class members are preempted, in whole in part, by federal law and are barred as a result of HIPAA's prohibition of any private cause of action.

28. Plaintiffs' claims and those of the putative class members are preempted, in whole in part, by the HITECH Act and similar statutes requiring patient access to electronic health records.

29. Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by the Dormant Commerce Clause.

30. Plaintiffs' claims and those of the putative class members are barred, in whole or in part, by the Communications Decency Act, 47 U.S.C. §230(c).

## RESERVATION OF RIGHTS

Select Medical states that the lack of discovery and the aggregated nature of Plaintiff's claims, in particular with respect to absent putative class members, makes an analysis of all potential affirmative defenses that might be applicable to any given absent putative class members infeasible at this time. Select Medical does not waive any additional or further defenses, and explicitly reserves the right to assert any

additional or further defenses as may be revealed during discovery or otherwise, and reserves the right to amend this Answer to assert any such defenses.

**SELECT MEDICAL'S PRAYER FOR RELIEF**

WHEREFORE, Select Medical prayers as follows:

31. That Plaintiff take nothing by way of the FAC;

32. That Plaintiff's prayer for relief be denied in its entirety;

33. That judgment be entered in favor of Select Medical and against Plaintiff;

34. For costs of suit incurred herein;

35. For attorneys' fees and costs as permitted by law; and

36. For such other and further relief as the Court deems just as proper.

Respectfully submitted,

Dated: July 28, 2026 **BAKER & HOSTETLER LLP**

By: */s/ Teresa C. Chow*
TERESA C. CHOW

*Attorneys for Defendant*
SELECT MEDICAL CORPORATION d/b/a
SELECT PHYSICAL THERAPY